**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
WEST PALM BEACH DIVISION
Case No. 24-cv-80787-DMM/Matthewman

**MIA WILLIAMS, BRITTANY CALVERT,**
**DEDTRA DAVIS, and ALISA LEGGETT,**
on their own behalf and on behalf of those similarly situated,

    Plaintiffs,

v.

**RETREAT BEHAVIORAL HEALTH, LLC,**
a Florida Limited Liability Corporation,
**NR FLORIDA ASSOCIATES, LLC,**
a Florida Limited Liability Corporation,
**NR PENNSYLVANIA ASSOCIATES, LLC,**
a Pennsylvania Limited Liability Corporation,
**JAMES YOUNG, in his capacity as**
Temporary Receiver of NR Pennsylvania Associates, LLC,
**NR CONNECTICUT, LLC,** a Connecticut
Limited Liability Corporation,
**DRPS MANAGEMENT, LLC,** a Florida
Limited Liability Corporation
**COAL LAKE WORTH, LLC,** a Florida
Limited Liability Company,
**COAL NEW HAVEN LLC,** a Connecticut
Limited Liability Corporation,
**COAL CAPITAL EPHRATA, LLC,**
a Pennsylvania Limited Liability Corporation,
**COAL CAPITAL GROUP, LLC,**
a New York Limited Liability Corporation,
**HFGC FLORIDA, LLC,**
a Florida Limited Liability Company,
**CHRISTY GARIANO, ALEXANDER HOINSKY,**
**DAVID SILBERSTEIN,**
**ESTATE OF PETER SCHORR, and**
**ESTATE OF SCOTT KOROGODSKY,**

    Defendants.
_____/

**FIRST AMENDED CLASS ACTION COMPLAINT**
**AND DEMAND FOR JURY TRIAL**

Plaintiffs, MIA WILLIAMS, BRITTANY CALVERT, DEDTRA DAVIS, and ALISA LEGGETT, on their own behalf and on behalf of those similarly situated (collectively "Plaintiffs"), by and through their undersigned counsel, hereby sue Defendants, RETREAT BEHAVIORAL HEALTH, LLC ("RBH"), NR FLORIDA ASSOCIATES, LLC ("NRFA"), NR PENNSYLVANIA ASSOCIATES, LLC, ("NRPA"), JAMES YOUNG solely in his capacity as Temporary Receiver of NRPA ("RECEIVER YOUNG"), NR CONNECTICUT, LLC, ("NRC"), DRPS MANAGEMENT, LLC ("DRPS"), COAL LAKE WORTH, LLC ("COAL LAKE WORTH"), CLW HOLDINGS, LLC, ("CLW HOLDINGS"); COAL CAPITAL HOLDINGS (FLORIDA) LLC, ("COAL FLORIDA"), COAL CONNECTICUT, LLC, ("COAL CONNECTICUT"), COAL NEW HAVEN, LLC, ("COAL NEW HAVEN"), COAL CAPITAL EPHRATA, LLC, ("COAL EPHRATA"), COAL CAPITAL GROUP, LLC ("COAL CAPITAL"), (collectively "RETREAT" or "the RETREAT DEFENDANTS") and DAVID SILBERSTEIN, ("SILBERSTEIN"), CHRISTY GARIANO, ("GARIANO"), ALEXANDER HOINSKY, ("HOINSKY"), the ESTATE OF PETER SCHORR, ("SCHORR"), and the ESTATE OF SCOTT KOROGODSKY, ("KOROGODSKY"), (collectively "the INDIVIDUAL DEFENDANTS") and allege as follows:

**INTRODUCTION**

1. This is an action brought pursuant to the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, *et seq.* ("FLSA"), the Worker Adjustment and Retraining Notification Act of 1988, 29 U.S.C. § 2101 et. seq. ("WARN Act"), the Florida Constitution, Art. X, Sec. 24, CT Gen. Stat. § 31.58, § 31-71c and § 31-72, 43 Pa. Stat. §260, and for unpaid wages.[1]

---

[1] Florida Statute §448.110 also requires the payment of minimum wage to all Florida workers. Plaintiffs will seek leave to amend to include violations of this statute once all prerequisites have been completed.

