IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION
CASE NO: 24-cv-80787-DMM/Matthewman

**MIA WILLIAMS, BRITTANY CALVERT,**
**DEDTRA DAVIS, and ALISA LEGGETT,**
on their own behalf and on behalf of those similarly situated,

 *Plaintiffs,*
v.

**RETREAT BEHAVIORAL**
**HEALTH, LLC, ET AL,**

 *Defendants.*
_____/

**PLAINTIFFS' MOTION FOR ENTRY OF FINAL DEFAULT JUDGMENT
AS TO LIABILITY AGAINST DEFENDANTS,
RETREAT BEHAVIORAL HEALTH, LLC, and NR CONNECTICUT, LLC**

 Plaintiffs, Mia Williams, Brittany Calvert, Dedtra Davis, And Alisa Leggett, on their own behalf and on behalf of those similarly situated, (collectively "Plaintiffs"), pursuant to Rule 55(b) of the Federal Rules of Civil Procedure, and this Court's Order dated August 29, 2024, respectfully move this Court for entry of final default judgment as to liability only against the Defendants, RETREAT BEHAVIORAL HEALTH, LLC, and NR CONNECTICUT, LLC, and state the following:

**RELEVANT FACTUAL BACKGROUND**

 Plaintiffs filed the instant matter involving RETREAT BEHAVIORAL HEALTH, LLC, and its affiliates, a provider of behavioral and mental health services in Florida, Connecticut, and Pennsylvania. Retreat operated in-patient facilities in Palm Beach County, Florida, Lancaster County, Pennsylvania, and New Haven, Connecticut and behavioral health service centers in Palm Beach Lakes, Florida, South Miami, Florida, Akron, Pennsylvania, Philadelphia, Pennsylvania,

and Lansdale, Pennsylvania ("the Facilities").  Plaintiffs were employed by Retreat until they were terminated without notice and with substantial amounts of wages unpaid.  Plaintiffs assert a variety of claims associated with the wages due and their failure to receive advanced notice including federal claims under the WARN Act and the Fair Labor Standards Act, as well as various state law claims under Florida, Pennsylvania, and Connecticut law for minimum wage and unpaid wage violations.

## RELEVANT PROCEDURAL HISTORY

Plaintiffs filed the present class action on June 2, 2024, after the Retreat facilities closed down following the suicides of the CEO and CFO of the Retreat entities. Plaintiffs amended their complaint on July 18, 2024, pursuant to Rule 15(a), Fed.R.Civ.P. asserting the following claims against the Defendants RETREAT BEHAVIORAL HEALTH, LLC, NR CONNECTICUT, LLC, NR FLORIDA ASSOCIATES, LLC, and NR PENNSYLVANIA ASSOCIATES, LLC: Count I: Violation of the WARN Act; Count II: Violation of the Fair Labor Standards Act; Count III: Violation of the Fair Labor Standards Act on behalf of all Similarly Situated; Count IV: Unpaid Minimum Wage pursuant to State Law; and Count V: Unpaid Wages. *See generally* [DE No. 4]. After Defendants RETREAT BEHAVIORAL HEALTH, LLC, NR CONNECTICUT, LLC, NR FLORIDA ASSOCIATES, LLC, and NR PENNSYLVANIA ASSOCIATES, LLC, failed to appear, answer, or otherwise plead to the Amended Complaint, the Clerk entered defaults against them on June 16, 2022 [DE No. 37]. In this Motion, the Plaintiffs are now seeking a final default judgment as to liability as to Defendants, RETREAT BEHAVIORAL HEALTH, LLC, and NR CONNECTICUT, LLC. [1]

---

[1]   Subsequent to this Court's August 29, 2024 Order and the entry of the Clerk's default, Defendants, NR FLORIDA ASSOCIATES, LLC, and NR PENNSYLVANIA ASSOCIATES, LLC entered an appearance through counsel, (see DE 45, 50 respectively),  and have moved to set

