# EXHIBIT 1

IN THE COURT OF COMMON PLEAS OF LANCASTER COUNTY, PENNSYLVANIA
CIVIL DIVISION - LAW

| | |
|---|---|
| LAPIS ADVISERS, LP, solely in its capacity as agent for Millennium Trust Company, f/b/o Lapis Municipal Opportunities Fund III, LP,<br><br>Plaintiff,<br><br>-against-<br><br>NR PENNSYLVANIA ASSOCIATES, LLC, a Pennsylvania limited liability company, and NR FLORIDA ASSOCIATES, LLC, a Florida limited liability company,<br><br>Defendants. | No. 2024-02781 |

**AFFIDAVIT OF JAMES W. YOUNG IN SUPPORT OF EMERGENCY MOTION
TO PAY CERTAIN PAST-DUE PAYROLL AMOUNTS AND RECEIVER EXPENSES**

I, James W. Young, declare under penalty of perjury that the following facts are true and correct to the best of my information and belief:

1. I have personal knowledge of the facts in this Affidavit as set forth below.

2. This Affidavit is being submitted to the Court in support of the *Emergency Motion to Pay Certain Past-Due Payroll Amounts and Receiver Expenses* (the "**Motion**") filed by Lapis Advisers, LP, ("**Lapis**") contemporaneously herewith.

3. I have been appointed as receiver of NR Pennsylvania Associates, LLC on a temporary basis, effective as of June 27, 2024 (the "**Receiver**").

**A.    Unpaid NRPA Payroll**

4. I have conducted an investigation into the scope and magnitude of unpaid employee compensation to employees that worked at NRPA prior to my appointment as Receiver. This investigation included review of the NRPA books and records and discussions with NRPA's payroll provider, ADP. Based upon my investigation and information provided to me by ADP, I have

determined that NRPA's former employees were not paid for work from and after June 3, 2024. It is my further understanding that all NRPA employees were terminated not later than June 26, 2024.

5. Through my investigations, I have also learned that several persons identified as employees on the payroll reports were either closely associated with or related to Mr. Peter Schorr, but did not actually provide services to NRPA during the June 3-June 26, 2024 period, and may never have provided services to NRPA (collectively with Mr. Schorr, the "***Insiders***"). While I am continuing my investigation, at this time I do not intend to authorize the payment of wages to the Insiders.

6. Based upon my review, the aggregate gross unpaid wages (i.e., inclusive of employer and employee taxes) due from NRPA to non-Insiders may be as high as $897,477.92 (the "***Unpaid Payroll***"), but that amount includes certain unpaid payroll taxes and employer 401(k) payments, as well as payroll amounts attributable to payroll periods that predate the payroll for the June 3, 2024 – June 16, 2024 payroll period. Additional amounts may be owing for unpaid wages for the period following the June 3, 2024 – June 16, 2024 payroll period. It is my understanding that the Unpaid Payroll obligations are junior in priority to the obligations owed to Lapis on account of its judgment and secured claims.

7. At my request, subject to availability of funds and Lapis' written consent, Lapis has agreed to the payment of no more than $663,000 of the Unpaid Payroll (the "***Payroll Amount***"), prior to payment of the outstanding Lapis Obligations. The Payroll Amount would be intended to cover the payroll for non-Insiders of NRPA for the June 3, 2024 – June 16, 2024 payroll period.

8. Based upon my review of the loan documents associated with the Lapis obligations, including schedules of unpaid principal, interest, fees and costs associated with the outstanding Revolver Loan and Term Loan, I have determined that as of July 12, 2024, Lapis is owed $2,879,330.34, plus interest, fees and costs that continue to accrue until paid (the "***Lapis***

*Obligations*"[1]). The Lapis Obligations are secured by substantially all of NRPA's assets, including its accounts receivable. I am in negotiations with Lapis to compromise the Lapis Obligations, which will allow me to expedite payment to Lapis and avoid the continued accrual of post-judgement interest, fees and legal costs. However, even at the current amount of the Lapis Obligations, I anticipate an ability to make payment in full on both the Lapis Obligations and the Payroll Amount.

9.  To pay the Payroll Amount, the Receiver requires access to funds from the NRPA accounts at Fulton Bank which have been garnished by Lapis. Subject to the terms of the proposed order submitted with the Motion, Lapis consents to removal of funds from the garnished NRPA accounts held at Fulton Bank. Absent access to the funds in NRPA's garnished accounts at Fulton Bank, the Receiver has no ability to fund the Payroll Amount.

**B.   Receivership Expenses**

10. Following my appointment as receiver, I determined that certain expenses of NRPA should be paid and lacked access to funding to pay for such expenses. For example, the Receiver has incurred immediate costs to change the locks at Retreat, establish the Receiver account at Fulton Bank, remove trash, gain access to the computer systems, hire former employees as independent contractors for security, maintenance, and process billing and accounts receivable. I have prepared a budget for my work as Receiver that continues to be refined and updated, which I have shared with counsel to Lapis, NRPA and other interested parties.

11. During the period of June 27, 2024 through and including July 20, 2024 (the "*Interim Period*"), I required access to funds to conduct my duties as Receiver. Lapis advanced funds pursuant to the terms of their underlying loan documents with NRPA to make "protective advances" to the Receiver, which funds were required to be used in accordance with the Court order

---

[1] At the time the Receiver was appointed, the total amount due Lapis exceeded $6.8 million. Lapis exercised judgment upon Fulton Bank for partial satisfaction of the amounts due Lapis. The amount of the Lapis Obligations stated herein have been reduced by the amounts delivered to Lapis from Fulton Bank and applied to the Lapis debt.

3

Lancaster County Prothonotary E-Filed - 18 Jul 2024 09:47:37 AM
Case Number: CI-24-02781

appointing me as Receiver.

12. During the Interim Period, Lapis advanced funds in the aggregate amount of $76,426.40. As required by its agreement with Lapis, all such funds were used for urgent Receiver expense, including as described in paragraph 10.

13. Reimbursement of Lapis is owed in the amount of $76,426.40, plus all of its accrued interest at the contract rate under the existing loan documents between NRPA and Lapis. Because the advances require payment of interest consistent with the contract rate under the loan documents, I have requested that Lapis consent to funding to the Receiver directly from available funds held in the NRPA garnished depository accounts. Lapis has advised the Receiver that it consents to the Receiver's use of certain funds in the NRPA garnished accounts, subject to both the terms of the Motion, the Receiver's budget, and the Court's order appointing me as Receiver.

[*Remainder of page intentionally left blank; signature page follows*]

Lancaster County Prothonotary E-Filed - 18 Jul 2024 09:47:37 AM
Case Number: CI-24-02781

I declare under penalty of perjury under the law of the State of Pennsylvania, that the foregoing statements are true and correct to the best of my knowledge and belief.

Dated: July 17, 2024

By: _____
James W. Young