## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No. 24-80787-MIDDLEBROOKS/Matthewman

MIA WILLIAMS, et al.,

      Plaintiffs,

v.

RETREAT BEHAVIORAL HEALTH, LLC, et al.,

      Defendants.

_____/

## <u>OMNIBUS ORDER ON MOTIONS TO DISMISS</u>

THIS CAUSE is before the Court on the various Defendants' Motions to Dismiss Plaintiffs' "First Amended Class Action Complaint" (DE 4).[1]  The Motions and their Responses are fully briefed and ripe for adjudication.  For the following reasons, I will grant these Motions and require that Plaintiffs file a Second Amended Complaint in this case.

---

[1] There are four pending Motions to Dismiss.  They comprise of Defendant Alexander Hoinsky's Motion (DE 27); Defendant Chrissy Gariano's Motion (DE 32); Defendants Coal Lake Worth, LLC ("Coal Lake Worth"), Coal New Haven LLC ("Coal New Haven"), Coal Capital Ephrata, LLC ("Coal Capital Ephrata"), Coal Capital Group, LLC ("Coal Capital"), CLW Holdings LLC ("CLW Holdings"), Coal Capital Holdings (Florida) LLC ("Coal Florida"), Coal Connecticut, LLC ("Coal Connecticut"), HFGC Florida, LLC ("HFGC"), and Defendant David Silverstein's Motion (hereinafter the "Coal Defendants' Motion") (DE 36); and lastly, Defendant NR Florida Associates, LLC, NR Pennsylvania Associates LLC, Coal Lake Worth, LLC, HFGC Florida, LLC, and James Young as temporary receiver of NR Pennsylvania Associates, LLC's Motion ("Various Defendants' Motion") (DE 61).  I also note that Coal Lake Worth, LLC appears to be a part of two separate Motions to Dismiss (DE 36, DE 61), which has gone unexplained by the Defendants.

## I.    BACKGROUND

This is a purported Class Action Lawsuit[2] by various former employees against their former employers for violations of state and federal wage-and-hour laws and for violations of federal employee termination statutes.  The statutes include the Fair Labor Standards Act of 1938 ("FLSA"), the Worker Adjustment and Retraining Notification Act of 1988 ("WARN Act"), the Florida Constitution, Art. X, Sec. 24, and minimum wage statutes under Connecticut and Pennsylvania law.  (DE 4).  Plaintiffs sue for their unpaid wages, including minimum wage and overtime compensation, liquidated damages, and post-judgment interest and attorneys' fees. Without alleging their specific job titles or duties, Plaintiffs allege that they were employed by the Defendants, a corporate group of behavioral and mental health providers and the individuals who owned/managed them at various locations in Florida, Connecticut, and Pennsylvania.  Plaintiffs allege that they were unduly terminated without proper notice and were not paid for several weeks leading up to their abrupt termination in violation of the laws described above.  Although this Order concerns Plaintiffs' First Amended Class Action Complaint (DE 4), this is my first consideration of any pleadings in this case on the merits, as Plaintiffs amended their original Complaint (DE 1) shortly after filing suit.

In their "First Amended Complaint," Plaintiffs allege that all the Defendant corporate entities, whom it labels as either "Retreat" or as the "Retreat Defendants" indistinguishably employed, paid, managed, and eventually terminated them from their employment.  Plaintiffs also allege that the Individual Defendants either owned or managed the Retreat Defendants and are jointly and severally liable as well for these corporate entities' legal shortcomings.

---

[2] On December 2, 2024, Plaintiffs filed Motions for Class Certification.  (DE 70, DE 71).

There are 19 total defendants, nearly all of whom are corporate LLCs (collectively "Corporate Defendants"):

1. Retreat Behavioral Health, LLC ("RBH")

2. NR Florida Associates, LLC ("NFRA")

3. NR Pennsylvania Associates, LLC ("NRPA")

4. James Young, receiver of NRPA ("Receiver Young")

5. NR Connecticut, LLC ("NRC")

6. DRPS Management, LLC ("DRPS")

7. Coal Lake Worth, LLC ("Coal Lake Worth")

8. CLW Holdings, LLC ("CLW Holdings")

9. Coal Capital Holdings (Florida) LLC ("Coal Florida")

10. Coal Connecticut, LLC ("Coal Connecticut")

11. Coal New Haven, LLC ("Coal New Haven")

12. Coal Capital Ephrata, LLC ("Coal Ephrata")

13. Coal Capital Group, LLC ("Coal Capital")

14. HFGC Florida, LLC ("HFGC")[3]

---

[3] Plaintiffs label Corporate Defendants 7-13 as the "Coal Entities" within its Complaint. Curiously, while HFGC is listed as a defendant within the title of the First Amended Class Action Complaint, Plaintiffs fail to include HFGC within its definition list of the "Retreat Defendants" or the "Coal Entities" within the opening paragraph of their Complaint. The sole allegations against HFGC in the entire action are that HFGC was a Florida limited liability company, conducted business in Palm Beach County, Florida, "owns the property where Retreat is operated, which is leased to Coal Lake Worth[,]" and that the "majority owner of each HFGC and Coal Lake Worth is CLW Holdings, an entity owned by [Defendant] David Silberstein[.]" (DE 4). Thus, Plaintiff appears to allege that HFGC was part of the corporate web that was used by the Defendants to own and run the properties. Despite my initial concerns, HFGC has appeared and filed a Motion to Dismiss along with the other "Coal Entities" and Individual Defendant Silverstein. (DE 61).

There are also five individual defendants (collectively "Individual Defendants"):

1. David Silverstein[4]

2. Christy Gariano

3. Alexander Hoinsky

4. Estate of Peter Schorr

5. Estate of Scott Korogodsky

The Individual Defendants are alleged to have had either an ownership or managerial interest over the Corporate Defendants. Thus, Plaintiffs allege that the Individual Defendants can also be held jointly liable as their employers for purposes of the federal and state wage statutes that give rise to this suit. (DE 4 at ¶ 31).

