**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
WEST PALM BEACH DIVISION
Case No. 24-cv-80787-DMM/Matthewman

**MIA WILLIAMS, BRITTANY CALVERT,**
**DEDTRA DAVIS, and ALISA LEGGETT**,
on their own behalf and on behalf of those similarly situated,

      **Plaintiffs**,

v.

**RETREAT BEHAVIORAL HEALTH, LLC,**
**a Florida Limited Liability Corporation,**
**NR FLORIDA ASSOCIATES, LLC,**
**a Florida Limited Liability Corporation,**
**NR PENNSYLVANIA ASSOCIATES, LLC,**
**a Pennsylvania Limited Liability Corporation,**
**JAMES YOUNG, in his capacity as**
**Receiver of NR Pennsylvania Associates, LLC,**
**NR CONNECTICUT, LLC, a Connecticut**
**Limited Liability Corporation,**
**DRPS MANAGEMENT, LLC, a Florida**
**Limited Liability Corporation**
**COAL LAKE WORTH, LLC, a Florida**
**Limited Liability Company,**
**COAL CAPITAL HOLDINGS (FLORIDA), LLC,**
**a Florida Limited Liability Corporation,**
**COAL CONNECTICUT, LLC,**
**a Connecticut Limited Liability Corporation**
**COAL NEW HAVEN LLC, a Connecticut**
**Limited Liability Corporation,**
**COAL CAPITAL EPHRATA, LLC,**
**a Pennsylvania Limited Liability Corporation,**
**COAL CAPITAL GROUP, LLC,**
**a New York Limited Liability Corporation,**
**CLW HOLDINGS, LLC,**
**a Florida Limited Liability Company,**
**HFGC FLORIDA, LLC,**
**a Florida Limited Liability Company,**
**CHRISSY GARIANO, ALEXANDER HOINSKY,**
**DAVID SILBERSTEIN, ESTATE OF PETER SCHORR,**
**and ESTATE OF SCOTT KOROGODSKY,**

      **Defendants.**             /

1

## SECOND AMENDED CLASS ACTION COMPLAINT
## AND DEMAND FOR JURY TRIAL

Plaintiffs, MIA WILLIAMS, BRITTANY CALVERT, DEDTRA DAVIS, and ALISA LEGGETT, on their own behalf and on behalf of those similarly situated (collectively "Plaintiffs"), by and through their undersigned counsel, hereby sue Defendants, RETREAT BEHAVIORAL HEALTH, LLC ("RBH"), NR FLORIDA ASSOCIATES, LLC ("NR FLORIDA"), NR PENNSYLVANIA ASSOCIATES, LLC, ("NR PENNSYLVANIA"), JAMES YOUNG solely in his capacity as Temporary Receiver of NR PENNSYLVANIA ("RECEIVER YOUNG"), NR CONNECTICUT, LLC, ("NR CONNECTICUT"), DRPS MANAGEMENT, LLC ("DRPS"), COAL LAKE WORTH, LLC ("COAL LAKE WORTH"), CLW HOLDINGS, LLC, ("CLW HOLDINGS"); COAL CAPITAL HOLDINGS (FLORIDA) LLC, ("COAL FLORIDA"), COAL CONNECTICUT, LLC, ("COAL CONNECTICUT"), COAL NEW HAVEN, LLC, ("COAL NEW HAVEN"), COAL CAPITAL EPHRATA, LLC, ("COAL EPHRATA"), COAL CAPITAL GROUP, LLC ("COAL CAPITAL"), HFGC FLORIDA, LLC, ("HFGC"), DAVID SILBERSTEIN, [1] ("SILBERSTEIN"), CHRISSY GARIANO, ("GARIANO"), ALEXANDER HOINSKY, ("HOINSKY"), the ESTATE OF PETER SCHORR, ("SCHORR"), and the ESTATE OF SCOTT KOROGODSKY, ("KOROGODSKY")(collectively "Defendants") and allege as follows:

---

[1]     The Court noted that Plaintiffs referred to him as David Silberstein while his motion to dismiss referred to him as David Silverstein.  Based upon a review of the available records, including multiple court and official records filed with various Secretaries of State, it appears that Mr. Silberstein's motion to dismiss referred to him as Silverstein in error and Silberstein is the correct last name.

## INTRODUCTION

1.      This is an action brought pursuant to the Worker Adjustment and Retraining Notification Act of 1988, 29 U.S.C. § 2101 et. seq. ("WARN Act"), the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, et seq. ("FLSA"), the Florida Constitution, Art. X, Sec. 24, CT Gen. Stat. § 31.58, § 31-71c and § 31-72, and 43 Pa. Stat. §260.

2.      Pursuant to the aforementioned state and federal wage and hour laws, Plaintiffs, on their own behalf and on behalf of all others similarly situated, seek unpaid wages, minimum wage and overtime compensation, liquidated damages, post-judgment interest and attorneys' fees and costs from all Defendants.

3.      Defendants RBH, NR Florida, NR Pennsylvania, Receiver Young, NR Connecticut, DRPS, Coal Lake Worth, CLW Holdings, Coal Florida, Coal Connecticut, Coal New Haven, Coal Ephrata, Coal Capital and HFGC are also liable under the WARN Act for the failure to provide the Plaintiffs and all others similarly situated at least 60 days advance notice of their termination, as required by the WARN Act.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over these claims pursuant to 28 U.S.C. §1331.

5.      Venue is proper in the Court because all facts material to all claims set forth herein occurred in Palm Beach County, Florida, in the Southern District of Florida.

## PARTIES

### *The Plaintiffs*

6.      At all times material to this action, Mia Williams was a resident of the Southern District of Florida, West Palm Beach Division who was employed by Defendants as a Primary Therapist from approximately August 2023 through her termination on or about June 21, 2024.

7.      At all times material to this action, Brittany Calvert was a resident of the Southern District of Florida, West Palm Beach Division who was employed by Defendants as a Senior Admissions Coordinator from approximately September 2019 through her termination on or about June 21, 2024.

8.      At all times material to this action, Dedtra Davis was a resident of Pennsylvania who was employed by Defendants.

9.      At all times material to this action, Alisa Leggett was a resident of Connecticut who was employed by Defendants as a Third Shift Team Lead from approximately February 2001 through her termination on or about June 21, 2024.

*The Corporate Defendants*

10.     At all times material to this action, Defendant RBH was a Florida limited liability corporation, conducting business in Palm Beach County, Florida.

11.     Peter Schorr and David Silberstein were Managers of RBH.

12.     As of March 31, 2023, RBH listed its principal place of business as:

> 4020 Lake Worth Road
> Lake Worth, FL 33461

13.     RBH operated through NR Florida, NR Pennsylvania, and NR Connecticut.

14.     At all times material to this action, Defendant NR Florida was a Florida limited liability corporation, conducting business in Palm Beach County, Florida.