2

2. Pursuant to the the aforementioned state and federal wage and hour laws, Plaintiffs, on their own behalf and on behalf of all others similarly situated, seek unpaid wages, minimum wage and overtime compensation, liquidated damages, post-judgment interest and attorneys' fees and costs from all Defendants.

3. Defendants, RETREAT, are also liable under the WARN Act for the failure to provide the Plaintiffs and all others similarly situated at least 60 days advance notice of their termination, as required by the WARN Act.

**JURISDICTION AND VENUE**

4. This Court has jurisdiction over these claims pursuant to 28 U.S.C. §1331.

5. Venue is proper in the Court because all facts material to all claims set forth herein occurred in Palm Beach County, Florida, in the Southern District of Florida.

**PARTIES**

6. At all times material to this action, Mia Williams was a resident of the Southern District of Florida, West Palm Beach Division who was employed by Defendants.

7. At all times material to this action, Brittany Calvert was a resident of Jacksonville, Florida, who performed services both in person and remotely in the Southern District of Florida, West Palm Beach Division as she was employed by Defendants.

8. At all times material to this action, Dedtra Davis was a resident of Pennsylvania who was employed by Defendants.

9. At all times material to this action, Alisa Leggett was a resident of Connecticut who was employed by Defendants.

10. At all times material to this action, Defendant RBH was a Florida limited liability corporation, conducting business in Palm Beach County, Florida.

11. At all times material to this action, Defendant NRFA was a Florida limited liability corporation, conducting business in Palm Beach County, Florida.

12. At all times material to this action, Defendant NRPA was a Pennsylvania limited liability corporation, conducting business in Palm Beach County, Florida and in Lancaster County, Pennsylvania.

13. Receiver Young was appointed a Temporary Received of NRPA by the Court of Common Pleas of Lancaster County, Pennsylvania and is sued solely in his capacity as Temporary Receiver.

14. At all times material to this action, Defendant NRC was a Connecticut limited liability corporation, conducting business in Palm Beach County, Florida and in New Haven, Connecticut.

15. At all times material to this action, Defendant DRPS was a Florida limited liability corporation, conducting business in Palm Beach County, Florida.

16. At all times material to this action, Coal Lake Worth was a Florida limited liability corporation, conducting business in Palm Beach County, Florida.

17. At all times material to this action, CLW Holdings was a Florida limited liability corporation, conducting business in Palm Beach County, Florida.

18. At all times material to this action, Coal Florida was a Florida limited liability corporation, conducting business in Palm Beach County, Florida.

19. At all times material to this action, Coal Connecticut was a Connecticut limited liability corporation, conducting business in New Haven, Connecticut and Palm Beach County, Florida.

20. At all times material to this action, Coal New Haven was a Connecticut limited liability corporation, conducting business in New Haven, Connecticut and Palm Beach County, Florida.

21. At all times material to this action, Coal Ephrata was a Pennsylvania limited liability corporation, conducting business in Lancaster, Pennsylvania and Palm Beach County, Florida.

22. At all times material to this action, Coal Capital was a New York limited liability corporation, conducting business in Lancaster, Pennsylvania, New Haven, Connecticut and Palm Beach County, Florida.

23. Upon information and belief, Defendants, Coal Lake Worth, CLW Holdings, Coal Florida, Coal Connecticut, Coal New Haven, Coal Ephrata, and Coal Capital are owned and controlled by Defendant, David Silberstein, and all of these entities and Mr. Silberstein will be referred to collectively as the "COAL ENTITIES."

24. At all times material to this action, HFGC Florida, LLC ("HFGC") was a Florida limited liability corporation, conducting business in Palm Beach County, Florida.

25. At all times material to this action, David Silberstein controlled the Coal Entities.

26. At all times material to this action, Peter Schorr, was a resident of the Southern District of Florida, and was the Chief Executive Officer of RBH.