**MEMORANDUM OF LAW**

**I.     Standard for Effecting Default Judgment**

Pursuant to Federal Rule of Civil Procedure 55(b)(2), the Court is authorized to enter a default judgment against a properly served defendant who fails to plead in response to a complaint or otherwise appear. *Burger King Corp. v. Huynh*, 2011 WL 6190163, at *3 (S.D. Fla. Dec. 5, 2011). Although the mere entry of a default by the Clerk does not, in itself, warrant the entry of a default judgment, the Court may do so if it finds sufficient legal basis in the pleadings. *See Tyco Fire & Sec. LLC v. Alcocer*, 218 F. App'x 860, 863 (11th Cir. 2007) (citing Nishimatsu Constr. Co. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975)). A "defendant, by his default, admits the plaintiff's well-pleaded allegations of fact," as set forth in the operative complaint. *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.,* 561 F.3d 1298, 1307 (11th Cir. 2009). However, the defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law. *See Goldman v. HSBC Bank USA, Nat'l Ass'n,* No. 13-81271-CIV, 2015 WL 1782241, at *1 (S.D. Fla. Mar. 24, 2015). "[B]efore entering a default judgment for damages, the district court must ensure that the well-pleaded allegations in the complaint . . . actually state a substantive cause of action and there is a substantive, sufficient basis in the pleadings for the particular relief sought." *Hayes v. Asset Acceptance,* No. 13-81143-CIV, 2014 WL 1767106, at *1 (S.D. Fla. May 2, 2014) (internal quotation marks omitted) (quoting Tyco Fire & Sec., LLC, 218 F. App'x at 863).

**II.    Count I: Violation of WARN**

To establish a violation of the WARN Act, Plaintiffs must allege three elements: "(1) a mass layoff or plant closing as defined by the statute conducted by (2) an employer who fired

---

aside the clerk's default and have agreed to answer the First Amended Complaint. (See DE #51). Accordingly, Plaintiffs are only seeking a final default as to liability as to RETREAT BEHAVIORAL HEALTH, LLC, and NR CONNECTICUT, LLC.

3

employees (3) who, pursuant to WARN, are entitled to notice." *Sides v. Macon Cnty. Greyhound Park, Inc.,* 725 F.3d 1276, 1281 (11th Cir. 2013). Under the WARN Act, employees are entitled to a 60-day notice unless the employer can show that one of several affirmative defenses applies. *See* 29 U.S.C. § 2102(a), (b).

Pursuant to 29 U.S.C. § 2101(a)(2), a "plant closing" is defined as: "the permanent or temporary shutdown of a single site of employment, or one or more facilities or operating units within a single site of employment, if the shutdown results in an employment loss at the single site of employment during any 30–day period for 50 or more employees excluding any part-time employees[.]" Pursuant to 29 U.S.C. § 2101(a)(3), a "mass layoff" is a reduction in force which ... (A) is not the result of a plant closing; and (B) results in an employment loss at the single site of employment during any 30–day period for ... (i)(I) at least 33 percent of the employees (excluding any part-time employees); and (II) at least 50 employees (excluding any part-time employees); or (ii) at least 500 employees (excluding any part-time employees)[.]"

To determine who should receive notice, 29 U.S.C. § 2102(a) states that: "An employer shall not order a plant closing or mass layoff until the end of a 60–day period after the employer serves written notice of such an order ... to each *affected employee*." *Id.* § 2102(a)(1) (emphasis added). "Affected employee[ ]" is defined to mean an employee "who may reasonably be expected to experience an *employment loss* as a consequence of a proposed plant closing or mass layoff by [his or her] employer." *Id.* § 2101(a)(5) (emphasis added). "[E]mployees" include "[w]orkers on temporary layoff or on leave who have a reasonable expectation of recall...." 20 C.F.R. § 639.3(a)(1)(ii). An "employment loss" means "(A) an employment termination, other than a discharge for cause, voluntary departure, or retirement, (B) a layoff exceeding 6 months, or (C) a

reduction in hours of work of more than 50 percent during each month of any 6–month period."

29 U.S.C. § 2101(a)(6); *Sides v. Macon Cnty. Greyhound Park, Inc.,* 725 F.3d at 1281–82.

In the Amended Complaint, the Plaintiffs alleged, *inter alia*, the following against Defendants, RETREAT BEHAVIORAL HEALTH, LLC, and NR CONNECTICUT, LLC:

59. On or about June 21, 2024, Retreat and the Individual Defendants failed to pay Plaintiffs and all other employees for the June 3, 2024 thru June 16, 2024 pay period.
60. Later that same day, Plaintiffs and other employees were informed that the Chief Executive Officer, Peter Schorr, died.
61. It is believed that Peter Schorr died by suicide.
62. Plaintiffs were told that all patients in the West Palm Beach facility were being transitioned out of Retreat's care immediately.
63. On or about June 23, 2024, Plaintiffs and other employees received an email from Chief Administrative Officer, Scott Korogodsky, stating that Retreat was "experiencing financial difficulties" and that they "did not yet have an answer regarding the distribution of payroll funds."
64. The email included the following explanations regarding the "unanswered" questions:

    - *When will we be paid monies due from payroll date of Friday, June 21, 2024?*
        - We hope to have a definitive answer toward week's end.
    - *Can employees file for Unemployment Compensation?*
        - We are awaiting attorney guidance on UC (Unemployment Compensation). At this time, no facility has been given / granted authority to furlough employees.
        - If you are currently employed, you may not apply for benefits.
    - *What are employee's chances of continued employment?*
        - RBH Management is committed to continuing Peter's mission to provide quality substance abuse care and mental health services to all our communities.
        - Every employee may need to review their own circumstances and do what is best for their personal and family situation.
    - *Do I still have healthcare benefits?*
        - Every Management has consulted with our broker. UHC is working with our broker and RBH for continued coverage.

65. On June 24, 2024, Mr. Korogodsky sent a follow-up email to all staff stating that they did "not have positive updates," that patients were being discharged and transferred at all locations and levels of care, and that Retreat is "closing services."

*\*\*\**

5

92. Plaintiffs and other similarly situated employees were laid off as part of plant shutdowns or mass layoffs as defined by the WARN Act, for which they were entitled to receive 60 days advance written notice under the WARN Act.
93. At all relevant times, Retreat employed 100 or more employees, exclusive of part-time employees, or employed 100 or more employees who in the aggregate worked at least 4,000 hours per week exclusive of hours of overtime within the United States as defined by the WARN Act and employed more than 50 employees at the Facilities.
94. At all relevant times, the Retreat Defendants were an "employer" of the Class Members as that term is defined by the WARN Act.
95. On or about June 21, 2024, Retreat ordered "plant shutdowns" or "mass layoffs" as that term is defined by the WARN Act.
96. Retreat's actions at the Facilities resulted in an "employment loss" as that term is defined by the WARN Act for at least 33% of its workforce, and at least 50 of its employees, excluding (a) employees who worked less than six of the twelve months prior to the date WARN notice was required to be given and (b) employees who worked an average of less than 20 hours per week during the 90-day period prior to the date WARN notice was required to be given.
97. Retreat's termination of the Class Members' employment constituted plant shutdowns or mass layoffs as defined by the WARN Act.
98. The Plaintiffs and each of the Class Members who were employed by Retreat and then terminated as a result of Retreat executing plant shutdowns or mass layoffs at the Facilities were "affected employees" as defined by the WARN Act.
99. The Plaintiffs and each of the Class Members are "aggrieved employees" of Retreat as that term is defined by the WARN Act.
100. Pursuant to the WARN Act, Retreat was required to provide at least 60 days prior written notice of the layoff, or notice as soon as practicable, to the affected employees, or their representative, explaining why the sixty (60) days prior notice was not given.
101. Retreat failed to give at least sixty (60) days prior notice of the layoff in violation of the WARN Act.
102. Retreat failed to pay the Plaintiffs and each of the Class Members their respective wages, salary, commissions, bonuses, accrued holiday pay and accrued vacation for 60 working days following their respective layoffs, and failed to make the pension and 401(k) contributions, provide other employee benefits under ERISA, and pay their medical expenses for 60 calendar days from and after the dates of their respective terminations.
103. As a result of Retreat's failure to pay the wages, benefits and other monies as asserted, the Plaintiffs and Class Members were damaged in an amount equal to the sum of the members' unpaid wages, accrued holiday pay, accrued vacation pay, accrued sick leave pay and benefits which would have been paid for a period of sixty (60) calendar days after the date of their terminations.

[DE 4, ¶¶ 59-65, 92-103]. The Amended Complaint alleged that the Plaintiffs were, and continue to be, injured by reason of Defendants, RETREAT BEHAVIORAL HEALTH, LLC, and NR CONNECTICUT, LLC, WARN violations. Id. ¶ 106. Given that the Plaintiffs established that the aforementioned Defendants satisfied each of the requirements needed to establish WARN liability, this Court should grant default judgments as to liability against Defendants, RETREAT BEHAVIORAL HEALTH, LLC, and NR CONNECTICUT, LLC.