In essence, Plaintiffs allege that all the Defendants in this case were their "joint employers and/or an integrated or common enterprise, or predecessor and successor in interest" for purposes of bringing this action against them. (DE 4 at ¶ 32).

Plaintiffs brings five counts in this action. They include: Violations of the Warn Act (Count I), Violations of the FLSA (Count II), Violations of the FLSA as to Those Similarly Situated (Count III), Unpaid Minimum Wage Pursuant to [Florida] State Law (Count IV), and Unpaid Wages [Pursuant to Florida, Connecticut, and Pennsylvania state law] (Count V). All Counts are alleged against all the Defendants, except for Count I which is solely alleged against the Retreat (Corporate) Defendants.

Most of the Defendants, Corporate and Individual alike, have separately filed their Motions to Dismiss. Individual Defendants Hoinsky and Gariano argue that Plaintiffs fail to state a cause

---

[4] I note that Defendant Silverstein has corrected the spelling of his name as Silverstein rather than Plaintiffs' spelling of "Silberstein," and I adopt this corrected spelling throughout this Order.

of action against him/her because Plaintiffs fail to allege any specific facts that these Defendants had any management capabilities to either hire or fire employees, set work schedules, make other management/compensation decisions, or had any ownership interests in any of the Retreat entities. (DE 27, DE 32).   In other words, these Defendants argue that Plaintiffs have failed to allege sufficient facts that either of them constitutes an "employer" within the FLSA, the Florida Constitution, or other state law.

Another set of Corporate Defendants ("Various Defendants' Motion") (DE 61) make a similar argument.  (DE 61).  These Defendants add that the Plaintiffs have failed to sufficiently allege an FLSA joint employment relationship under the eight-factor test set forth in *Aimable v. Long and Scott Farms*, 20 F.3d 434 (11th Cir. 1994); *see also Antenor v. D&S Farms*, 88 F.3d 925, 929 (11th Cir. 1996) (citing *Aimable* for standard).  Additionally, these Defendants argue that Plaintiffs have failed to plead sufficient facts to show that the Defendants were their employers under the WARN Act or the other various state statutes.

Finally, the "Coal Entities" Defendants, including Individual Defendant Silverstein, filed their own Motion to Dismiss. (DE 36).  First Defendant Silverstein argues that there are no allegations against him that he possessed a managerial or ownership power over the employees, making the same argument as Defendants Hoinsky and Gariano.  The Coal Entities argue that Plaintiffs' vague allegations against them groups all the Corporate Defendants together and makes general allegations that they were Plaintiffs' employers without detailing which corporate entity engaged in what specific illegal behavior.  (DE 36).

I discuss these arguments below and conclude that Plaintiffs' First Amended Complaint must be dismissed for various deficiencies.

## II.     LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of the allegations in a complaint. *See* Fed. R. Civ. P. 12(b)(6). In assessing legal sufficiency, the Court is bound to apply the pleading standard articulated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). That is, the complaint "must … contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010) (quoting *Twombly*, 550 U.S. at 570). "Dismissal is therefore permitted when on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." *Glover v. Liggett Grp., Inc.*, 459 F.3d 1304, 1308 (11th Cir. 2006) (internal quotations omitted) (citing *Marshall Cty. Bd. of Educ. V. Marshall Cty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993)).

When reviewing a motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff and assume the truth of the plaintiff's factual allegations. *See Erickson v. Pardus*, 551 U.S. 89, 93 (2007); *Christopher v. Harbury*, 536 U.S. 403, 406 (2002); *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997). However, pleadings that "are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations," *Iqbal*, 556 U.S. at 678; *see also Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009) (stating that an unwarranted deduction of fact is not considered true for purposes of determining whether a claim is legally sufficient). "[A] formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted). "Factual allegations must be enough to raise [the plaintiff's] right to relief above the speculative level." *Id.*

### III.    DISCUSSION

I have carefully reviewed the Complaint and find that it is deficient in numerous ways.  I break down my analysis by the laws alleged to have been breached: the FLSA, the WARN Act, and the various state statutes.

#### A.  FLSA (Counts II and III)

Counts II and III allege violations of the FLSA against all Defendants. In their Amended Complaint, Plaintiffs allege that all the Defendants constituted both "joint employers" and/or an "integrated or common enterprise" so that the allegations against the Corporate Defendants can be grouped together and that the Individual Defendants can be held jointly liable through their managerial/ownership control of the Corporate Defendants.  (DE 4).  The various Defendants attack the allegations by arguing that Plaintiffs have not sufficiently pled an employment relationship through their vague allegations against each Corporate Defendant, and that Plaintiffs have failed to properly allege the Individual Defendants were their joint employers under the FLSA.  These allegations raise distinct legal issues and I discuss these matters in separate sections arranged by the allegations against the Corporate and Individual Defendants.

##### 1.  Corporate Defendants

To state a prima facie case under the FLSA for overtime (or other unpaid) compensation, an employee must allege several things: 1) an employer-employee relationship; 2) that the employer engaged in interstate commerce covered by the FLSA (under either individual or enterprise coverage)[5], 3) that Plaintiffs worked (in excess of for overtime claims) a 40-hour week,

---

[5] Both the minimum wage provision, 29 U.S.C. § 206(a), and the overtime provision, 29 U.S.C. § 207(a)(1) require that plaintiff show their employer was 1) "engaged in commerce or in the production of goods for commerce" (minimum wage) or 2) "employed in an enterprise in commerce or in the production of goods for commerce" (overtime).  *See* 29 U.S.C. § 206(a); 29 U.S.C. § 207(a)(1); *see also Turcios v. Delicias Hispanas Corp.*, 275 Fed. Appx. 879, 882 (11th

and 4) Defendants did not pay any overtime (or other) wages to them. *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1277 n.68 (11th Cir. 2008); *Villarino v. Pacesetter Personnel Service, Inc.*, 481 F.Supp.3d 1252, 1255-56 (S.D. Fla. 2020) (citing *Morgan* for standard under both overtime and unpaid compensation).