15.     Peter Schorr and David Silberstein were Managers of NR Florida.

16.     Upon information or belief, David Silberstein is currently the sole Manager of NR Florida.

17.     As of May 1, 2024, NR Florida listed its principal place of business as:

4020 Lake Worth Road
Lake Worth, FL 33461

18.     Upon information and belief, NR Florida leased its facility from Coal Lake Worth who leased it through HFGC.

19.     At all times material to this action, Defendant NR Pennsylvania was a Pennsylvania limited liability corporation, conducting business in Palm Beach County, Florida and in Lancaster County, Pennsylvania.

20.     Peter Schorr and David Silberstein were Managers of NR Pennsylvania.

21.     Upon information and belief, David Silberstein is currently the sole Manager of NR Pennsylvania.

22.     Receiver Young was appointed as Receiver of NR Pennsylvania by the Court of Common Pleas of Lancaster County, Pennsylvania and is sued solely in his capacity as Temporary Receiver for NR Pennsylvania.[2]

23.     Upon information and belief, NR Pennsylvania leased its facility from Coal Capital Ephrata.

24.     At all times material to this action, Defendant NR Connecticut was a Connecticut limited liability corporation, conducting business in Palm Beach County, Florida and in New Haven, Connecticut.

25.     Peter Schorr and David Silberstein were Managers of NR Connecticut.

26.     Upon information and belief, David Silberstein is currently the sole Manager of NR Connecticut.

---

[2]     See Ex 3, Order Appointing Receiver.

27.     Upon information and belief, NR Connecticut leased its facility from Coal New Haven.

28.     At all times material to this action, Defendant DRPS was a Florida limited liability corporation, conducting business in Palm Beach County, Florida.

29.     Peter Schorr was the sole Manager of DRPS.

30.     Upon information or belief, DRPS is the entity through which Peter Schorr managed Retreat Behavioral Health, NR Florida, NR Pennsylvania, and NR Connecticut.

31.     At all times material to this action, Coal Lake Worth was a Florida limited liability corporation, conducting business in Palm Beach County, Florida.

32.     David Silberstein is a Manager of Coal Lake Worth, along with Joseph Silberstein and Eli Silberstein.

33.     As of May 1, 2024, Coal Lake Worth listed its principal place of business as:

> c/o Coal Capital Group
> 1001 E 19th St.
> Brooklyn, NY 11230

34.     At all times material to this action, HFGC was a Florida limited liability corporation, conducting business in Palm Beach County, Florida.

35.     David Silberstein is the sole Manager of HFGC.

36.     As of May 1, 2024, HFGC listed its principal place of business as:

> c/o Coal Capital Group
> 1001 E 19th St.
> Brooklyn, NY 11230

37.     Upon information and belief, Coal Lake Worth and HFGC held the lease to the property on which NR Florida operated.

38.     At all times material to this action, CLW Holdings was a Florida limited liability corporation, conducting business in Palm Beach County, Florida.

39.     David Silberstein is a Manager of CLW Holdings, along with Joseph Silberstein and Eli Silberstein.

40.     As of May 1, 2024, CLW Holdings listed its principal place of business as:

> c/o Coal Capital Group
> 1001 E 19th St.
> Brooklyn, NY 11230

41.     Upon information and belief, CLW Holdings is the majority owner of HFGC and Coal Lake Worth.

42.     At all times material to this action, Coal Florida was a Florida limited liability corporation, conducting business in Palm Beach County, Florida.

43.     David Silberstein is a Manager of CLW Holdings, along with Joseph Silberstein and Eli Silberstein.

44.     As of April 14, 2024, Coal Florida listed its principal place of business as:

> c/o Coal Capital Group
> 1001 E 19th St.
> Brooklyn, NY 11230

45.     At all times material to this action, Coal Connecticut was a Connecticut limited liability corporation, conducting business in New Haven, Connecticut and Palm Beach County, Florida.

46.     David Silberstein is the Manager of Coal Connecticut.

47.     As of March 28, 2024, Coal Connecticut listed its principal place of business as:

> 1001 E 19th St.
> Brooklyn, NY 11230

48.     At all times material to this action, Coal New Haven was a Connecticut limited liability corporation, conducting business in New Haven, Connecticut and Palm Beach County, Florida.

49.     David Silberstein is the Manager of Coal New Haven.

50.     As of March 28, 2024, Coal New Haven listed its principal place of business as:

> 1001 E 19th St.
> Brooklyn, NY 11230

51.     At all times material to this action, Coal Ephrata was a Pennsylvania limited liability corporation, conducting business in Lancaster, Pennsylvania and Palm Beach County, Florida.

52.     Upon information and belief, Coal Capital Group was a New York limited liability corporation, conducting business in Lancaster, Pennsylvania, New Haven, Connecticut and Palm Beach County, Florida.

53.     David Silberstein is a Manager of Coal Capital Group, along with Joseph Silberstein and Eli Silberstein.

54.     As of April 18, 2024, Coal Capital Group listed its principal place of business as:

> c/o Coal Capital Group
> 1001 E 19th St.
> Brooklyn, NY 11230

55.     Upon information and belief, Coal Capital Group, Coal Lake Worth, CLW Holdings, Coal Florida, Coal Connecticut, Coal New Haven, Coal Ephrata, and HFGC (the "Coal Companies") are controlled by Silberstein and managed through the Coal Capital Group company.

56.     Upon information and belief, the Coal Companies are the entities through which Silberstein managed NR Florida, NR Pennsylvania, NR Connecticut, and RBH ("Retreat Companies").

57.     Upon information and belief, it was common for Schorr, Silberman, and others to refer to the Coal Companies as "the Coal Companies" and the Retreat Companies as "the Retreat Companies" or simply "Retreat."

58.     Together, the Coal Companies, the Retreat Companies, and DRPS operated a single, integrated enterprise to operate mental health facilities in Florida, Pennsylvania, and Connecticut.

59.     Upon information and belief, there was a frequent and liberal policy of NR Florida, NR Pennsylvania, and NR Connecticut transferring cash from one entity to another when there was liquidity need, without documentation for these transfers beyond internal ledger entities.  For example, between May 2021 and August 2024, NR Florida made transfers of $767,959.30 to NR Pennsylvania and NR Connecticut made transfers of $4,553,031.43 to NR Pennsylvania.[3]

60.     As admitted to in the Pennsylvania receivership proceedings, NR Florida, NR Pennsylvania, and NR Connecticut had common expenses and made advances from one operating entity to another.[4]

61.     Upon information and belief, NR Pennsylvania frequently made wire payments in large, round numbers to DRPS and the Coal Companies.[5]

62.     Upon information and belief, between 2021 and 2024, millions of dollars were transferred from NR Pennsylvania to Coal Capital Group, Coal Lake Worth, NR Florida, and NR Connecticut.[6]

---

[3]     See Ex. 1, 8-13-24 Affidavit of James W. Young in Support of Entry of Order Appointing Receiver, p. 10.
[4]     See Ex. 2, 8-26-24 Defendant's Response to Receiver's Report, p. 10.
[5]     See Ex. 1, 8-13-24 Affidavit of James W. Young in Support of Entry of Order Appointing Receiver, p. 15.
[6]     See Ex. 1, 8-13-24 Affidavit of James W. Young in Support of Entry of Order Appointing Receiver, p. 3.