27. At all times material to this action Scott Korogodsky, was a resident of the Southern District of Florida, and was the Chief Administrative Officer of RBH

28. At all times material to this action, Defendant Christy Gariano was the Chief Regulatory Officer of Retreat.

29. At all times material to this action, Defendant Alexander Hoinsky was the Chief Financial Officer of Retreat.

30. At all times material to this action, Plaintiffs were employees of Retreat, and the Retreat Defendants were the employers of Plaintiffs for purposes of the Warn Act, the FLSA, as well as all other relevant wage and hour statues under Florida, Pennsylvania, and Connecticut law.

31. At all times material to this action, Plaintiffs were employees of the Individual Defendants and the Individual Defendants were the employer of Plaintiffs for purposes of the FLSA as well as under Florida, Connecticut, and Pennsylvania law.

32. The Defendants are joint employers and/or an integrated or common enterprise, or predecessor and successor in interest.

33. The Retreat Defendants did not comply with typical corporate formalities and money would flow between the various entities without respecting the independent nature of the corporations.

34. Employees would perform services for various of the Retreat Defendants with no regard for which employer was on their paycheck.

35. The Retreat Defendants had common ownership.

36. The Retreat Defendants had common directors and/or officers.

37. Peter Schorr and David Silberstein through their various corporations had the *de facto* exercise of control over all Retreat Defendants.

38. The Retreat Defendants had unity of personnel policies emanating from a common source.

39. The Retreat Defendants had dependency of operations.

## **GENERAL ALLEGATIONS**

40. Retreat is a provider of behavioral and mental health services in Florida, Connecticut, and Pennsylvania.

41. Retreat operated in-patient facilities in Palm Beach County, Florida, Lancaster County, Pennsylvania, and New Haven, Connecticut and behavioral health service centers in Palm Beach Lakes, Florida, South Miami, Florida, Akron, Pennsylvania, Philadelphia, Pennsylvania, and Lansdale, Pennsylvania ("the Facilities").

42. Plaintiffs were employed by Retreat.

43. Although Plaintiffs were supervised out of the Facilities, they performed services for Defendants at multiple locations.

44. NRFA issued some Plaintiffs' paychecks.

45. NRPA issued some Plaintiffs' paychecks.

46. NRC issued some Plaintiffs' paychecks.

47. Upon information and belief, NRFA, NPRA and NRC are owned by DRPS and the Coal entities.

48. Upon information and belief, the sole member of DRPS was Peter Schorr.

49. Upon information and belief, the sole member of the Coal entities is David Silberstein.

50. Upon information and belief, HFGC owns the property where Retreat is operated, which is leased to Coal Lake Worth. Coal Lake Worth in turn leases the Lake Worth Property to NRFA.

51. Upon information and belief, the majority owner of each HFGC and Coal Lake Worth is CLW Holdings, an entity owned by David Silberstein.

52. Upon information and belief, there were similar practices in place at other of the Facilities, where a variety of corporate shells were used to own property.

53. Individual Defendants were the corporate officers and senior management of Retreat.

54. Individual Defendants acted directly or indirectly in the interests of Retreat in relation to Plaintiffs.

55. On or about May 24, 2024, Retreat and the Individual Defendants failed to pay Plaintiffs and all other employees for the May 6, 2024 thru May 19, 2024 pay period.

56. Employees were paid late on or about May 25, 2024.

57. On or about June 7, 2024, Retreat and the Individual Defendants failed to pay Plaintiffs and all other employees for the May 20, 2024 thru June 2, 2024 pay period.

58. Employees were paid late on or about June 10, 2024.

59. On or about June 21, 2024, Retreat and the Individual Defendants failed to pay Plaintiffs and all other employees for the June 3, 2024 thru June 16, 2024 pay period.

60. Later that same day, Plaintiffs and other employees were informed that the Chief Executive Officer, Peter Schorr, died.