**III.    Count II, III, and IV: Violation of the FLSA and Florida and Connecticut State Minimum Wage Laws.**

With limited exceptions not applicable to the instant case, the FLSA "requires employers who meet its preconditions to pay workers a minimum wage and to provide overtime pay where workers exceed forty hours per week." *Polycarpe v. E&S Landscaping Serv., Inc.,* 616 F.3d 1217, 1220 (11th Cir. 2010) (citing 29 U.S.C. § 206(a) (minimum wage) and § 207(a) (overtime pay)). Specifically, section 206(a) requires FLSA employers pay employees minimum wages, while section 207(a)(1) requires employers to pay overtime wages at a rate of one and one-half times the employee's regular rate of pay for hours worked in excess of forty hours in a work week. In order to establish liability under the FLSA's overtime and minimum wage provisions, Plaintiffs must show: (1) an employee-employer relationship exists between the parties, and (2) they are "covered" by the FLSA. *Josendis v. Wall to Wall Residence Repairs, Inc.,* 662 F.3d 1292, 1298 (11th Cir. 2011). With respect to the coverage element, "a plaintiff employee must establish one of two types of coverage under the FLSA: (1) 'enterprise coverage,' which applies to the defendant employer, or (2) 'individual coverage,' which applies to the plaintiff employee." *Gaviria v. Maldonado Brothers, Inc.,* 2014 WL 12531281, at *3 (S.D. Fla. Mar. 31, 2014) (citing Martinez v. Palace, 414 F. App'x 243, 244-45 (11th Cir. 2011) and Thorne v. All Restoration Servs., 448 F.3d 1264, 1265-66 (11th Cir. 2006)).  "An employer falls within the FLSA's enterprise coverage

7

if it meets two requirements: (1) it 'has employees engaged in commerce or in the production of goods for commerce, or ... has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person' and (2) has an 'annual gross volume of sales made or business done,'" which is in excess of $500,000. *Id.* (quoting 29 U.S.C. § 203(s)(1)(A)); *see also Polycarpe,* 616 F.3d at 1220.

Once the employer and coverage elements are satisfied, an FLSA overtime plaintiff must plead sufficient facts to demonstrate he or she worked more than forty hours in at least one workweek and the defendant failed to pay the requisite premium for those overtime hours. *Cooley v. HMR of Alabama, Inc.,* 259 F. Supp. 3d 1312, 1319 (N.D. Ala. 2017); *see also Stafflinger v. RTD Constructions, Inc.,* 2015 WL 9598825, at *2 (M.D. Fla. Dec. 14, 2015), report and recommendation adopted, 2016 WL 48110 (M.D. Fla. Jan. 5, 2016).  Likewise, an FLSA minimum-wage plaintiff must likewise plead sufficient facts to demonstrate the defendant failed to pay him or her the minimum wage as required by the FLSA. *Moser v. Action Towing Inc. of Tampa,* 2017 WL 10276702, at *1 (M.D. Fla. Feb. 6, 2017) (citation omitted).

In the Amended Complaint, the Plaintiffs alleged, *inter alia*, the following against Defendants, RETREAT BEHAVIORAL HEALTH, LLC, NR CONNECTICUT, LLC:

> 6.  At all times material to this action, Mia Williams was a resident of the Southern District of Florida, West Palm Beach Division who was employed by Defendants.
> 7.  At all times material to this action, Brittany Calvert was a resident of Jacksonville, Florida, who performed services both in person and remotely in the Southern District of Florida, West Palm Beach Division as she was employed by Defendants.
> 8.  At all times material to this action, Dedtra Davis was a resident of Pennsylvania who was employed by Defendants.
> 9.  At all times material to this action, Alisa Leggett was a resident of Connecticut who was employed by Defendants.

***

31. At all times material to this action, Plaintiffs were employees of the Individual Defendants and the Individual Defendants were the employer of Plaintiffs for purposes of the FLSA as well as under Florida, Connecticut, and Pennsylvania law.