The Corporate Defendants' primary argument in support of dismissal of the FLSA counts is that Plaintiffs have failed to allege an employment relationship under prong one due to the vague allegations surrounding the relationship between the Plaintiffs and each Corporate Defendant. Plaintiffs argue that they have sufficiently alleged the employer-employee relationship because they have alleged the existence of a common enterprise, pointing to their allegations that the Corporate Defendants all had common ownership, common directors and officers, and did not comply with typical corporate formalities in that money would flow between the various entities without respecting the independent nature of corporations. (DE 4 at 6). I agree with the Corporate Defendants that Plaintiffs have confused the enterprise analysis of prong two with the distinct and separate joint employer analysis of prong one, and that the current allegations against many of the Corporate Defendants are insufficient to plead the existence of a joint employer relationship.

A proper employee-employer relationship must be alleged at the outset of an FLSA case and can be the sole reason for dismissal of an FLSA unpaid wage or overtime claim. *Brouwer v. Metropolitan Dade Cnty.*, 139 F.3d 817, 818 (11th Cir. 1998) (affirming district court's granting of a motion to dismiss for plaintiff's failure to allege an employment relationship under the FLSA for an unpaid wage and overtime claim). That is because the "minimum wage provisions of the

---

Cir. 2008) (describing enterprise requirements); *Thorne v. All Restoration Servs., Inc.*, 448 F.3d 1264, 1267 (11th Cir. 2006) (requiring that as a precondition to imposing liability against an employer, the plaintiff must allege individual coverage or enterprise coverage under the FLSA.).

FLSA apply only to workers who are 'employees' within the meaning of the Act." *Villareal v. Woodham*, 113 F.3d 202, 205 (11th Cir. 1997) (citing the minimum wage provision of the FLSA, 29 U.S.C. § 206(a)(1)); *see also Silva v. Fancydressme Inc.*, 2022 WL 16829689, at *3 (S.D. Fla., 2022), *report and recommendation adopted*, 2022 WL 15179957 (S.D. Fla. Oct. 27, 2022) (undergoing employer-employee relationship analysis for unpaid wages and overtime FLSA suit).

Under the FLSA, an employee is defined as being "any individual employed by an employer." *Id.* (citing 29 U.S.C. § 203(e)(1)). The FLSA defines an employer as "any person acting directly or indirectly in the interest of an employer in relation to an employee[.]" 29 U.S.C. § 203(d). The "economic reality" test is used in this Circuit to determine whether a party is an employer under the FLSA. The court analyzes the allegations to determine whether the alleged employer 1) had the power to hire and fire the employees, 2) supervised and controlled employee work schedules or conditions of employment, 3) determined the rate and method of payment, and 4) maintained employment records. *Villarreal v. Woodham*, 113 F.3d 202, 205 (11th Cir. 1997).

In the context of an alleged joint employer relationship, the Eleventh Circuit has expanded the test to include the following factors: 1) the nature and degree or control of the workers; 2) the degree of supervision, direct or indirect, of the work, 3) the power to determine the pay rates or the methods of payment of the workers, 4) the right, directly or indirectly, to hire, fire, or modify the employment conditions of the workers, 5) preparation of payroll and the payment of wages, 6) ownership of facilities where work occurred; 7) performance of a specialty job integral to the business; and 8) investment in equipment and facilities. *Layton v. DHL Exp. (USA), Inc.*, 686 F.3d 1172, 1176 (11th Cir. 2012) (citing joint employer test created by *Aimable*, 20 F.3d at 434). "No one factor is dispositive and the existence of a joint employer relationship depends on the economic reality of the circumstances." *Freeman*, 494 Fed. App'x at 943; *see also Layton*, 686 F.3d at 1177

("[T]he focus of each inquiry must be on each employment relationship as it exists between the worker and the party asserted to be a joint employer.").

Here, Plaintiffs have grouped all the Corporate Defendants together in their Amended Complaint, labeling them as "Retreat Defendants," and allege that they constituted "joint employers and/or an integrated or common enterprise" for purposes of the FLSA. (DE 4 at 6). The Eleventh Circuit has determined that the existence of a joint employer relationship and the existence of an enterprise are two distinct legal concepts, writing that the "finding of an enterprise is relevant only to the issue of coverage [under the FLSA whereas] [l]iability is based on the existence of an employer-employee relationship." *Patel v. Wargo*, 803 F.2d 632, 637 (11th Cir. 1986). And because "the criteria for establishing an enterprise are much broader than the criteria necessary to establish [joint-employer] liability," "[t]here is no suggestion...that an employer is responsible to other employers' employees, unless of course there is a joint employer relationship." *Id.* at 636.

In other words, Plaintiffs cannot rely on their current allegations of a common enterprise to constitute a joint employer-employee relationship as the legal analyses are different. *See Kaplun v. Lipton*, No. 06-20327, 2007 WL 707383, at *3 (S.D. Fla. Mar. 5, 2007) (quoting *Patel* and holding that "a finding of enterprise coverage does not necessarily compel a finding of joint liability under the FLSA....for all the corporate Defendants in this action to be liable for Plaintiff's overtime claim Plaintiff must establish their liability as her employer through a joint employer analysis.").

Looking at Plaintiffs' Amended Complaint, the current allegations do not meet the factors under *Layton* to show a joint employer relationship has been properly pled as to the Corporate

10

Defendants.[6] First, I agree with the Defendants that the current allegations are insufficient for lack of particularity as to each of the Corporate entities. The Complaint groups together the Corporate Defendants, alleging in a conclusory manner they had common ownership with common directors and/or officers, and that over various periods of time, "Retreat and the Individual Defendants failed to pay Plaintiffs." (DE 4 at 8). While there are some allegations that some of the entities are owned by each other, which are then eventually traced up to the same officers/owners, even the allegations against the individual officers do not document their roles over the corporate defendants to show that they "had the power to determine the pay rates or the methods of payment of the workers" or the "nature and degree of control of the workers" or the "preparation of payroll and the payment of wages." *Layton*, 686 F.3d at 1176.