63.     As admitted to in the Pennsylvania receivership proceedings, NR Florida, NR Connecticut, and NR Pennsylvania provided similar treatment services in their respective states and were under common control.[7]

64.     As the NR Pennsylvania Receiver reported, NR Florida, NR Pennsylvania, and NR Connecticut operated together as "a single business enterprise."[8]

65.     As admitted to in the Pennsylvania receivership proceedings, NR Florida, NR Connecticut, and NR Pennsylvania leased their primary facilities pursuant to a triple net lease from an entity controlled by David Silberstein.[9]

66.     In a brief filed in the Pennsylvania receivership proceedings, NR Pennsylvania and NR Florida, explained what they called "the true history" of Schorr's and Silberstein's stewardship of the Retreat Companies:

> The true history of Mr. Schorr's and Mr. Silberstein's stewardship of the Retreat Entities is that the wellbeing of the Retreat Entities was always put first. In particular, the Coal Entities refrained from enforcing more than $20 million in contractual obligations due from the Retreat Entities to the Coal Entities in order to seek to preserve the viability of the Retreat Entities and the necessary services provided by the Retreat Entities to their respective communities."[10]

67.     Despite the corporate structures, the Retreat Companies, DRPS, and Coal Companies acted as one company, under common leadership, engaging in the common goal of providing mental health services in Florida, Pennsylvania, and Connecticut.

68.     The Retreat Companies, DRPS, and the Coal Companies are joint employers and/or a single, integrated enterprise.

---

[7]     See Ex. 2, 8-26-24 Defendant's Response to Receiver's Report, p. 1.
[8]     See Ex. 1, 8-13-24 Receiver's First Report, p. 3.
[9]     See Ex. 2, 8-26-24 Defendant's Response to Receiver's Report, p. 1.
[10]     See Ex. 2, Defendants' Response to Receiver's Report, p. 18

69.     The Retreat Companies, DRPS, and the Coal Companies did not comply with typical corporate formalities and money would flow between the various entities without respecting the independent nature of the corporations.

70.     Employees would perform services for all of the Retreat Companies with no regard for which employer was on their paycheck.

71.     The Retreat Companies had common ownership.

72.     The Retreat Companies had common directors and/or officers.

73.     Peter Schorr and David Silberstein, through DRPS and the Coal Companies, exercised control over all Retreat Companies.

74.     The Retreat Companies had unity of personnel policies emanating from a common source.

75.     The Retreat Companies had dependency of operations.

76.     The Retreat Companies, together, managed and controlled Retreat employees at each facility.

77.     Each Retreat facility was managed by the same Executive Leadership.

78.     The Retreat Companies, together, supervised employees' work at each facility.

79.     The Retreat Companies, together, had the right to hire, fire, or modify the employment conditions of the workers at each facility.

80.     The Retreat Companies, together, prepared payroll and the payment of wages.

81.     The Retreat Companies, together, leased the facilities where work occurred from the Coal Companies.

82.     The Retreat Companies, together, invested in the equipment used by employees and the Retreat facilities.

*The Individual Defendants*

83.     At all times material to this action, Peter Schorr was a resident of the Southern District of Florida.

84.     At all times material to this action, David Silberstein was a resident of New York.

85.     At all times material to this action Scott Korogodsky, was a resident of the Southern District of Florida.

86.     At all times material to this action, Defendant Chrissy Gariano was a resident of the Southern District of Florida.

87.     At all times material to this action, Defendant Alexander Hoinsky was a resident of New Jersey.

88.     Peter Schorr and David Silberstein, together, managed the business through the various entities outlined above with Peter Schorr serving as the Chief Executive Officer of the Retreat Companies.

89.     Scott Korogodsky was the Chief Administrative Officer of the Retreat Companies.

90.     Chrissy Gariano was the Chief Regulatory Officer of the Retreat Companies.

91.     Alexander Hoinsky was the Chief Financial Offer of the Retreat Companies.

92.     Upon information and belief Schorr, Silberstein, Korogodsky, Gariano, and Hoinsky (the "Individual Defendants") were responsible for the day-to-day operations of the Retreat Companies, including the management and compensation of the NR Florida, NR Pennsylvania, and NR Connecticut employees.

93.     Upon information and belief, Schorr and Silberstein often disagreed about the financial management and operational decisions for the Retreat Companies, with Silberstein controlling the purse strings by refusing to consent to transfers between the various entities.

94.     The website for Retreat Behavioral Health, which did not distinguish between NR Florida, NR Pennsylvania, NR Connecticut, and RBH, listed Schorr, Gariano, Korogodsky, and Hoinsky as "Executive Leadership."

95.     Upon information and belief, as Chief Administrative Officer, Korogodsky had responsibility for the management of employees.

96.     Gariano, who was also sometimes referred to as the Chief Clinical Officer, was a "founding member of Retreat at Lancaster County," oversaw "all clinical activities at Retreat's inpatient and outpatient facilities in Pennsylvania and Florida," and "[h]er oversight reached hundreds of staffers, from clinical therapists to medical and nursing practioners," according to the website.

97.     Upon information and belief, as Chief Regulatory Officer, Gariano had responsibility to ensure compliance with all laws, such as the FLSA, the applicable state wage laws, and the WARN Act.

98.     Upon information and belief, as Chief Financial Officer, Hoinsky had responsibility over the Retreat companies' finances and the responsibility to ensure employees were properly compensated.

99.     Upon information and belief, following Peter Schorr's death, Korogodsky and Gariano assumed responsibility for communicating with employees about their employment status and outstanding wages due.

100.    Upon information and belief, following Peter Schorr's death, David Silberstein had 100% control of the Retreat Companies, and, following Korogodsky's death, David Silberstein had primary responsibility and management of the facilities and employees.

101.    Upon information and belief, following Peter Schorr's death, David Silberstein was the ultimate decision-maker as to whether to pay employees or provide WARN notice.

102.    In opposing the appointment of the receiver, Silberstein asserted his right and ability to act as manager of NR Pennsylvania.[11]

103.    At all times material to this action, Plaintiffs were employees of the Defendants RBH, NR Florida, NR Pennsylvania, NR Connecticut, DRPS, Coal Lake Worth, CLW Holdings, Coal Florida, Coal Connecticut, Coal New Haven, Coal Ephrata, Coal Capital and HFGC and Defendants RBH, NR Florida, NR Pennsylvania, NR Connecticut, DRPS, Coal Lake Worth, CLW Holdings, Coal Florida, Coal Connecticut, Coal New Haven, Coal Ephrata, Coal Capital and HFGC were the employers of Plaintiffs for purposes of the WARN Act.