61. It is believed that Peter Schorr died by suicide.

62. Plaintiffs were told that all patients in the West Palm Beach facility were being transitioned out of Retreat's care immediately.

63. On or about June 23, 2024, Plaintiffs and other employees received an email from Chief Administrative Officer, Scott Korogodsky, stating that Retreat was "experiencing financial difficulties" and that they "did not yet have an answer regarding the distribution of payroll funds."

64. The email included the following explanations regarding the "unanswered" questions:

- *When will we be paid monies due from payroll date of Friday, June 21, 2024?*
    - We hope to have a definitive answer toward week's end.
- *Can employees file for Unemployment Compensation?*
    - We are awaiting attorney guidance on UC (Unemployment Compensation). At this time, no facility has been given / granted authority to furlough employees.
    - If you are currently employed, you may not apply for benefits.
- *What are employee's chances of continued employment?*
    - RBH Management is committed to continuing Peter's mission to provide quality substance abuse care and mental health services to all our communities.
    - Every employee may need to review their own circumstances and do what is best for their personal and family situation.
- *Do I still have healthcare benefits?*
    - Management has consulted with our broker. UHC is working with our broker and RBH for continued coverage.

65. On June 24, 2024, Mr. Korogodsky sent a follow-up email to all staff stating that they did "not have positive updates," that patients were being discharged and transferred at all locations and levels of care, and that Retreat is "closing services."

66. This email stated that employees would receive "appropriate letters regarding employment" and that last weeks' payroll was a "top priority."

67. Accordingly, Plaintiffs were terminated on or about June 21, 2024.

68. On or about June 26, 2024, Scott Korogodsky died by suicide.

69. Plaintiffs have retained the services of the undersigned attorneys and are obligated to pay the undersigned a reasonable fee for their services.

**CLASS ACTION ALLEGATIONS**

70. Plaintiffs sue under Rule 23(a) and (b) of the Federal Rules of Civil Procedure for violations of the WARN Act and Florida, Connecticut, and Pennsylvania state law for unpaid wages on behalf of themselves, and a class of employees who worked for Retreat at the Facilities

9

and were terminated without cause by Retreat as part or as the reasonably foreseeable result of plant shutdowns or mass layoffs ordered by Retreat at the Facilities (the "Class") on or about June 21, 2024 and were not paid the guaranteed minimum wage and applicable overtime from June 3, 2024 through the time of the layoff or the wages that were due pursuant to employment agreements. Plaintiffs also sue under 29 U.S.C. § 216(b) of the Fair Labor Standards Act for unpaid minimum wages and unpaid overtime under federal law.

71. The persons in the Class ("Class Members") are so numerous that joinder of all members is impracticable as there are approximately over 750 potential class members.

72. There are questions of law and fact common to the Class Members, namely:

(a) Whether the Class Members were employees of Retreat who worked at or reported to Retreat's Facilities;

(b) Whether Retreat ordered the termination of employment of each of the Class Members without cause on their part and without giving them 60 days advance written notice as required by the WARN Act;

(c) Whether Retreat were subject to any of the defenses provided for in the WARN Act;

(d) Whether the Retreat Defendants and the Individual Defendants failed to pay the minimum wage and overtime required; and

(e) Whether Retreat Defendants and the Individual Defendants failed to pay the wages that were due pursuant to employment agreements and state law.

73. The claims of the representative parties are typical of the claims of the Class, as they were laid off as part of the plant shutdown or mass layoff, did not receive the requisite notice,

were not paid the minimum wage from June 2, 2024 through their layoff, and were not paid wages due.

74. The representative parties will fairly and adequately protect the interests of the class.

75. The Plaintiffs have retained counsel competent and experienced in complex class action employment litigation.

76. A class action is superior to other available methods for the fair and efficient adjudication of this controversy—particularly in the context of WARN Act and wage litigation – where the individual Plaintiffs and class members may lack the financial resources to vigorously prosecute a lawsuit in federal court against complex corporate entities and separate actions would create a risk of inconsistent or varying adjudications with respect to individual class members and the adjudications with respect to individual class members would be dispositive of the interests of other members.