\*\*\*

55. On or about May 24, 2024, Retreat and the Individual Defendants failed to pay Plaintiffs and all other employees for the May 6, 2024 thru May 19, 2024 pay period.
56. Employees were paid late on or about May 25, 2024.
57. On or about June 7, 2024, Retreat and the Individual Defendants failed to pay Plaintiffs and all other employees for the May 20, 2024 thru June 2, 2024 pay period.
58. Employees were paid late on or about June 10, 2024.
59. On or about June 21, 2024, Retreat and the Individual Defendants failed to pay Plaintiffs and all other employees for the June 3, 2024 thru June 16, 2024 pay period.

\*\*\*

79. The FLSA and Art. X, Sec. 24 of the Florida Constitution, 42 Pa. Stat. § 260.1 et. seq., Connecticut General Statute §31-58, create private rights of action against any "employer" who violates wage provisions.
80. At all material times, the federal and Pennsylvania minimum wage was $7.25 per hour.
81. At all material times, the Florida minimum wage was $12.00 per hour.
82. At all material times, the Connecticut minimum wage was $15.69 per hour.
83. The FLSA, Florida Constitution, Pennsylvania and Connecticut law all define the term "employer" broadly to include "both the employer for whom the employee directly works as well as 'any person acting directly or indirectly in the interests of an employer in relation to an employee.'"
84. Corporate officers with operational control of a corporation's covered enterprise are employers along with the corporation, jointly and severally liable for wage violations.
85. Retreat had at least two employees.
86. Retreat did at least $500,000 a year in business and are thus an enterprise within the meaning of the FLSA.
87. Plaintiffs were engaged in interstate commerce or in the production of goods for commerce.
88. During the relevant workweeks, Plaintiffs did not satisfy the requirements for any of the exemptions set forth in the FLSA, the Florida Constitution, Pennsylvania or Connecticut law.
89. Plaintiffs worked for Defendants and were not paid from June 3, 2024 through the date of the layoffs and did not receive at least the minimum wage for all hours worked.
90. Plaintiffs, Calvert, Leggett, and other class members who worked in excess of forty (40) hours in a workweek did not receive overtime payments at a rate not less than one and one-half (1½ ) times their regular rate for such overtime hours since June 3, 2024.

\*\*\*

108. The Retreat Defendants' and the Individual Defendants' failure to provide Plaintiffs minimum wage and overtime constitutes a violation of the FLSA.
109. The Retreat Defendants' and the Individual Defendants' violations of the FLSA were knowing and willful.

[DE 4, ¶¶ 6-9, 31, 55-59, 79-90, 108-109]. The Amended Complaint alleged that the Plaintiffs were, and continue to be, injured by reason of Defendants', RETREAT BEHAVIORAL HEALTH, LLC, and NR CONNECTICUT, LLC, failure to pay them minimum wages and overtime compensation. Given that the Plaintiffs established that the aforementioned Defendants satisfied each of the requirements needed to establish FLSA liability, this Court should grant default judgments as to FLSA liability against Defendants, RETREAT BEHAVIORAL HEALTH, LLC, and NR CONNECTICUT, LLC.

In addition to the federal minimum wage claims, the Plaintiffs also assert minimum wage claims under Florida and Connecticut law. [DE 4, ¶¶ 31, 55-59, 79-90]. See generally, Connecticut General Statute, Chapter 558, Sec. 31-58 et seq.[2] and Art. X, sec. 24 of the Florida Constitution. As such, Plaintiffs have satisfied each of the requirements needed to establish liability under the Florida and Connecticut minimum wage laws, therefore, this Court should grant default judgments as to liability against Defendants, RETREAT BEHAVIORAL HEALTH, LLC, under the Florida Minimum Wage Act and against Defendant, NR CONNECTICUT, LLC, under Connecticut General Statute, Chapter 558, Sec. 31-58 *et seq.,* and should therefore grant default judgments as to liability in accordance thereto.

**IV.**     **Count V: Claims for Unpaid Wages under Florida, and Connecticut law**

In addition to the statutory minimum wage and overtime claims, the Plaintiffs also assert common law unpaid wage claims under Florida law, and statutory wage claims under Connecticut law. [DE 4, ¶¶ 6-9, 31, 55-59, 79-90, 117-120]. The Amended Complaint states that the Defendants failed to pay Plaintiffs and all other similarly situated employees in Florida, and

---

[2] Connecticut General State § 31-68 similarly provides a cause of action for recovery of unpaid minimum wages for Connecticut employees.