To provide an example, the allegations regarding the payment of wages include nearly all of the Corporate Defendant entities. The allegations are that NFRA, NRPA, NRC, which are owned by DRPS and Coal Entities were the entities that were issuing "some" of Plaintiffs' paychecks. (DE 4 at 7). Missing from the entirety of the allegations are how RBH (Retreat Behavioral Health), the head of the corporate web, operated or managed the other companies, and thus controlled the pay over any of the Plaintiffs. Indeed, aside from being the namesake company, the sole allegations against RBH must be inferred based on the excerpt of the email sent out by Chief Admin Officer Defendant Korogodsky that there would be a delay in issuing the Plaintiffs' checks by "RBH Management" in June 2024. (DE 4 at 9).

By way of another example, Plaintiffs did not include Defendant HFGC within the "Retreat Defendants" definition as used throughout their Amended Complaint, meaning that HFGC is

---

[6] I also conclude later in this Order that the same analysis applies to the allegations against some of the Individual Defendants.

missing entirely from all the allegations against the Retreat Defendants.  Even when analyzing the sparse claims against HFGC, that it owned "the property where Retreat is operated, which is leased to Coal Lake Worth," and that "the majority owner of each HFGC and Coal Lake Worth is CLW Holdings, an entity owned by David Sil[v]erstein," there is no mention of HFGC's nature and degree of control over the Plaintiffs, or any other mention of HFGC's ability to pay, fire, or modify employment conditions, aside from the general allegations that it was an entity within the Retreat Defendants who ran the entire corporate web.  *Layton,* 686 F.3d 1172.  And HFGC is not even included as an entity within the Retreat Defendants, so technically there are no allegations against it in the Complaint.

The FLSA claims against the Corporate Defendants are therefore dismissed without prejudice.  Plaintiffs must more thoroughly allege a joint employment between the various Corporate actors in this case in the filing of any Amended Complaint.  As currently pled, it is exceedingly difficult to follow the allegations against the Corporate Defendants and how they purportedly jointly employed the Plaintiffs.[7]

## 2.  Individual Defendants

The various Individual Defendants also argue that Plaintiffs have failed to allege sufficient facts to show that the individuals were their joint employers under the FLSA.  Plaintiffs contend that their allegations have sufficiently described the Individual Defendants' operational control over the Corporate Defendants, and that the Individuals and the Corporate Defendants were all a part of the integrated or common enterprise that violated the Plaintiff's FLSA rights.  Reviewing

---

[7] As the existence of an employer-employee relationship was the first requirement to plead a prima facie FLSA claim, and because the Defendants have not raised any challenges to Plaintiff's allegations that a common enterprise existed between the Defendants, I do not engage in an enterprise analysis here.

the current allegations in the light most favorable to the Plaintiffs, I find that Plaintiffs have not alleged sufficient facts to show that the Individual Defendants are joint employers to be held jointly and severally liable under the FLSA.

Plaintiffs allege that the Individual Defendants are "[c]orporate officers with operational control of a corporation's covered enterprise [and] are employers along with the corporation, jointly and severally liable for [unpaid and overtime] wage violations." (DE 4 at 12). An individual "cannot be held individually liable for violating the….FLSA unless he is an 'employer' within the meaning of the Act." *Alvarez Perez v. Sanford–Orlando Kennel Club, Inc.*, 515 F.3d 1150, 1160 (11th Cir. 2008).

As is relevant to the current case, the Eleventh Circuit has held that a "corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA" as long as that corporate officer is "involved in the day-to-day operation or ha[s] some direct responsibility for the supervision of the employee." *Alvarez Perez*, 515 F.3d at 1160 (11th Cir. 2008) (internal quotation marks omitted). Additionally, in deciding whether a party is an employer, "economic reality" controls rather than common law concepts of agency. This "economic reality" determination is made through an evaluation of the alleged employee's economic dependence on the employer and courts may engage in this analysis at the motion to dismiss stage to determine if a plaintiff has properly alleged such a relationship. *Freeman v. Key Largo Volunteer Fire and Rescue Dept., Inc.*, 494 Fed. App'x 940, 942-43 (11th Cir. 2012).

In *Villarreal v. Woodham*, 113 F.3d 202, 205 (11th Cir. 1997), the Eleventh Circuit stated that the FLSA economic reality test asks "whether the alleged employer 1) had the power to hire and fire the employees, 2) supervised and controlled employee work schedules or conditions of

employment, 3) determined the rate and method of payment, and 4) maintained employment records." *Id.* And, as explained in the preceding section, the Eleventh Circuit has expanded the factors to be considered to capture other variables related to the alleged employer's ownership interest in the business and the nature and degree of the control exercised over workers and the workplace. . *See Layton*, 686 F.3d at 1176.

Plaintiffs have failed any of the outlined tests with regards to the Individual Defendants who have moved to dismiss, Hoinsky, Gariano, and Silverstein. For instance, Plaintiff's Complaint mentions Defendant Hoinsky only four times: one is within the title of the Complaint, two are within the opening paragraph which simply defines the defendants, and one lies in Paragraph 29 which I provide in its entirety: "At all times material to this action, Defendant Alexander Hoinsky was the Chief Financial Officer of Retreat." (DE 4 at ¶ 29). Similarly, the specific factual allegations against Defendant Gariano are equally as sparse: Plaintiffs allege in a single paragraph that Gariano was "the Chief Regulatory Officer of [the] Retreat [Corporate Defendants]." (DE 4 at ¶ 29). Like her co-defendant, Ms. Gariano's status as the Chief Regulatory Officer constitutes the sum total of the factual allegations in the Complaint against her and her role within the Corporate Defendants. No additional information is provided as to these individuals' day-to-day control over the Plaintiffs, such as providing examples of how they managed the Corporate Defendants which directly impacted the Plaintiffs, how they controlled the compensation of Plaintiffs or made termination decisions, etc. Plaintiff essentially offers no facts beyond the conclusory statement as to the job titles that Defendants Hoinsky and Gariano hold. This is not enough to show an employer-employee relationship under the FLSA.