104.    At all times material to this action, Plaintiffs were employees of the Defendants RBH, NR Florida, NR Pennsylvania, NR Connecticut, DRPS, Coal Lake Worth, CLW Holdings, Coal Florida, Coal Connecticut, Coal New Haven, Coal Ephrata, Coal Capital and HFGC and Defendants RBH, NR Florida, NR Pennsylvania, NR Connecticut, DRPS, Coal Lake Worth, CLW Holdings, Coal Florida, Coal Connecticut, Coal New Haven, Coal Ephrata, Coal Capital and HFGC were the employers of Plaintiffs for purposes of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, et seq. ("FLSA"), the Florida Constitution, Art. X, Sec. 24, CT Gen. Stat. § 31.58, § 31-71c and § 31-72, and 43 Pa. Stat. §260.

105.    At all times material to this action, Plaintiffs were the employees of Schorr, Silberstein, Korogodsky, Gariano, and Hoinsky and Schorr, Silberstein, Korogodsky, Gariano, and Hoinsky were the employer of Plaintiffs for purposes of the Fair Labor Standards Act of 1938, as

_____

[11] See Ex. 2, Defendants' Response to Receiver's Report p. 28-30.

amended, 29 U.S.C. § 201, et seq. ("FLSA"), the Florida Constitution, Art. X, Sec. 24, CT Gen. Stat. § 31.58, § 31-71c and § 31-72, and 43 Pa. Stat. §260.

## GENERAL ALLEGATIONS

106.    Retreat Behavior Health was a provider of behavioral and mental health services in Florida, Connecticut, and Pennsylvania.

107.    Through the Retreat Companies, Retreat Behavioral Health operated in-patient facilities in Palm Beach County, Florida, Lancaster County, Pennsylvania, and New Haven, Connecticut and behavioral health service centers in Palm Beach Lakes, Florida, South Miami, Florida, Akron, Pennsylvania, Philadelphia, Pennsylvania, and Lansdale, Pennsylvania ("the Facilities").

108.    Plaintiffs were employed by Retreat Behavioral Health and received paychecks from NR Florida, NR Pennsylvania, or NR Connecticut.

109.    Mia Williams and Brittany Calvert were nominal paid by NR Florida.

110.    Dedtra Davis was nominal paid by NR Pennsylvania.

111.    Alisa Leggett was nominal paid by NR Connecticut.

112.    Upon information and belief, NR Florida's most recent payroll records indicate that "all employees" totaled 1037 and active employees totaled 212.

113.    Upon information and belief, NR Pennsylvania's most recent payroll records indicate that "all employees" totaled 1479 and active employees totaled 278.

114.    Upon information and belief, NR Connecticut's most recent payroll records indicate that "all employees" totaled 498 and active employees totaled 147.

115.    On or about May 24, 2024, Defendants failed to pay Plaintiffs and all other employees for the May 6, 2024 thru May 19, 2024 pay period.

116.     Employees were paid late on or about May 25, 2024.

117.     On or about June 7, 2024, Defendants failed to pay Plaintiffs and all other employees for the May 20, 2024 thru June 2, 2024 pay period.

118.     Employees were paid late on or about June 10, 2024.

119.     On or about June 21, 2024, Defendants failed to pay Plaintiffs and all other employees for the June 3, 2024 thru June 16, 2024 pay period.

120.     Later that same day, Plaintiffs and other employees were informed by Gariano that the Chief Executive Officer, Peter Schorr, died.

121.     Gariano's email, which was sent to all employees in all three states, stated:

Good Afternoon Retreat –

It is with an incredibly heavy and sad heart that we are letting you know that our dear sweet soul Peter Schorr passed away.

We know there are many questions and as we gather answers, we will reach out and keep you all informed.

There are no words any of us will have with this incredibly difficult loss. Scott and I are here for each and every one of you. Please reach out to us.

We understand there is the matter of payroll we need to address and we are absolutely committed to rectifying this as soon as possible.

With much love and respect -
Scott and Chrissy

122.     It is believed that Peter Schorr died by suicide.

123.     Plaintiffs were told that all patients in the West Palm Beach facility were being transitioned out of Defendants' care immediately.

124.     On or about June 23, 2024, Plaintiffs and other employees received an email from Chief Administrative Officer, Scott Korogodsky, stating that Defendants were "experiencing

financial difficulties" and that they "did not yet have an answer regarding the distribution of payroll funds."

125.    The email included the following explanations regarding the "unanswered" questions:

> - *When will we be paid monies due from payroll date of Friday, June 21, 2024?*
>     o We hope to have a definitive answer toward week's end.
> - *Can employees file for Unemployment Compensation?*
>     o We are awaiting attorney guidance on UC (Unemployment Compensation). At this time, no facility has been given / granted authority to furlough employees.
>     o If you are currently employed, you may not apply for benefits.
> - *What are employee's chances of continued employment?*
>     o RBH Management is committed to continuing Peter's mission to provide quality substance abuse care and mental health services to all our communities.
>     o Every employee may need to review their own circumstances and do what is best for their personal and family situation.
> - *Do I still have healthcare benefits?*
>     o Management has consulted with our broker. UHC is working with our broker and RBH for continued coverage.

126.    On June 24, 2024, Korogodsky sent a follow-up email to all staff stating that they did "not have positive updates," that patients were being discharged and transferred at all locations and levels of care, and that Defendants are "closing services."

127.    This email stated that employees would receive "appropriate letters regarding employment" and that last week's payroll was a "top priority."

128.    Accordingly, Plaintiffs were terminated on or about June 21, 2024.

129.    On or about June 26, 2024, Scott Korogodsky died by suicide.

130.    Since filing the initial complaint in this lawsuit, some employees have received some payments for wages.

131.    Plaintiffs have retained the services of the undersigned attorneys and are obligated to pay the undersigned a reasonable fee for their services.

## CLASS ACTION ALLEGATIONS

132.    Plaintiffs sue under Rule 23(a) and (b) of the Federal Rules of Civil Procedure for violations of the WARN Act and Florida, Connecticut, and Pennsylvania state law for unpaid wages on behalf of themselves, and a class of employees who worked for the Facilities and were terminated without cause as part or as the reasonably foreseeable result of plant shutdowns or mass layoffs ordered at the Facilities (the "Class") on or about June 21, 2024 and were not paid the guaranteed minimum wage and applicable overtime from June 3, 2024 through the time of the layoff or the wages that were due pursuant to employment agreements. Plaintiffs also sue under 29 U.S.C. § 216(b) of the Fair Labor Standards Act for unpaid minimum wages and unpaid overtime under federal law.