77. The Retreat Defendants and the Individual Defendants acted on grounds that apply generally to the class.

78. There are questions of law and fact common to the Class Members that predominate over any questions solely affecting individual members of the Class, including but not limited to:

    (a) Whether the Class Members were employees of Retreat who worked at or reported to Retreat's Facilities;

    (b) Whether Retreat ordered the termination of employment of each of the Class Members without cause on their part and without giving them 60 days advance written notice as required by the WARN Act;

(c) Whether Retreat were subject to any of the defenses provided for in the WARN Act;

(d) Whether the Retreat Defendants and the Individual Defendants failed to pay the minimum wage and overtime required; and

(e) Whether the Retreat Defendants and the Individual Defendants failed to pay the wages that were due pursuant to employment agreements and state law.

## UNPAID WAGES ALLEGATIONS

79. The FLSA and Art. X, Sec. 24 of the Florida Constitution, 42 Pa. Stat. § 260.1 et. seq., Connecticut General Statute §31-58, create private rights of action against any "employer" who violates wage provisions.

80. At all material times, the federal and Pennsylvania minimum wage was $7.25 per hour.

81. At all material times, the Florida minimum wage was $12.00 per hour.

82. At all material times, the Connecticut minimum wage was $15.69 per hour.

83. The FLSA, Florida Constitution, Pennsylvania and Connecticut law all define the term "employer" broadly to include "both the employer for whom the employee directly works as well as 'any person acting directly or indirectly in the interests of an employer in relation to an employee.'"

84. Corporate officers with operational control of a corporation's covered enterprise are employers along with the corporation, jointly and severally liable for wage violations.

85. Retreat had at least two employees.

86. Retreat did at least $500,000 a year in business and are thus an enterprise within the meaning of the FLSA.

87. Plaintiffs were engaged in interstate commerce or in the production of goods for commerce.

88. During the relevant workweeks, Plaintiffs did not satisfy the requirements for any of the exemptions set forth in the FLSA, the Florida Constitution, Pennsylvania or Connecticut law.

89. Plaintiffs worked for Defendants and were not paid from June 3, 2024 through the date of the layoffs and did not receive at least the minimum wage for all hours worked.

90. Plaintiffs, Calvert, Leggett, and other class members who worked in excess of forty (40) hours in a workweek did not receive overtime payments at a rate not less than one and one-half (1½) times their regular rate for such overtime hours since June 3, 2024.

91. All administrative notice requirements and prerequisites have been satisfied.

## **WARN ACT ALLEGATIONS**

92. Plaintiffs and other similarly situated employees were laid off as part of plant shutdowns or mass layoffs as defined by the WARN Act, for which they were entitled to receive 60 days advance written notice under the WARN Act.

93. At all relevant times, Retreat employed 100 or more employees, exclusive of part-time employees, or employed 100 or more employees who in the aggregate worked at least 4,000 hours per week exclusive of hours of overtime within the United States as defined by the WARN Act and employed more than 50 employees at the Facilities.

94. At all relevant times, the Retreat Defendants were an "employer" of the Class Members as that term is defined by the WARN Act.

95. On or about June 21, 2024, Retreat ordered "plant shutdowns" or "mass layoffs" as that term is defined by the WARN Act.

96. Retreat's actions at the Facilities resulted in an "employment loss" as that term is defined by the WARN Act for at least 33% of its workforce, and at least 50 of its employees, excluding (a) employees who worked less than six of the twelve months prior to the date WARN notice was required to be given and (b) employees who worked an average of less than 20 hours per week during the 90-day period prior to the date WARN notice was required to be given.

97. Retreat's termination of the Class Members' employment constituted plant shutdowns or mass layoffs as defined by the WARN Act.

98. The Plaintiffs and each of the Class Members who were employed by Retreat and then terminated as a result of Retreat executing plant shutdowns or mass layoffs at the Facilities were "affected employees" as defined by the WARN Act.