Connecticut their wages for the June 3, 2024 thru June 16, 2024 pay period upon the Defendants' shutdown of operations despite both common law and statutory requirements that they be paid their wages for all hours worked. *See id; see also* CT Gen. Stat. §31-71c (b)-(c).[3] Plaintiffs have therefore established that the aforementioned defaulted Defendants satisfied each of the requirements needed to establish liability under their respective state laws, this Court should grant default judgments as to unpaid wage liability against Defendants, RETREAT BEHAVIORAL HEALTH, LLC, under Florida law, grant default judgment as to statutory unpaid wage liability against Defendant NR CONNECTICUT, LLC, pursuant to Connecticut law under CT Gen Stat §31-71c.

## V.     Default Judgment Limited to Liability Only

Plaintiffs are still navigating motions to dismiss and have yet to begin discovery or move for class certification and are in the process of serving the Estates of the two deceased Defendants. Until the Court has an opportunity to consider whether Plaintiffs' action is appropriate for class treatment—which it is—damages cannot reasonably be calculated for purposes of entering final judgment. Accordingly, Plaintiffs respectfully request the Court enter default judgment against the defaulting Defendants solely as to liability and defer judgment as to damages. *See, e.g., Trull v. Plaza Assocs.,* 1998 WL 578173, at *1, 4 (N.D. Ill. Sept. 3, 1998) (considering the question of class certification after it had entered default judgment against one of the defendants as to liability only); *Leider v. Ralfe,* 2003 WL 24571746, at *10 (S.D.N.Y. Mar. 4, 2003) (same), report and

---

[3] Conn.Gen. Stat. § 31-71c (b)-(c) provides: "(b) Whenever an employer discharges an employee, the employer shall pay the employee's wages in full not later than the business day next succeeding the date of such discharge. (c) When work of any employee is suspended as a result of a labor dispute, or when an employee for any reason is laid off, the employer shall pay in full to such employee the wages earned by him not later than the next regular pay day, as designated under section 31-71b."

11

recommendation adopted in part,  2003 WL 22339305 (S.D.N.Y. Oct. 10, 2003); *See also Kron v. Grand Bahama Cruise Line, LLC*, No. 15-CIV-23807 (S.D. Fla. April 3, 2019)(Martinez, J.) [DE No. 60].

## CONCLUSION

The Court should enter default judgment against the Defaulting Defendants on liability only and should determine damages after the Plaintiffs' class certification motion has been filed and resolved. If class certification is granted, Plaintiffs will conduct discovery to identify the class members and determine their damages on a class-wide basis.

**WHEREFORE**, for the grounds set forth herein,  Plaintiffs respectfully request that the Court enter a Default Judgment as to Liability only as to the Defendants, RETREAT BEHAVIORAL HEALTH, LLC and NR CONNECTICUT, LLC,  and grant any other relief the Court deems appropriate.

Dated: September 17, 2024

Respectfully submitted,

/s/ Ryan D. Barack
Ryan D. Barack
Florida Bar No. 0148430
Primary Email: rbarack@employeerights.com
Secondary Email: jackie@employeerights.com
Michelle Erin Nadeau
Florida Bar No. 0060396
Primary Email: mnadeau@employeerights.com
Secondary Email: jackie@employeerights.com
Kwall Barack Nadeau PLLC
304 S. Belcher Rd., Suite C
Clearwater, Florida 33765
(727) 441-4947
(727) 447-3158 Fax
Attorneys for Plaintiffs

-and-

/s/ Michael A. Pancier
Michael A. Pancier
Fla. Bar No. 958484
Email: mpancier@pancierlaw.com
Michael A. Pancier, P.A.
9000 Sheridan Street, Suite 93
Pembroke Pines, FL 33024
(954) 862-2217
Attorney for Plaintiffs

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on this 17th day of September 2024, I electronically filed the foregoing with the Clerk of Court using the CM/DE system.

/s/ Michael A. Pancier, Esq.
Attorney for Plaintiffs

Cc: via Certified Mail, Return Receipt Requested

NR CONNECTICUT, LLC,
by serving: NR CONNECTICUT, LLC, Registered Agent
3543 MAIN STREET, SECOND FLOOR,
BRIDGEPORT, CT, 06606

RETREAT BEHAVIORAL HEALTH, LLC,
by serving: David Silberstein, Manager
1001 E 19th St
Brooklyn, NY 11230