The Complaint includes somewhat more as to Defendants Silverstein and Schorr, but still the allegations are conclusory and insufficient. Plaintiffs allege that Silverstein owned and

controlled the various Coal Entities and that he exercised de facto control over all the Retreat

Defendants together with Peter Schorr. However, Plaintiff does not allege facts to support that

Mr. Silverstein's exercised actual "operational control of significant aspects of the company's day-

to-day functions, including compensation of employees or other matters in relation to an

employee." *Alvarez Perez*, 515 F.3d at 1160; *see also Wirtz v. Pure Ice Co.*, 322 F.2d 259, 263

(8th Cir. 1963) (finding that a majority stockholder who visited company only two or three times

a year and "had nothing to do with the hiring of the employees or fixing their wages or hours" was

not an employer under the FLSA). The allegations against Defendant Schorr fare no better. The

entirety of the allegations against Mr. Schorr are that he was the Chief Executive Officer of RBH

(one of the Corporate Defendants), he had "de facto exercise of control over all Retreat

Defendants," he was the sole member of DRPS (another Corporate Defendant), and that the

Plaintiffs were informed that he had died by suicide. (DE 4). There is no factual support for the

assertion that he was an employer under the FLSA. These allegations fail to state a claim against

Defendant Schorr.

     Simply put, Plaintiffs have failed to allege that Defendants Hoinsky, Gariano, Silverstein,

and Schorr were Plaintiffs' joint employers. I cannot draw an inference of employer status based

merely on job titles and conclusory allegations of "control." Nor can I lump these Defendants into

the corporate enterprise. "The finding of an enterprise is relevant only to the issue of coverage.

Liability is based on the existence of an employer-employee relationship." *Patel*, 803 F.2d at 637

(holding that the president of a defendant enterprise was not a joint employer under the FLSA

because he "did not have operational control of significant aspects of [the defendant enterprise's]

day-to-day functions, including compensation of employees or other matters 'in relation to an

employee.'"). Accordingly, the FLSA claims against the Individual Defendants are dismissed without prejudice.[8]

## B. WARN Act (Count I)

In Count I, Plaintiffs allege violations of the WARN Act, 29 U.S.C. § 2901 *et. seq.*, against all the Corporate Defendants for failure to provide written notice of layoffs at least 60 days in advance, as required by the Act. (DE 4 at 15). Similar to the FLSA claims, Plaintiffs have grouped together the Corporate Defendants, alleging they constituted Plaintiffs' joint employer under the WARN Act. (DE 4 at 6, 13). Various of the Corporate Defendants have challenged the sufficiency of these employer allegations in their Motion to Dismiss, arguing that Plaintiffs have failed to allege they operated as a joint employer under the WARN Act. (DE 61). I agree.

The WARN Act, 29 U.S.C. § 2901 *et. seq.* was created to protect employees from sudden, large layoffs by requiring significant employers "to provide adequate notice of future layoffs to all employees before ordering a mass layoff or plant closing." *Sides v. Macon Cnty. Greyhound Park, Inc.*, 725 F.3d 1276, 1280 (11th Cir. 2013). The statute specifically reads that "[a]n employer shall not order a plant closing or mass layoff until the end of a 60-day period after the employer serves

---

[8] Plaintiffs cite to *Spears v. Bay Inn & Suites Foley, LLC*, 105 F.3d 1315 (11th Cir. 2024) for the proposition that an individual can be deemed an employer under the FLSA where the individual had operational control over significant aspects of the company's functions, even if not directly involved in employee compensation decisions. *Id.* However, in that very decision, the court noted that "to be an employer under the Act, a supervisor 'must either be involved in the day-to-day operation or have some direct responsibility for the supervision of the employee.'" *Id.* at 1319 (citing *Patel v. Wargo*, 803 F.2d 632, 638 (11th Cir. 1986)). This involvement "includes control over significant aspects of the company's day-today functions, including compensation of employees or other matters in relation to an employee. Involvement in the day-to-day operations of a company can include regular visits to the company's facilities, the power to determine employee salaries, involvement in the business operations of the company, or control over the company's purse strings. A supervisor's control must be substantial and related to the company's obligations under the Act." *Id.* (cleaned up) (internal citations omitted). Thus, this case also shows that Plaintiffs have failed to meet the pleading standard required at this stage.

written notice of such an order." *Id.* (quoting 29 U.S.C. § 2102(a)). It follows that a WARN Act claim has three elements: "(1) a mass layoff [or plant closing as defined by the statute] conducted by (2) an employer who fired employees (3) who, pursuant to WARN, are entitled notice." *Id.* at 1281.

The underlying facts for Count I are that Defendant Korogodsky, the Chief Administrative Officer of Defendant Retreat Behavioral Health (RBH) informed the Plaintiffs on June 23, 2024 that the Retreat Defendants were experiencing financial difficulties. (DE 4 at 8). On June 24, 2024, Defendant Korogodsky sent a follow-up email to all staff indicating that the facilities' patients were being discharged and that the Retreat entities would be closing. (*Id.*). Thus, Plaintiffs allege their date of termination was June 21, 2024, without having been given the required 60 days advance notice. (*Id.*).

Defendants do not challenge that a mass layoff occurred or that Plaintiffs were entitled to notice. Instead, Defendants challenge prong two, whether Plaintiffs have properly alleged that the Corporate Defendants were their single, joint employer. In their briefing, the Parties have directed my attention to the Department of Labor's regulations for what constitutes an employer under the Act, 20 C.F.R. § 639.3(a). The Eleventh Circuit has used the DOL regulations which provide a non-exhaustive list of five factors to determine if an "independent contractor and subsidiaries which are wholly or partially owned by a parent company are treated as separate employers or as a part of the parent or contracting company depending upon the degree of their independence from the parent." *Id.*; *see Likes v. DHL Express (USA), Inc.*, 787 F.3d 1096, 1098 (11th Cir. 2015) (utilizing DOL regulations to determine if a defendant company was a joint employer under the WARN Act); *see also Pearson v. Component Tech. Corp.*, 247 F.3d 471, 478 (3d Cir. 2001) (same). Thus, the joint employer test is "essentially a WARN Act-specific version of the common-

law veil-piercing doctrine." *Benson v. Enterprise Leasing Company of Orlando, LLC*, No. 6:20-cv-891, 2021 WL 1078410, at *2 (M.D. Fla. Feb. 4, 2021). The five factors include: (i) common ownership, (ii) common directors and/or officers, (iii) de facto exercise of control, (iv) unity of personnel policies emanating from a common source, and (v) the dependency of operations. 20 C.F.R. § 639.3(a)(2).