133.    The persons in the Class ("Class Members") are so numerous that joinder of all members is impracticable as there are approximately over 750 potential class members.

134.    There are questions of law and fact common to the Class Members, namely:

(a)    Whether the Class Members were employees of Defendants RBH, NR Florida, NR Pennsylvania, NR Connecticut, DRPS, Coal Lake Worth, CLW Holdings, Coal Florida, Coal Connecticut, Coal New Haven, Coal Ephrata, Coal Capital and HFGC who worked at or reported to the Facilities;

(b)    Whether Defendants RBH, NR Florida, NR Pennsylvania, NR Connecticut, DRPS, Coal Lake Worth, CLW Holdings, Coal Florida, Coal Connecticut, Coal New Haven, Coal Ephrata, Coal Capital and HFGC ordered the termination of employment of each of the Class Members without cause on their part and without giving them 60 days advance written notice as required by the WARN Act;

(c)     Whether the Defendants RBH, NR Florida, NR Pennsylvania, NR
Connecticut, DRPS, Coal Lake Worth, CLW Holdings, Coal Florida, Coal
Connecticut, Coal New Haven, Coal Ephrata, Coal Capital and HFGC were
subject to any of the defenses provided for in the WARN Act;

(d)     Whether Defendants RBH, NR Florida, NR Pennsylvania, NR Connecticut,
DRPS, Coal Lake Worth, CLW Holdings, Coal Florida, Coal Connecticut,
Coal New Haven, Coal Ephrata, Coal Capital, HFGC, Schorr, Silberstein,
Korogodsky, Gariano, and Hoinsky failed to pay the minimum wage and
overtime required; and

(e)     Whether Defendants RBH, NR Florida, NR Pennsylvania, NR Connecticut,
DRPS, Coal Lake Worth, CLW Holdings, Coal Florida, Coal Connecticut,
Coal New Haven, Coal Ephrata, Coal Capital, HFGC, Schorr, Silberstein,
Korogodsky, Gariano, and Hoinsky failed to pay the wages that were due.

135.    The claims of the representative parties are typical of the claims of the Class, as
they were laid off as part of the plant shutdown or mass layoff, did not receive the requisite notice,
were not paid the minimum wage from June 2, 2024 through their layoff, and were not paid wages
due.

136.    The representative parties will fairly and adequately protect the interests of the
class.

137.    The Plaintiffs have retained counsel competent and experienced in complex class
action employment litigation.

138.    A class action is superior to other available methods for the fair and efficient
adjudication of this controversy—particularly in the context of WARN Act and wage litigation –

where the individual Plaintiffs and class members may lack the financial resources to vigorously prosecute a lawsuit in federal court against complex corporate entities and separate actions would create a risk of inconsistent or varying adjudications with respect to individual class members and the adjudications with respect to individual class members would be dispositive of the interests of other members.

139.    The Defendants RBH, NR Florida, NR Pennsylvania, NR Connecticut, DRPS, Coal Lake Worth, CLW Holdings, Coal Florida, Coal Connecticut, Coal New Haven, Coal Ephrata, Coal Capital, HFGC, Schorr, Silberstein, Korogodsky, Gariano, and Hoinsky acted on grounds that apply generally to the class.

140.    There are questions of law and fact common to the Class Members that predominate over any questions solely affecting individual members of the Class, including but not limited to:

      (a)    Whether the Class Members were employees of Defendants RBH, NR Florida, NR Pennsylvania, NR Connecticut, DRPS, Coal Lake Worth, CLW Holdings, Coal Florida, Coal Connecticut, Coal New Haven, Coal Ephrata, Coal Capital and HFGC who worked at or reported to the Facilities;

      (b)    Whether Defendants RBH, NR Florida, NR Pennsylvania, NR Connecticut, DRPS, Coal Lake Worth, CLW Holdings, Coal Florida, Coal Connecticut, Coal New Haven, Coal Ephrata, Coal Capital and HFGC ordered the termination of employment of each of the Class Members without cause on their part and without giving them 60 days advance written notice as required by the WARN Act;

      (c)    Whether Defendants RBH, NR Florida, NR Pennsylvania, NR Connecticut, DRPS, Coal Lake Worth, CLW Holdings, Coal Florida, Coal Connecticut,

Coal New Haven, Coal Ephrata, Coal Capital and HFGC were subject to any of the defenses provided for in the WARN Act;

(d)     Whether Defendants RBH, NR Florida, NR Pennsylvania, NR Connecticut, DRPS, Coal Lake Worth, CLW Holdings, Coal Florida, Coal Connecticut, Coal New Haven, Coal Ephrata, Coal Capital, HFGC, Schorr, Silberstein, Korogodsky, Gariano, and Hoinsky failed to pay the minimum wage and overtime required; and

(e)     Whether Defendants RBH, NR Florida, NR Pennsylvania, NR Connecticut, DRPS, Coal Lake Worth, CLW Holdings, Coal Florida, Coal Connecticut, Coal New Haven, Coal Ephrata, Coal Capital, HFGC, Schorr, Silberstein, Korogodsky, Gariano, and Hoinsky failed to pay the wages that were due pursuant to state law.

**COUNT 1**
**VIOLATIONS OF THE WARN ACT**
**AS TO DEFENDANTS RETREAT BEHAVIORAL HEALTH, NR FLORIDA, NR PENNSYLVANIA, RECEIVER YOUNG, NR CONNECTICUT, DRPS, COAL LAKE WORTH, COAL FLORIDA, COAL CONNECTICUT COAL NEW HAVEN, COAL CAPITAL EPHRATA, COAL CAPITAL GROUP, CLW HOLDINGS and HFGC.**

141.    Plaintiffs hereby incorporate by reference the allegations contained in paragraphs 1- 140 as if fully stated herein.

142.    Plaintiffs and other similarly situated employees were laid off as part of plant shutdowns or mass layoffs as defined by the WARN Act, for which they were entitled to receive 60 days advance written notice under the WARN Act.

143.    At all relevant times, Defendants RBH, NR Florida, NR Pennsylvania, NR Connecticut, DRPS, Coal Lake Worth, CLW Holdings, Coal Florida, Coal Connecticut, Coal New Haven, Coal Ephrata, Coal Capital, and HFGC jointly, or as a single, integrated enterprise,

employed 100 or more employees, exclusive of part-time employees, or employed 100 or more employees who in the aggregate worked at least 4,000 hours per week exclusive of hours of overtime within the United States as defined by the WARN Act and employed more than 50 employees at the Facilities.