99. The Plaintiffs and each of the Class Members are "aggrieved employees" of Retreat as that term is defined by the WARN Act.

100. Pursuant to the WARN Act, Retreat was required to provide at least 60 days prior written notice of the layoff, or notice as soon as practicable, to the affected employees, or their representative, explaining why the sixty (60) days prior notice was not given.

101. Retreat failed to give at least sixty (60) days prior notice of the layoff in violation of the WARN Act.

102. Retreat failed to pay the Plaintiffs and each of the Class Members their respective wages, salary, commissions, bonuses, accrued holiday pay and accrued vacation for 60 working days following their respective layoffs, and failed to make the pension and 401(k) contributions, provide other employee benefits under ERISA, and pay their medical expenses for 60 calendar days from and after the dates of their respective terminations.

103. As a result of Retreat's failure to pay the wages, benefits and other monies as asserted, the Plaintiffs and Class Members were damaged in an amount equal to the sum of the members' unpaid wages, accrued holiday pay, accrued vacation pay, accrued sick leave pay and benefits which would have been paid for a period of sixty (60) calendar days after the date of their terminations.

104. All administrative notice requirements and prerequisites have been satisfied.

## COUNT I

## **VIOLATIONS OF THE WARN ACT AS TO THE RETREAT DEFENDANTS**

105. Plaintiffs hereby incorporate by reference the allegations contained in paragraphs 1 through 78 and 92 through 104 as if fully stated herein.

106. Retreat's failure to provide Plaintiffs advanced written notice of their layoffs constitutes a violation of the WARN Act.

**WHEREFORE**, Plaintiffs pray that this Court award the following relief:

(a) An amount equal to the sum of: unpaid wages, salary, commissions, bonuses, accrued holiday pay, accrued vacation pay pension and 401(k) contributions and other ERISA benefits, for sixty (60) working days following the member employee's termination, that would have been covered and paid under the then applicable employee benefit plans had that coverage continued for that period, all determined in accordance with the WARN Act, 29 U.S.C. § 2104(a)(1)(A);

(b) Certification that, pursuant to Fed. R. Civ. P. 23 (a) and (b) and the WARN Act, Plaintiffs and the Other Similarly Situated Former Employees constitute a single class;

 (c) Designation of Plaintiffs Williams, Calvert, Davis, and Leggett as Class Representatives;

 (d) Appointment of the undersigned attorneys as Class Counsel;

 (e) Interest as allowed by law on the amounts owed under the preceding paragraphs;

 (f) The reasonable attorneys' fees and the costs and disbursements the Plaintiffs incur in prosecuting this action, as authorized by the WARN Act; and

 (g) Such other and further relief as this Court may deem just and proper.

## COUNT II
## VIOLATIONS OF THE FLSA AS TO ALL DEFENDANTS

107. Plaintiffs hereby incorporate by reference the allegations contained in paragraphs 1 through 91 as if fully stated herein.

108. The Retreat Defendants' and the Individual Defendants' failure to provide Plaintiffs minimum wage and overtime constitutes a violation of the FLSA.

109. The Retreat Defendants' and the Individual Defendants' violations of the FLSA were knowing and willful.

**WHEREFORE**, Plaintiffs pray that this Court award the following relief:

 a) a judgment that Defendants violated 29 U.S.C. §§206, 207 of the Fair Labor Standards Act;

 b) damages for the amount of unpaid minimum wage and overtime compensation owed to Plaintiffs;

 c) liquidated damages, pursuant to 29 U.S.C. § 216(b), in an amount equal to the compensation owed to Plaintiffs;

    d)    post-judgment interest, reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b); and

    e)    any other additional relief as the Court deems just and proper.

## COUNT III

### VIOLATIONS OF THE FLSA AS TO THOSE SIMILARLY SITUATED AGAINST ALL DEFENDANTS

110.    Plaintiffs hereby incorporate by reference the allegations contained in paragraphs 1 through 91 as if fully stated herein.