Plaintiffs argue that their current allegations against the Retreat Defendants are sufficient to be deemed a single employer under these factors. Regarding the first three factors, Plaintiffs point to two paragraphs within their Amended Complaint that allege the Coal Entities were owned by Defendants Schorr and Silverstein (DE 4 at ¶ 25) and that these two individuals exercised de facto control of all the Retreat Defendants and served as the entities' common directors/officers (*Id.* at ¶ 37). For the fourth and fifth factors, Plaintiffs contend that it is not dispositive whether the separate Corporate Defendants maintained identical personnel policies and that all the various Defendant Corporations existed solely for the purpose of providing services to each other. (DE 66 at 5-8).

The Corporate Defendants argue that Plaintiffs have made conclusory allegations that Defendants Silverstein and Schorr were co-owners, without alleging that they were the responsible decision makers for the Corporate Entities, nor that they themselves refused to provide proper notice to the Plaintiffs. Defendants add that Plaintiffs fail to plead that any unity of personnel policies existed among any of the Defendants, Corporate or Individual alike, and that Plaintiffs have not alleged any facts to support a finding that the various entities existed solely for the purpose of providing services to each other. (DE 68 at 6-7).

I agree with Defendants that the Amended Complaint fails to allege the existence of a single employer under the WARN Act. First, as I outlined above, Defendant HFGC Florida is missing

from the definition of the Retreat Defendants, so any allegations Plaintiffs have made to constitute a single employer under the WARN Act would not include this Defendant.

Turning to the merits, Plaintiffs attempt to show that the Corporate Defendants all constituted a single employer because of Defendant Schorr and Silverstein's common ownership over the entities. I find that Plaintiffs sufficiently alleged that these two defendants had common ownership over the Corporate Defendants. Defendant Silverstein owned the Coal Entities and HFGC (DE 4 at ¶¶ 25, 51), and Defendant Schorr was the sole member of DRPS (*Id.* at ¶ 48), who Plaintiffs allege owned NRFA, NPRA, and NRC alongside the Coal Entities (*Id.* at ¶ 47). Together the two Individual Defendants are alleged to have owned all the Corporate Entities in this case.

But Plaintiffs' allegations are sparser with regards to the existence of common directors/officers and de facto control of the companies. In their briefing, Plaintiffs combine these two factors, arguing that ownership and de facto control are shown through their allegations that Mr. Schorr and Mr. Silverstein controlled the Corporate Defendants.

The Amended Complaint, however, does not support this conclusion that the Corporate Defendants were all run together through their common owners' de facto control and through the common directors/officers because the allegations do not sufficiently describe how the Individual Defendants ran the corporate entities. The Amended Complaint alleges that two Individual Defendants, Christy Gariano and Alexander Hoinsky serve as the Chief Regulatory Officer (*Id.* at ¶ 28 for Gariano), and the Chief Financial Officer (*Id.* at ¶ 29 for Hoinsky) of the Retreat Defendants. Plaintiffs do not provide any more details of their roles or their activities aside from their titles. Defendant Korogodsky is alleged to have been the Chief Administrative Officer of RBH, not of the entire Retreat corporate structure, although he is alleged to have sent the email to the Plaintiffs informing them of the Corporate Defendants' closing. (*Id.* at ¶¶ 27, 65). Most

importantly, Plaintiffs do not allege that these three Defendants reported to Schorr and Silverstein, who purportedly had "de facto . . . control" over all the Retreat Defendants, pursuant to their alleged ownership.

I agree with Defendants that the Amended Complaint currently is unclear what exact role Schorr and Silverstein played in running these companies aside from their ownership, or what role they or their corporate officers had in the corporate web. Thus, it is unclear how the Corporate Defendants all operated together if there are no allegations as to how their owners or its common officers ran them. As I also point out above, it is also unclear how RBH, the namesake of the "Retreat Defendants," ran the alleged enterprise. "The 'de facto exercise of control' factor is not intended to support liability based on a parent's exercise of control pursuant to the ordinary incidents of stock ownership….[t]he factor is appropriately utilized, however, if the parent or lender was the decisionmaker responsible for the employment practice giving rise to the litigation." *Pearson v. Component Technology Corp.*, 247 F.3d 471, 503-04 (3d Cir. 2001). Plaintiffs fail to point me where in their Amended Complaint this has been shown.

Turning to the fourth factor, the Amended Complaint is devoid of any factual allegations of any unity of personnel policies among the Corporate Defendants. The fifth factor, dependency of operations is slightly stronger, albeit still not enough to salvage the claim. Plaintiffs allege that the Corporate Defendants shared locations, and often issued paychecks to employees without regard for which entity issued them. (DE 4 at ¶¶ 41, 44-46). But the Amended Complaint is devoid of facts that would lead me to agree with Plaintiffs' conclusion that "the various entities existed solely for the purposes of providing services to each other." (DE 66 at 8).

"The Warn Act Test…is intended to discover whether the two nominally separate entities actually functioned as a single business, particularly with regard to labor policy." *Pearson*, 247

F.3d at 499. The factors here lean in favor of dismissing the WARN Act claims against the Corporate Defendants for failure to allege that the Retreat (Corporate) Defendants operated as a joint employer who may be held jointly and severally liable. This count is dismissed without prejudice.