144.    At all relevant times, the Defendants RBH, NR Florida, NR Pennsylvania, NR Connecticut, DRPS, Coal Lake Worth, CLW Holdings, Coal Florida, Coal Connecticut, Coal New Haven, Coal Ephrata, Coal Capital, and HFGC were an "employer" of Plaintiffs and the Class Members as that term is defined by the WARN Act.

145.    Although Plaintiffs and Class Members were compensated by either NR Florida, NR Pennsylvania, and NR Connecticut, Defendants RBH, NR Florida, NR Pennsylvania, NR Connecticut, DRPS, Coal Lake Worth, CLW Holdings, Coal Florida, Coal Connecticut, Coal New Haven, Coal Ephrata, Coal Capital, and HFGC functioned as one employer, managing all employees with the goal of providing behavioral health services in their respective Facilities.

146.    There was common ownership of the Defendants RBH, NR Florida, NR Pennsylvania, NR Connecticut, DRPS, Coal Lake Worth, CLW Holdings, Coal Florida, Coal Connecticut, Coal New Haven, Coal Ephrata, Coal Capital, and HFGC by Peter Schorr and David Silberstein.

147.    Specifically, Peter Schorr and David Silberstein were the managers of RBH, NR Florida, NR Pennsylvania, and NR Connecticut.

148.    Peter Schorr managed these companies through DRPS while David Silberstein managed them through the Coal Lake Worth, CLW Holdings, Coal Florida, Coal Connecticut, Coal New Haven, Coal Ephrata, Coal Capital, and HFGC.

149.    The various corporations were structured so that Peter Schorr and David Silberstein were the true owners of the Facilities.

150.    Defendants RBH, NR Florida, NR Pennsylvania, NR Connecticut, DRPS, Coal Lake Worth, CLW Holdings, Coal Florida, Coal Connecticut, Coal New Haven, Coal Ephrata, Coal Capital, and HFGC had the same directors and officers with Schorr, Korogodsky, Gariano, and Hoinsky serving as executive leadership for all Facilities.

151.    Upon information and belief, Korogodsky, Gariano, and Hoinsky reported to Schorr.

152.    Peter Schorr and David Silberstein had de facto control over the Facilities.

153.    Upon information and belief, all employees, regardless of which company compensated them, were subject to the same personnel policies which originated with the common executive management.

154.    Each of the RBH, NR Florida, NR Pennsylvania, NR Connecticut, DRPS, Coal Lake Worth, CLW Holdings, Coal Florida, Coal Connecticut, Coal New Haven, Coal Ephrata, Coal Capital, and HFGC were dependent on the operations of the others: money flowed to and from each entity as needed and the various companies were set up specifically for the purpose of operating the greater business.

155.    Indeed, upon the death of Peter Schorr, there was a company-wide decision to cease operations, to terminate employees, and not to pay employees their final wages that affected all employees, regardless of their nominal employing entity.

156.    On or about June 21, 2024, Defendants ordered "plant shutdowns" or "mass layoffs" as that term is defined by the WARN Act.

157.    Upon information and belief, Schorr, Korogodsky, and Silberstein each made a decision not to provide WARN Notice to Plaintiffs and those similarly situated.

158.    This decision was made as to all employees in the same manner, regardless of which entity nominally paid them or which Facility they reported to.

159.    The actions at the Facilities resulted in an "employment loss" as that term is defined by the WARN Act for at least 33% of its workforce, and at least 50 of its employees, excluding (a) employees who worked less than six of the twelve months prior to the date WARN notice was required to be given and (b) employees who worked an average of less than 20 hours per week during the 90-day period prior to the date WARN notice was required to be given.

160.    The termination of the Class Members' employment constituted plant shutdowns or mass layoffs as defined by the WARN Act.

161.    The Plaintiffs and each of the Class Members who were employed and then terminated as a result of the plant shutdowns or mass layoffs at the Facilities were "affected employees" of Defendants RBH, NR Florida, NR Pennsylvania, NR Connecticut, DRPS, Coal Lake Worth, CLW Holdings, Coal Florida, Coal Connecticut, Coal New Haven, Coal Ephrata, Coal Capital, and HFGC as defined by the WARN Act.

162.    The Plaintiffs and each of the Class Members are "aggrieved employees" of Defendants RBH, NR Florida, NR Pennsylvania, NR Connecticut, DRPS, Coal Lake Worth, CLW Holdings, Coal Florida, Coal Connecticut, Coal New Haven, Coal Ephrata, Coal Capital, and HFGC as that term is defined by the WARN Act.

163.    Pursuant to the WARN Act, Defendants RBH, NR Florida, NR Pennsylvania, NR Connecticut, DRPS, Coal Lake Worth, CLW Holdings, Coal Florida, Coal Connecticut, Coal New Haven, Coal Ephrata, Coal Capital, and HFGC were required to provide at least 60 days prior

written notice of the layoff, or notice as soon as practicable, to the affected employees, or their representative, explaining why the sixty (60) days prior notice was not given.

164.     Defendants RBH, NR Florida, NR Pennsylvania, NR Connecticut, DRPS, Coal Lake Worth, CLW Holdings, Coal Florida, Coal Connecticut, Coal New Haven, Coal Ephrata, Coal Capital, and HFGC failed to give at least sixty (60) days prior notice of the layoff in violation of the WARN Act.

165.     Defendants RBH, NR Florida, NR Pennsylvania, NR Connecticut, DRPS, Coal Lake Worth, CLW Holdings, Coal Florida, Coal Connecticut, Coal New Haven, Coal Ephrata, Coal Capital, and HFGC failed to pay the Plaintiffs and each of the Class Members their respective wages, salary, commissions, bonuses, accrued holiday pay and accrued vacation for 60 working days following their respective layoffs, and failed to make the pension and 401(k) contributions, provide other employee benefits under ERISA, and pay their medical expenses for 60 calendar days from and after the dates of their respective terminations.

166.     As a result of this failure to pay the wages, benefits and other monies as asserted, the Plaintiffs and Class Members were damaged in an amount equal to the sum of the members' unpaid wages, accrued holiday pay, accrued vacation pay, accrued sick leave pay and benefits which would have been paid for a period of sixty (60) calendar days after the date of their terminations.

167.     All administrative notice requirements and prerequisites have been satisfied.

168.     The failure of Defendants RBH, NR Florida, NR Pennsylvania, NR Connecticut, DRPS, Coal Lake Worth, CLW Holdings, Coal Florida, Coal Connecticut, Coal New Haven, Coal Ephrata, Coal Capital, and HFGC to provide Plaintiffs and those similarly situated with advanced written notice of their termination constitutes a violation of the WARN Act.

169.     Receiver Young is sued in his capacity as Receiver for NR Pennsylvania and is therefore responsible for the actions of NR Pennsylvania.