111.    The Retreat Defendants' and the Individual Defendants' failure to provide Plaintiffs, Calvert, Leggett and those similarly situated to Plaintiffs minimum wage and overtime compensation, if applicable, constitutes a violation of the FLSA.

112.    The Retreat Defendants' and the Individual Defendants' violations of the FLSA were knowing and willful.

**WHEREFORE**, Plaintiffs pray that this Court award the following relief:

    a)    judgment that Defendants violated 29 U.S.C. §§ 206, 207 of the Fair Labor Standards Act;

    b)    damages for the amount of unpaid minimum wage and overtime compensation owed to Plaintiffs;

    c)    liquidated damages, pursuant to 29 U.S.C. § 216(b), in an amount equal to the compensation owed to Plaintiffs;

    d)    post-judgment interest, reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b); and

    e)    any other additional relief as the Court deems just and proper.

## COUNT IV

## **UNPAID MINIMUM WAGE PURSUANT TO STATE LAW AS TO ALL DEFENDANTS**

113. Plaintiffs hereby incorporate by reference the allegations contained in paragraphs 1 through 91 as if fully stated herein.

114. Plaintiffs, and all others similarly situated, did not receive payments at a rate at least equal to the minimum wage for all hours worked as required by applicable state law.

**WHEREFORE**, Plaintiffs, and all others similarly situated, respectfully pray that the Court award the following relief:

    a)    a judgment that Defendants violated Art. X, Sec. 24 of the Florida Constitution and the Connecticut minimum wage statute;

    b)    damages for the amount of unpaid minimum wage compensation owed to Plaintiffs;

    c)    liquidated damages in an amount equal to the minimum wage compensation owed to Plaintiffs;

    d)    post-judgment interest, reasonable attorneys' fees and costs, and

    e)    any other additional relief as the Court deems just and proper.

## COUNT V

## **UNPAID WAGES AS TO ALL DEFENDANTS**

115. Plaintiffs hereby incorporate by reference the allegations contained in paragraphs 1 through 91 as if fully stated herein.

116. Plaintiffs, and all others similarly situated, worked for all Defendants.

117. Plaintiffs, and all others similarly situated, did not receive wages due despite an agreement with Retreat to receive wages for all hours worked.

118. CT Gen Stat § 31-71 requires the payment of all wages upon termination.

119. 43 Pa. Stat. § 260.5 (a) requires payment of wages on or before the next scheduled payday.

120. Florida law requires payment of wages for work performed.

**WHEREFORE**, Plaintiffs, and all others similarly situated, respectfully pray that the Court award the following relief:

    a) a judgment that Defendants breached their employment agreements by failing to pay wages due;

    b) damages for the amount of unpaid compensation owed to Plaintiffs and all other similarly situated;

    c) double and liquidated and other damages as set forth in CT Gen Stat § 31-72, and 43 P.S. § 260.10;

    d) post-judgment interest, reasonable attorneys' fees and costs pursuant to section 448.08, Florida Statues, CT Gen Stat § 31-72, and 43 P.S. § 260.9a(c),

    e) any other additional relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs further demand a jury trial on all issues so triable as of right.

Respectfully submitted,

/s/ Michelle Erin Nadeau
Ryan D. Barack
Florida Bar No. 0148430
Primary Email: rbarack@employeerights.com
Secondary Email: jackie@employeerights.com
Michelle Erin Nadeau
Florida Bar No. 0060396
Primary Email: mnadeau@employeerights.com
Secondary Email: jackie@employeerights.com

Kwall Barack Nadeau PLLC
304 S. Belcher Rd., Suite C
Clearwater, Florida 33765
(727) 441-4947
(727) 447-3158 Fax
Attorneys for Plaintiffs

/s/ Michael A. Pancier
Michael A. Pancier
Fla. Bar No. 958484
Email: mpancier@pancierlaw.com
Michael A. Pancier, P.A.
9000 Sheridan Street, Suite 93
Pembroke Pines, FL 33024
(954) 862-2217
Attorney for Plaintiffs