### C. State Statutes (Counts IV and V)

#### 1. Florida Law (Counts IV and V)

Counts IV and V allege unpaid wages claims pursuant to Florida Constitution, Article X, Section 24 and another unnamed Florida law against all the Defendants.[9] (DE 4 at 18-19). Subsection (b) of Section 24 provides the definitions section for Florida's minimum wage requirement within the Florida Constitution. Fla. Const. Article X, Section 24. The section specifically states that "the terms employer, employee, and wage shall have the meanings established under the federal Fair Labor Standards Act (FLSA) and its implementing regulations." *Id.* (cleaned up). As Florida law has adopted the federal definition, the Eleventh Circuit has determined that the analysis is essentially the same because Florida "employees receive the same protection under state law that they enjoy under the Fair Labor Standards Act." *Anagnos v. Nelsen Residence, Inc.*, 721 Fed. App'x 901, 903 (11th Cir. 2018); *see also Alvear v. Salvation Army*, 661 F.Supp.3d 1314, 1318 (N.D. Ga. 2023) (applying FLSA economic reality test to FLSA and Florida

---

[9] As I detail later in this Order, Plaintiffs must separate the claims set forth in Count V into different claims. Plaintiffs must also specifically allege the Florida law they claim was violated in Count V. *See supra*. Currently Count V states that "Florida law requires payment of wages for work performed." (DE 4 at 19). Buried in one sentence of this Count, Plaintiff mentions Florida Stat. s. 448.08, but Plaintiffs cite to the statute for recoupment of post judgment interest and reasonable attorney's fees and costs. In footnote 1, Plaintiffs passingly mention that they will seek leave to amend to include violations of Florida Stat. s. 448.110 but do not actually allege such a violation within any count of their Amended Complaint. I will require Plaintiffs to reallege any such violations of Florida laws within its own separate Count in any forthcoming complaint.

state law claims, citing *Anagnos*). Thus, for the same reasons that Plaintiffs' FLSA claims fail, the Florida claims also fail as to all the Defendants (Corporate and Individual). Accordingly, Counts IV and V are dismissed without prejudice.

### 2. Connecticut Law (Count V)

In Count V, Plaintiffs allege that all the Defendants violated Connecticut law, CT Gen Stat § 31-72 "Civil action to collect wage claim, fringe benefit claim or arbitration award." The statute gives legal rights to employees who have unpaid wage claims under Connecticut state law against their employers. *Id.* All the moving Defendants, Corporate and Individual, have moved to dismiss this state law claim against them based on the Connecticut Supreme Court decision of *Butler v. Hartford Technical Institute, Inc.*, 704 A.2d 222, 225 (Conn. 1997) which concluded that "an individual personally can be liable as an employer pursuant to [§ 31-72], notwithstanding the fact that a corporation is also an employer of the claimant, if the individual is the ultimate responsible authority to set the hours of employment and to pay wages and is the specific cause of the wage violation."

Plaintiffs do not attempt to distinguish its allegations against the Defendants from the holding of *Butler*, simply arguing that the "allegations of the Complaint sufficiently establish" that the Defendants impacted Plaintiffs' employment conditions. (DE 33 at 4, DE 44 at 4, DE 49 at 4, DE 66 at 3).

Plaintiffs' allegations against the Individual Defendants do not state a claim in Count V because there are no facts to support that Defendants Hoinsky, Gariano, Silberstein, and Schorr each had the "ultimate responsible authority to set the hours of employment and to pay wages and is the specific cause of the wage violation." *Butler*, 704 A.2d at 225.

Importantly, the ruling of *Butler* only applied to whether an individual president of a corporation could be held liable as an employer under § 31-72 and did not speak to whether the corporation itself would be liable under the same "ultimate responsible authority" standard. Because the Corporate Defendants have not pointed to whether the standard would also apply to the Corporate Defendants, my holding here is solely limited to Defendants Hoinsky, Gariano, Silberstein, and Schorr. Plaintiffs have failed to state a claim against them pursuant to this Connecticut statute and this count is dismissed against them without prejudice.

### 3. Pennsylvania Law (Count V)

In Count V, Plaintiffs further allege a violation of 43 Pa. Stat. § 260.5(a) "Employees who are separated from payroll before paydays" against all the Defendants. (DE 4 at 18-19). The statute is part of Pennsylvania's Wage Payment and Collection Law ("WPCL"), which provides a means by which employees are able to recover unpaid wages from their employers. Subsection (a) of 43 Pa. Stat. § 260.5 creates a cause of action for "[w]henever an employer separates an employee from the payroll, or whenever an employee quits or resigns his employment, the wages or compensation earned shall become due and payable not later than the next regular payday of his employer on which such wages would otherwise be due and payable." *Id.*

Various Corporate Defendants have moved to dismiss the Pennsylvania count against them based on caselaw that under the WPCL the plaintiff must plead "the existence of some contractual agreement to pay wages that defendant now owes to the plaintiff." (DE 61 at 7) (citing *Rapczynski et al., v. DIRECTV, LLC, and MasTec North America, Inc.*, 3:14-cv-2441, 2016 WL 1071022 at *8 (M.D. Pa. Mar. 17, 2016)). The various Corporate Defendants argue that Plaintiffs' Amended Complaint does not contain facts as to the existence of some contractual agreement to pay wages

to them. (DE 61 at 7). Plaintiffs do not address these arguments in their Response briefing. I agree
with these Defendants that this count should be dismissed, but for other reasons.

Under the WPCL, a plaintiff does not need to plead the existence of a formal employment
contract, but rather need only plead the existence of some contractual agreement to pay wages that
defendant now owes to the plaintiff. *Euceda v. Millwood, Inc.*, No. 3:12-0895, 2013 WL 4520468,
at *4 (M.D. Pa. Aug. 26, 2013) (citing *De Asencio v. Tyson Foods, Inc.*, 342 F.3d 301, 309 (3d
Cir. 2003)). "Such a binding agreement may be express, or as the Third Circuit noted in *De
Asencio*, it may be implied. And in the context of an employment relationship, a promise to pay
the reasonable value of the service is implied where one performs for another, with the other's
knowledge, a useful service of a character that is usually charged for, and the latter expresses no
dissent or avails himself of the service." *Id.* (cleaned up) (citing *Martin v. Little, Brown and
Company*, 450 A.2d 984, 987 (Pa. Super. Ct. 1981)).