**WHEREFORE**, Plaintiffs pray that this Court award the following relief:

(a)     An amount equal to the sum of: unpaid wages, salary, commissions, bonuses, accrued holiday pay, accrued vacation pay, pension and 401(k) contributions and other ERISA benefits, for sixty (60) working days following the member employee's termination, that would have been covered and paid under the then applicable employee benefit plans had that coverage continued for that period, all determined in accordance with the WARN Act, 29 U.S.C. § 2104(a)(1)(A);

(b)     Certification that, pursuant to Fed. R. Civ. P. 23 (a) and (b) and the WARN Act, Plaintiffs and the Other Similarly Situated Former Employees constitute a single class;

(c)     Designation of Plaintiffs Williams, Calvert, Davis, and Leggett as Class Representatives;

(d)     Appointment of the undersigned attorneys as Class Counsel;

(e)     Interest as allowed by law on the amounts owed under the preceding paragraphs;

(f)     The reasonable attorneys' fees and the costs and disbursements the Plaintiffs incur in prosecuting this action, as authorized by the WARN Act; and

(g)     Such other and further relief as this Court may deem just and proper.

**COUNT II**
**VIOLATIONS OF THE FLSA AS TO ALL DEFENDANTS**

170.     Plaintiffs hereby incorporate by reference the allegations contained in paragraphs 1- 140 as if fully stated herein.

171.     The FLSA creates a private right of action against any "employer" who violates wage provisions.

172.     At all material times, the federal minimum wage was $7.25 per hour.

173.     Non-exempt employees are entitled to time and one half their regular rate of pay for hours worked over 40 in a workweek.

174.     The FLSA defines the term "employer" broadly to include "both the employer for whom the employee directly works as well as 'any person acting directly or indirectly in the interests of an employer in relation to an employee.'"

175.     Corporate officers with operational control of a corporation's covered enterprise are employers along with the corporation, jointly and severally liable for wage violations.

176.     The Individual Defendants had operational control of the Retreat Behavior Health enterprise, including the nominal entities through which employees were paid: NR Florida, NR Pennsylvania, and NR Connecticut.

177.     Plaintiffs and those similarly situated worked for Defendants RBH, NR Florida, NR Pennsylvania, NR Connecticut, DRPS, Coal Lake Worth, CLW Holdings, Coal Florida, Coal Connecticut, Coal New Haven, Coal Ephrata, Coal Capital, HFGC, Schorr, Silberstein, Korogodsky, Gariano, and Hoinsky and were not paid from June 3, 2024 through the date of the layoffs and did not receive at least the minimum wage for all hours worked.

178.     All administrative notice requirements and prerequisites have been satisfied.

179.     Defendants RBH, NR Florida, NR Pennsylvania, NR Connecticut, DRPS, Coal Lake Worth, CLW Holdings, Coal Florida, Coal Connecticut, Coal New Haven, Coal Ephrata, Coal Capital, HFGC, Schorr, Silberstein, Korogodsky, Gariano, and Hoinsky's failure to provide

27

employees with the required minimum wage and overtime compensation, if applicable, constitutes a violation of the FLSA.

180.    Defendants RBH, NR Florida, NR Pennsylvania, NR Connecticut, DRPS, Coal Lake Worth, CLW Holdings, Coal Florida, Coal Connecticut, Coal New Haven, Coal Ephrata, Coal Capital, HFGC, Schorr, Silberstein, Korogodsky, Gariano, and Hoinsky's violations of the FLSA were knowing and willful.

181.    Receiver Young is sued in his capacity as Receiver for NR Pennsylvania and is therefore responsible for the actions of NR Pennsylvania.

**WHEREFORE**, Plaintiffs pray that this Court award the following relief:

(a)    judgment that Defendants RBH, NR Florida, NR Pennsylvania, Receiver Young, NR Connecticut, DRPS, Coal Lake Worth, CLW Holdings, Coal Florida, Coal Connecticut, Coal New Haven, Coal Ephrata, Coal Capital, HFGC, Schorr, Silberstein, Korogodsky, Gariano, and Hoinsky violated 29 U.S.C. §§ 206, 207 of the Fair Labor Standards Act;

(b)    damages for the amount of unpaid minimum wage and overtime compensation owed to Plaintiffs;

(c)    liquidated damages, pursuant to 29 U.S.C. § 216(b), in an amount equal to the compensation owed to Plaintiffs;

(d)    post-judgment interest, reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b); and

(e)    any other additional relief as the Court deems just and proper.

**COUNT III**
**VIOLATIONS OF ART X, SEC 24 OF THE FLORIDA CONSTITUTION**
**AGAINST ALL DEFENDANTS**

182.   Plaintiffs hereby incorporate by reference the allegations contained in paragraphs 1- 140 as if fully stated herein.

183.   Art. X, Sec. 24 of the Florida Constitution, creates a right of action against any "employer" who violates wage provisions.

184.   At all material times, the Florida minimum wage was $12.00 per hour.

185.   The Florida Constitution adopts the FLSA definitions and defines the term "employer" broadly to include "both the employer for whom the employee directly works as well as 'any person acting directly or indirectly in the interests of an employer in relation to an employee.'"

186.   Corporate officers with operational control of a corporation's covered enterprise are employers along with the corporation, jointly and severally liable for wage violations.

187.   Plaintiffs Williams and Calvert worked out of or reported to the Florida facilities.

188.   Plaintiff Williams, Plaintiff Calvert, and those similarly situated worked for Defendants in Florida and were not paid from June 3, 2024 through the date of the layoffs and did not receive at least the minimum wage for all hours worked.

189.   Schorr, Silberstein, Korogodsky, Hoinsky, and Gariano all bore some responsibility for setting the wages and paying employees and were all involved in the decision or decisions not to pay employees the wages they were due.

190.   All administrative notice requirements and prerequisites have been satisfied.

191.   Defendants' failure to provide employees with the required minimum wage and overtime compensation, if applicable, constitutes a violation of the Florida Constitution.

192.    Defendants' violations of the Florida Constitution were knowing and willful.

193.    Receiver Young is sued in his capacity as Receiver for NR Pennsylvania and is therefore responsible for the actions of NR Pennsylvania.

**WHEREFORE**, Plaintiffs pray that this Court award the following relief:

(a)    judgment that Defendants RBH, NR Florida, NR Pennsylvania, Receiver Young, NR Connecticut, DRPS, Coal Lake Worth, CLW Holdings, Coal Florida, Coal Connecticut, Coal New Haven, Coal Ephrata, Coal Capital, HFGC, Schorr, Silberstein, Korogodsky, Gariano, and Hoinsky violated Art. X, Sec. 24 of the Florida Constitution;

(b)    damages for the amount of unpaid minimum wage owed to Plaintiffs and those similarly situated;

(c)    liquidated damages in an amount equal to the compensation owed to Plaintiffs and those similarly situated;

(d)    post-judgment interest, reasonable attorneys' fees and costs pursuant to Fla. Stat. §448.08; and

(e)    any other additional relief as the Court deems just and proper.