Plaintiffs' pleading includes minimal factual support regarding the existence of a contract
to pay Plaintiffs' wages to support a WPCL claim at this stage, but I find that such a contract may
be implied by the allegations in the Amended Complaint, based on the language above that a
promise to pay for a service and purposeful availment of that service implies a contract to pay for
wages was present. Plaintiffs allege two emails from Defendant Korogodsky regarding when
money would be disbursed to employees for a previous pay period and that the Plaintiffs would be
receiving "appropriate letters regarding employment" which was a "top priority." Additionally,
Plaintiffs have alleged that they "would perform services for various of the Retreat Defendants
with no regard for which employer was on their paycheck" and that "they performed services for
Defendants at multiple locations." (DE 4 at ¶¶ 34, 43).

This language supports the existence of an implied employment contract, but it remains unclear who the contract was between based on the current allegations. *See De Asencio*, 342 F.3d at 309 (allowing for the existence of an implied oral contract to be sufficient to state a claim under WPCL). Defendant Korogodsky served as the Chief Administrative Officer of RBH. His email states that "RBH Management" was in the process of determining how to pay money owed to the Plaintiffs and the Complaint alleges various pay periods for which Plaintiffs were not paid for their services. An email acknowledging this from the Chief Admin Officer of Defendant RBH would at least suggest the existence of an implied contract between RBH and Plaintiffs. It is unclear from the contents of the email whether Korogodsky independently had a contract with the Plaintiffs or not.

Therefore, the claim is dismissed without prejudice against all the Defendants except for Defendant RBH. Plaintiffs must replead this count to specifically allege the employment agreement(s) it had with the various (Corporate or Individual) Defendants for which it can pursue their claims under the WPCL.

**D.  Shotgun Pleading**

Finally, I write to address the various Defendants' concerns that Plaintiffs' Complaint does not meet the standard set forth in Fed. R. Civ. P. 8 which governs the general rules of pleading in federal civil court actions. Rule 8(a)(2) requires complaints to set forth "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" *Id.* Complaints that violate Rules 8(a)(2) and 10(b) are known as "shotgun pleadings." *See Barmapov v. Amuial*, 986 F.3d 1321, 1324 (11th Cir. 2021) ("A shotgun pleading is a complaint that violates either Federal Rule of Civil Procedure 8(a)(2) or Rule 10(b), or both.").

Shotgun pleadings fail to give defendants "adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1323 (11th Cir. 2015); *see also Sledge v. Goodyear Dunlop Tires N. Am., Ltd.*, 275 F.3d 1014, 1018 n.8 (11th Cir. 2001) ("The failure of the plaintiff to identify his claims with sufficient clarity to enable the defendant to frame a [responsive] pleading constitutes shotgun pleading."). Shotgun pleadings commonly suffer from one or more of the following deficiencies:

(1)  they contain multiple counts, with each count adopting the allegations of all preceding counts, thereby causing each successive count to carry all that came before, and leaving the last count to be a combination of the entire complaint;

(2)  they are replete with conclusory, vague, and immaterial allegations not obviously connected to any particular cause of action;

(3)  they do not separate each cause of action into a different count; and

(4)  they assert multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions.

*Weiland*, 792 F.3d at 1323.

The Complaint here suffers from deficiencies of prongs three and four. First, Count V integrates three separate state law causes of action into one count. In Count V, Plaintiffs allege violation of a Connecticut Statute, a Pennsylvania Statute, and an unnamed "Florida law" which "requires payment of wages for work performed." (DE 4 at 19).[10] These separate causes of action,

---

[10] In the conclusion paragraph of Count V, Plaintiffs add that they seek post-judgment interest, reasonable attorneys' fees and costs pursuant to Fla. Stat. s. 448.08. (*Id.*). However, this statute is only mentioned in passing and is not prominently featured or alleged to have been violated so I will require that the Plaintiffs re-allege the purported violations. Also, in footnote 1 of the Amended Complaint, Plaintiffs allege a violation of Fla. Stat. s. 448.110 but state that they "will seek leave to amend to include violations of this statute once all prerequisites have been completed." (DE 4 at 2 n.1). Plaintiffs must include a count with either of these claims in the next version of the Complaint if they intend on bringing such a cause of action within this suit.

26

action, arising out of different state statutes, must be separately alleged in different counts and properly supported with facts that show Plaintiff is qualified for relief under them.

Next, the Complaint is also deficient under prong 4, for many of the reasons already stated in this Order.  By simply grouping all the Corporate and Individual Defendants together and providing a few examples of how a few of the Corporate Defendants having intermingled ownership and managerial functions with a few shared officers, Plaintiffs have failed to give proper notice to most of the Defendants in this case about what they are responsible for, and which acts or omissions have led to this lawsuit against them.  Of course, Plaintiffs can attempt to allege that the Defendants in this case are joint employers.  However, on the facts as currently alleged, I fail to see how any Defendant in this case could discern what alleged wrong they are accused of.  I have already provided an extensive analysis of the many deficiencies in this complaint, and many of these deficiencies are attributable to the shotgun nature of the pleading.

## IV.    CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that:

1) The Various Defendants' Motions to Dismiss Plaintiffs' Amended Complaint (DE 27, 32, 36, and 61) are **GRANTED.**

2) Counts I through V of Plaintiffs' "First Amended Class Action Complaint" (DE 4) are dismissed without prejudice.

3) Plaintiffs will be given one opportunity to file a "Second Amended Complaint" to attempt to cure the deficiencies identified in this Order. Any Second Amended Complaint must be filed no later than **January 21, 2025.**

4) The Amended Complaint must be limited to the claims and defendants already identified. Plaintiffs are not permitted to broaden the scope of the Amended Complaint without prior leave from this Court.

**SIGNED** in Chambers in West Palm Beach, Florida, this ___ day of January, 2025.

DONALD M. MIDDLEBROOKS
UNITED STATES DISTRICT JUDGE

CC: Counsel of Record