### COUNT IV
### VIOLATIONS OF CT GEN STAT § 31-58, *et seq*
### AGAINST ALL DEFENDANTS

194.    Plaintiffs hereby incorporate by reference the allegations contained in paragraphs 1- 140 as if fully stated herein.

195.    Connecticut General Statute §31-58, *et seq* governs the payment of wages to employees and creates a right of action against any "employer" who violates these wage provisions.

196.    At all material times, the Connecticut minimum wage was $15.69 per hour.

197.    Connecticut law also requires the payment of time and one half for overtime hours.

198.    Connecticut General Statute §31-71 requires payment of final wages no later than the next business day following a discharge.

199.    Under Connecticut law, "Employer" means any owner or any person, partnership, corporation, limited liability company or association of persons acting directly as, or on behalf of, or in the interest of an employer in relation to employees.

200.    Corporate officers who are responsible for setting the hours of employment, payment of wages, and caused a specific wage violation may be liable as an employer along with the corporation, jointly and severally liable for wage violations.

201.    Plaintiff Leggett worked out of or reported to the Connecticut facilities.

202.    Plaintiff Leggett and those similarly situated worked for Defendants in Connecticut and were not paid from June 3, 2024 through the date of the layoffs and did not receive at least the minimum wage for all hours worked.

203.    Schorr, Silberstein, Korogodsky, Hoinsky, and Gariano all bore some responsibility for setting the wages and paying employees and were all involved in the decision or decisions not to pay employees the wages they were due.

204.    All administrative notice requirements and prerequisites have been satisfied.

205.    Defendants' failure to provide employees with the required minimum wage and overtime compensation, if applicable, constitutes a violation of the Connecticut law.

206.    Defendants' violations of Connecticut law were knowing and willful.

207.    Receiver Young is sued in his capacity as Receiver for NR Pennsylvania and is therefore responsible for the actions of NR Pennsylvania.

**WHEREFORE**, Plaintiffs pray that this Court award the following relief:

(a)     judgment that Defendants RBH, NR Florida, NR Pennsylvania, Receiver Young, NR Connecticut, DRPS, Coal Lake Worth, CLW Holdings, Coal Florida, Coal Connecticut, Coal New Haven, Coal Ephrata, Coal Capital, HFGC, Schorr, Silberstein, Korogodsky, Gariano, and Hoinsky violated CT Gen. Stat. §31-58, *et seq*;

(b)     damages for the amount of unpaid wages, unpaid minimum wage, and unpaid overtime wage owed to Plaintiffs and those similarly situated;

(c)     liquidated damages in an amount equal to the compensation owed to Plaintiffs and those similarly situated;

(d)     post-judgment interest, reasonable attorneys' fees and costs pursuant to CT Gen. Stat. §31-68; and

(e)     any other additional relief as the Court deems just and proper.

## COUNT V
## VIOLATIONS OF 43 P.A. Stat. §260.1, *et seq*
## AGAINST ALL DEFENDANTS

208.    Plaintiffs hereby incorporate by reference the allegations contained in paragraphs 1- 140 as if fully stated herein.

209.    43 P.A. Stat. §260.1, *et seq* governs the payment of wages to employees and creates a right of action against any "employer" who violates these wage provisions.

210.    At all material times, the Pennsylvania minimum wage was $7.25 per hour.

211.    Pennsylvania law also requires the payment of time and one half for overtime hours.

212.    43 P.A. Stat. §260.5 requires payment of wages on or before the next scheduled pay day.

213.     Under Pennsylvania law, "Employer" means every person, firm, partnership, association, corporation, receiver or other officer of a court of this Commonwealth and any agent or officer of any of the above-mentioned classes employing any person in this Commonwealth.

214.     Corporate officers with operational control of a corporation's covered enterprise are employers along with the corporation, jointly and severally liable for wage violations.

215.     Plaintiff Davis worked out of or reported to Retreat's Pennsylvania facilities.

216.     Plaintiff Davis and those similarly situated entered into an agreement with NR Pennsylvania to be compensated for their work at an agreed upon wage.

217.     Plaintiff Davis and those similarly situated worked for Defendants in Pennsylvania and were not paid from June 3, 2024 through the date of the layoffs and did not receive at least the minimum wage for all hours worked.

218.     Schorr, Silberstein, Korogodsky, Hoinsky, and Gariano all bore some responsibility for setting the wages and paying employees and were all involved in the decision or decisions not to pay employees the wages they were due.

219.     All administrative notice requirements and prerequisites have been satisfied.

220.     Defendants' failure to provide employees with the required minimum wage and overtime compensation, if applicable, constitutes a violation of the Pennsylvania law.

221.     Defendants' violations of Pennsylvania law were knowing and willful.

222.     Receiver Young is sued in his capacity as Receiver for NR Pennsylvania and is therefore responsible for the actions of NR Pennsylvania.

**WHEREFORE**, Plaintiffs pray that this Court award the following relief:

(f)     judgment that Defendants RBH, NR Florida, NR Pennsylvania, Receiver Young, NR Connecticut, DRPS, Coal Lake Worth, CLW Holdings, Coal Florida, Coal

Connecticut, Coal New Haven, Coal Ephrata, Coal Capital, HFGC, Schorr, Silberstein, Korogodsky, Gariano, and Hoinsky violated 43 P.A. Stat. §260.1, *et seq*;

(g)    damages for the amount of unpaid wages, unpaid minimum wage, and unpaid overtime wage owed to Plaintiffs and those similarly situated;

(h)    liquidated damages in an amount equal to the compensation owed to Plaintiffs and those similarly situated;

(i)    post-judgment interest, reasonable attorneys' fees and costs pursuant to 43 P.A. Stat. 260.9; and

(j)    any other additional relief as the Court deems just and proper.

Respectfully submitted,

/s/ Ryan D. Barack
Ryan D. Barack
Florida Bar No. 0148430
Primary Email: rbarack@employeerights.com
Secondary Email: jackie@employeerights.com
Michelle Erin Nadeau
Florida Bar No. 0060396
Primary Email: mnadeau@employeerights.com
Secondary Email: jackie@employeerights.com
Kwall Barack Nadeau PLLC
304 S. Belcher Rd., Suite C
Clearwater, Florida 33765
(727) 441-4947
(727) 447-3158 Fax
Attorneys for Plaintiffs

-and-

Michael A. Pancier
Fla. Bar No. 958484
Email: mpancier@pancierlaw.com
Michael A. Pancier, P.A.
9000 Sheridan Street, Suite 93
Pembroke Pines, FL 33024
(954) 862-2217
Attorney for Plaintiffs

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 21st day of January 2025, I electronically filed the

foregoing with the Clerk of Court using the CM/ECF system which will provide service upon all

registered parties.

/s/ Ryan D. Barack
Attorney