UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO: 24-cv-80787-DMM/Matthewman

**MIA WILLIAMS, ET AL.,**

    *Plaintiffs,*

v.

**RETREAT BEHAVIORAL
HEALTH, LLC, ET AL.,**

    *Defendants.*

_____/

**PLAINTIFFS' RENEWED MOTION FOR CLASS CERTIFICATION AND
APPROVAL OF CLASS REPRESENTATIVES, CLASS COUNSEL, AND NOTICE**

Pursuant to Federal Rule of Civil Procedure 23 Plaintiffs Mia Williams, Brittany Calvert, Dedtra Davis, and Alisa Leggett file this Motion seeking to certify this case as a class action for a group of former employees pursuant to the WARN Act and state wage laws.[1]  Specifically, Plaintiffs seek to certify a class defined as:

> All former employees of Retreat Behavioral Health, or its related entities, who worked at or reported to Defendant's facilities in Florida, Pennsylvania, and Connecticut and were not given a minimum of 60 days' written notice of termination and whose employment was terminated without cause on or about June 24, 2024, within 30 days of that date or thereafter, as part of, or as the reasonably expected consequence of the mass layoffs or plant closings (as defined by the Workers Adjustment and Retraining Notification Act of 1988).

The putative Class Members hold identical claims for identical statutory WARN Act remedies consisting of sixty days' pay and the consequent loss of benefits during that period and for unpaid wages in their final weeks of work.  A Rule 23 class action is widely regarded as the optimal legal

---

[1] By separate motion, Plaintiffs also ask the Court to certify a collective action for the alleged violations of the Fair Labor Standard Action.  Plaintiffs propose one notice for the potential members of the class and collective actions.

1

process for resolving WARN Act claims. With respect to the state law wage claims, the class of employees who did not receive pay for all hours of work is wholly within the class of those who did not receive WARN notice. However, if necessary, the Court could establish three sub-classes, one for employees in Connecticut, one for employees in Florida, and one for employees in Pennsylvania. The proposed class satisfies all of Rule 23's requirements and fulfills the objective and rationale for efficiently resolving such claims on a class-wide basis. The Court should appoint Mia Williams, Brittany Calvert, Dedtra Davis, and Alisa Leggett as class representatives and appoint Ryan Barack and Michelle Nadeau of Kwall Barack Nadeau PLLC and Michael Pancier of Law Offices of Michael A. Pancier as class counsel. Finally, the Court should also approve the proposed notice to the class.

## SUPPORTING FACTS

1. Retreat was a provider of behavioral and mental health services in Florida, Connecticut, and Pennsylvania.

2. Retreat operated in-patient facilities in Palm Beach County, Florida, Lancaster County, Pennsylvania, and New Haven, Connecticut and behavioral health service centers in Palm Beach Lakes, Florida, South Miami, Florida, Akron, Pennsylvania, Philadelphia, Pennsylvania, and Lansdale, Pennsylvania ("the Facilities").

3. Retreat's services to its patients were terminated, without advance notice, on June 21, 2024.

4. At all relevant times, Retreat employed 100 or more employees, exclusive of part-time employees, or employed 100 or more employees who in the aggregate worked at least 4,000 hours per week, exclusive of overtime, within the United States.

5. A receiver has been appointed by a state court in Pennsylvania to oversee NRPA, LLC, which is also one of the defendants in this litigation. *See* Ex. 1 - Barack Declaration ¶22.

6. According to the Pennsylvania Receiver, NR Pennsylvania, LLC, NR Florida Associates, LLC, and NR Connecticut Associates, LLC (the "NR Entities") operated within a singular business enterprise and the entities frequently transferred funds between the three as needed. Id. at ¶23.

7. Each of the NR Entities has the same ownership structure, with Peter Schorr's entity, DRPS Management, LLC, holding 67% of the membership interests and entities owned or controlled by Defendant David Silberstein, holding the remaining 33% membership interests. *See* Ex. 2 - Receiver's First Report p. 3.

8. Peter Schorr and David Silberstein were the owners of Retreat Behavioral Health.

9. The properties for the inpatient treatment facilities are held under separate ownership by various companies owned by David Silberstein, who is also part owner of the NR Entities. Id. According to the Pennsylvania Receiver, money frequently moved between the NR entities, DRPS, and David Silberstein's companies (Coal Capital, Coal Lake Worth, LLC, and Coal Capital Group, LLC, and Coal Capital Holdings (Florida), LLC) such that the Coal companies owe millions of dollars to the NR entities. Id.

10. According to a filing in Pennsylvania, which was verified by Peter Schorr, NR Pennsylvania and NR Florida asserted there were "more than 641 employees" as of May 2024. Id. at ¶24.

11. Payroll records show that 446 people were paid by NR Pennsylvania on June 7, 2024 and 381 people were paid by NR Florida on June 7, 2024. Id. at ¶25.

12. On or about June 21, 2024, Retreat employees were not paid their expected paychecks and were informed that Peter Schorr had died.

13. On June 24, 2024, Retreat announced that it would stop providing services.

3

14. All, or most, employees of Retreat were terminated.

15. Because Defendants are an "employer" as defined by the WARN Act, Plaintiffs and the putative class members were entitled to receive 60 days' written notice of the layoff.

16. Defendants provided no advance written notice of the mass layoff to Plaintiffs, or to any of the putative class members, nor has a WARN Notice been provided to the state in Florida[2], Connecticut[3], or Pennsylvania[4] as required by the WARN Act.

17. Plaintiffs and the other class members were discharged without cause.

18. These terminations resulted in the loss of employment for hundreds.

19. Accordingly, this mass layoff (or plant closing), as defined under the WARN Act, 29 U.S.C. §2101(a)(2) and 2101(a)(3), triggered notification of the layoff in accordance with 29 U.S.C. §2102 by Defendant.

20. Because Retreat failed to comply with the WARN Act's notification requirements, Defendant is liable for statutory damages under the Act. Those damages include "back pay" for each day of violation at a rate of compensation not less than the higher of (i) the average regular rate received by such employee during the last three years of the employee's employment, or (ii) the final regular rate received by such employee. 29 U.S.C. §2104(a)(1)(A). The "back pay" is for a period of up to 60 days.

21. The WARN Act further provides for recovery of "benefits under an employee benefit plan described in Section 3(3) of the Employee Retirement Income Security Act of 1974, 29 U.S.C. §1002(3), including the cost of medical expenses incurred during the employment loss which would have been covered under an employee benefit plan if the employment loss had not

---

[2] https://reactwarn.floridajobs.org/WarnList/Records?year=2024
[3] https://www.ctdol.state.ct.us/progsupt/bussrvce/warnreports/warn2024.htm
[4] https://www.pa.gov/en/agencies/dli/programs-services/workforce-development-home/warn-requirements/warn-notices.html

occurred." 29 U.S.C. §2104(a)(1)(A). The Act sets forth the basis upon which damages calculations shall be made and further provides that it is within the court's discretion to allow the prevailing party a reasonable attorney's fees as part of the cost. 29 U.S.C. §2104(a)(6). Plaintiffs seek all damages recoverable under the WARN Act.

22.	In addition, Plaintiffs and other employees were not paid their regular wages for the final weeks they worked at Retreat.[5]

23.	The undersigned counsel is qualified to represent the class in this matter, and they have already been retained by more than 49 former employees of Retreat with respect to their WARN Act claims. Barack Declaration.

24.	Based upon the reasons and authority cited herein, this case is ripe for class treatment and this Motion should be granted.

## LEGAL ANALYSIS

**A.	Overview**

The WARN Act bars an employer with 100 or more full-time employees from ordering a "plant closing" or a "mass lay-off," i.e., the termination of 50 or more employees and more than at least 33 1/3 of the employees at a single site of employment within a 30-day period or as the reasonably foreseeable result of such plant closing or mass layoff unless at least 60 days' advance written notice containing specified information is provided to each employee who will be terminated as part of, or as a reasonably foreseeable result of, a mass layoff or plant closure. WARN Act, 29 U.S.C. §§2101(a)(1), §2101(a)(5) 2102(a)(1).

Failure to give the required notice renders the employer liable to each affected employee for 60 days' pay and benefits. If the employer gives less than 60 days' notice, the employer is

---

[5] Some employees in Pennsylvania were later provided with some pay.

liable for pay and benefits for the number of days that notice was not given. 29 U.S.C. §2104. The notice must be given by a method that is reasonably designed to ensure fulfillment of the employer's obligation to give notice to each employee. 29 U.S.C. §2107(b); 20 C.F.R. §639.8.

In addition, Plaintiffs also assert minimum wage claims under Florida and Connecticut law and unpaid wage claims. [DE 4, ¶¶ 31, 55-59, 79-90]. See generally, Connecticut General Statute, Chapter 558, Sec. 31-58 et seq.2 and Art. X, sec. 24 of the Florida Constitution.

### B. The Maintenance of a Class and Collective Action and the Potential Use of Subclasses.

The Eleventh Circuit has expressly found a §216(b) collective action and a Rule 23(b)(3) class action may be maintained in the same proceeding. *Calderone v. Scott*, 838 F.3d 1101, 1107 (11th Cir. 2016). In Calderone, the Court rejected an argument that this could be confusing:

> We also reject the idea that concerns about confusion render these two types of actions "irreconcilable" even where plaintiffs might be confronted with a combined notice listing both "opt-in" and "opt-out" claims. The Seventh Circuit thoughtfully explained in Ervin that "confusion created by a notice is a valid case-management consideration ... [but] there is no indication that the problem is any worse than countless others that district courts face with class actions." 632 F.3d at 978. We agree that "[i]t does not seem like too much to require potential participants to make two binary choices: (1) decide whether to opt in and participate in the federal action; (2) decide whether to opt out and not participate in the state-law claims." Id. (emphasis omitted).

*Id*. Indeed, it will be most efficient to address both the opt-out Rule 23 class and the opt-in FLSA class in one notice.

If necessary, sub-classes could be created to address the slight variations in state law for each of the three states. Where there are variations in state law claims, the use of subclasses is appropriate. See *In re Checking Account Overdraft Litig.*, 281 F.R.D. 667, 680 (S.D. Fla. 2012)("The Court therefore finds that the creation of subclasses to address variations in state law is appropriate here, and will make this case manageable as a class action"). Here, an easily

6

distinguishable sub-class for employees in Connecticut, Florida and Pennsylvania will allow for the state-specific wage claims to be litigated efficiently.

### C. Legal Requirements of Class Certification

To maintain a class action, Plaintiffs must satisfy all of the requirements of Rule 23(a):

(1) the class is so numerous that joinder of all members is impracticable;
(2) there are questions of law or fact common to the class;
(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). The four requirements, also known as numerosity, commonality, typicality, and adequacy, "are designed to limit class claims to those fairly encompassed by the named plaintiffs' individual claims." *Piazza v. Ebsco Indus., Inc.*, 237 F.3d 1314, 1346 (11th Cir. 2001). Additionally, Plaintiffs must satisfy "at least one of the three provisions of Rule 23(b)." *Silva-Arriaga v. Texas Express, Inc.*, 22 F.R.D. 684 (M.D. Fla. 2004). As shown in more detail below, Plaintiffs rely on Rule 23(b)(3) which provides that the Plaintiffs demonstrate that common questions of law or fact predominate over individual issues. *Silva-Arriaga*, 222 F.R.D. at 688 (explaining that a class action must be superior to other available methods of litigation). Class certification is appropriate under Rule 23 as the four requirements under Rule 23(a) are satisfied and Plaintiffs share common questions of law or fact as required by Rule 23(b).

WARN Act claims are particularly amenable to class action litigation in that the statute specifically contemplates the appropriateness and effectiveness of a class action and provides that an "aggrieved employee" may pursue the remedies provided in the Act on his own behalf and for "others persons similarly situated." 29 U.S.C. §2104(a)(5) and 2104(a)(7). *See Weekes-Walker v. Macon County*, 281 F.R.D. 520 (M.D. Ala. 2012); *In re Taylor Bean & Whitaker Mortgage Corp.*, 2010 WL 4025873 (Bankr. M.D. Fla. Sept. 27, 2010); *Applegate v. Formed Fiber Tech. Inc.*, 2012

7

U.S. Dist. LEXIS 105264 (D. Me. July 27, 2012) (certifying a Rule 23 class action on a WARN Act claim and characterizing such claim as "particularly amenable" to class action litigation). Indeed, this Court certified a class of former employees of a mental health provider stating that "courts have described WARN Act lawsuits as 'particularly amenable' to the class vehicle because the WARN Act applies only to actions affecting large numbers of employees." *Jones v. Jerome Golden Ctr. for Behavioral Health, Inc.*, 9:19-CV-81422, 2020 WL 3118311, at *3 (S.D. Fla. Mar. 26, 2020).

**D.      Plaintiffs Satisfied All of the Rule 23(a) Class Certification Requirements.**

### 1.      The Proposed Class Is Sufficiently Numerous.

Plaintiffs satisfy the first requirement of numerosity as the joinder of all members would be impracticable. While there is not a specific number of plaintiffs that are required to maintain a class action, Plaintiffs must show some evidence or reasonable estimate of the number of class members. *Silva-Arriaga*, 222 F.R.D. at 688 (noting that is it not necessary that the precise number of class members be known)(citing *Kilgo v. Bowman Tranp., Inc.*, 789 F.2d 859, 878 (11th Cir. 1986)). As part of the numerosity requirement, courts look to whether the class is "adequately defined and clearly ascertainable." *See DeBremaecker v. Short*, 433 F.2d 733 (5th Cir. 1970); *Rink v. Cheminova, Inc.*, 2003 F.R.D. 648, 659 (M.D.Fla. 2001). Although the exact number of proposed class members need not be established, the description of the class must be defined in such a way that the court can ascertain member status. *Rink*, 2003 F.R.D. at 659.

Here, it cannot be disputed that the putative class will easily meet the numerosity requirement. Defendant employed over 650 employees, most of whom comprise the putative class, well in excess of the threshold needed to satisfy the Rule 23 numerosity requirement. [Barack Declaration ¶21, 24-26]. In the past, WARN Act class action litigation has involved

claims brought by the former employees of an employer with far fewer class members. *See Brady v. Thurston Motor Lines*, 726 F.2d 136 (4th Cir. 1984) (certifying class of 74 persons); *Grimmer v. Lord, Day & Lord*, 11 IER Cases (BNA) 698 (S.D.N.Y. 1996) (certifying class of 92 persons). Further, because the putative class sought is premised on a uniform policy and practice of Defendant with respect to the WARN Act violations, the Court may make a "common sense assumption" that everyone who meets the class definition are putative class members. *Evans v U.S. Pipe & Foundry Co.*, 696 F. 2d 925, 930 (11th Cir. 1983).

Indeed, the nature and size of the individual claims also make joinder impracticable. In terms of the WARN Act claim, WARN Act damages due each individual will vary depending on wage or salary. However, damages are easily calculated based on the wage and benefits the employee would have earned for the 60-day period that notice was due but not given. *See* 29 U.S.C. §2104(a)(1); *Carpenters v. Dillard Department Stores, Inc.*, 14 F. 3d 1275 (5th Cir. 1994). Modest claims such as these are well suited for class action, as class certification would allow the class to collectively seek relief that otherwise would be too costly for each to bear alone. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985), 547 S.Ct. 2965, 86 L.Ed2d 628 ("Class actions also may permit the plaintiffs to pool claims which would be uneconomical to litigate individually."). Many, if not most, of the members of the proposed class here lack the financial resources to institute an individual complaint to redress the harm inflicted upon them by Defendant's failure to provide them with the notice required by the WARN Act. Class certification would allow the class to collectively seek relief that otherwise would be too costly to bear alone.

### 2. Plaintiffs Present Common Questions of Fact and Law.

Commonality focuses on whether the class members can show that at least one factual or legal question is shared by all. *In re Protected Vehicles, Inc.*, 397 B.R. 339 (Bankr. S.C. 2008).

Here, Class Members share the common questions of whether their termination due to the mass layoff or closing of Retreat required notice under the WARN Act and whether they are due wages for their final workweeks. *See also In re Bill Heard Enterprises, Inc.*, 400 B.R. at 802 (finding commonality was satisfied where potential class claimants were all terminated when Employer ceased operations before filing bankruptcy). Courts in this District have held that the commonality threshold is met by "allegations of treating an entire class unlawfully in the same way." *See Mowat v. DJSP Enterprises, Inc.*, No. 10-62302-CIV, 2011 WL 13217002, at *3 (S.D. Fla. Aug. 23, 2011), *report and recommendation adopted,* No. 10-62302-CIV, 2011 WL 13214331 (S.D. Fla. Sept. 26, 2011)(certifying WARN Act class); *In re Terazoin Hydrochloride*, 220 F.R.D. 672, 686-87 (S. D. Fla. 2004)*; Walco Inv. Inc. v. Thenen*, 168 F.R.D. 315, 325 (S.D. Fla. 1996) (commonality "does not require that all of the questions of law or fact raised by the case be common to all of the Plaintiffs.").

Plaintiffs and the class members were terminated as part of a common plan stemming from the Defendant's decision to carry out a mass layoff. The WARN Act itself recognizes that class actions are the preferred method of resolution of these common issues. *See* 29 U.S.C. §2104(a)(5). Indeed, courts have noted that "[t]he WARN Act contemplates enforcement by class action." *Butler-Jones v. Sterling Casino Lines, L.P.*, 2008 WL 5274384 at *3 (M.D. Fla. Dec. 18, 2008) (citing 29 U.S.C. §2104(5)); *see also Cashman*, 225 F.R.D. at 92; *Finnan v. L.F. Rothschild & Co. Inc.*, 726 F. Supp. 460, 465 (S.D.N.Y. 1989). WARN Act claims provide several common questions to be addressed for each plaintiff including whether plaintiffs were required to receive 60 days' advance notice and whether plaintiffs were terminated without cause. *In re Taylor Bean & Whitaker Mortgage Corp.*, 2010 WL 4025873 (Bankr. M.D. Fla. Sept. 27, 2010)(holding commonality requirement was satisfied with WARN Act questions). Here, the only differences

10

between the class members' claims are minor (e.g., differences in rate of pay or applicable minimum wage). Virtually all of the issues are common to the Class. Thus, by the nature of the WARN Act, Plaintiffs satisfy the commonality requirement.

In the instant case, all of the class members had the common experience of losing their jobs without advance notice as part of Defendant's mass layoff and of not being paid their final paycheck(s). Each class member was terminated without cause, and without advance notice, as part of the massive layoff occurring within 90 days of June 21, 2024 in violation of the WARN Act. Because each class member suffered the same injury based on the same common core of salient facts, each class members' claim shares common legal and factual questions. Moreover, an award of damages to one class member for a violation of the WARN Act justifies the award of damages to the remaining class members under the same legal theory, subject to the same defenses. And, while the award of damages under the WARN Act to each class member may vary depending on rate of pay, the Eleventh Circuit has long held that the presence of individualized damages does not prevent a finding of commonality. *See Allapattah Serv., Inc. v. Exxon Corp.*, 333 F. 3d 1248, 1261 (11th Cir. 2003).

Although no defenses have yet been articulated, the defenses to WARN Act claims are also common to all class members, including whether an exception to the WARN Act applies and whether an entity is an employer subject to the WARN Act.

Accordingly, commonality has been met.

### 3. The Claims Presented are Typical of the Claims of the Class.

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." "A class representative must possess the same interest and suffer the same injury as the class members in order to be typical under Rule 23(a)(3). Typicality

11

measures whether a sufficient nexus exists between the claims of the named representatives and those of the class at large." *Rosario-Guerro*, 265 F.R.D. at 627 (*citing Busby v. JRHBW Realty, Inc.*, 513 F. 3d 1314, 1322 (11th Cir. 2008). The typicality requirement "is said to limit class actions to those fairly encompassed by the named plaintiffs' claims." *GTE Co. of the Northwest v. EEOC*, 446 U.S. 318, 330 (1980). However, the class representative's claim does not have to be identical to the claims of other potential class members. *Appleyard v. Wallace*, 754 F.2d 955 (11th Cir. 1985). Typicality "may be satisfied even if there are factual distinctions between the claims of the named plaintiffs and those of other class members." *Santiago v. Wm. G. Roe & Sons, Inc.*, 2008 WL 2953003 (M.D. Fla. 2008).

In this case, the legal theory underlying the claims of the putative class members is identical to the named Plaintiffs' claims. Here, all of the claims are based on the same set of facts and are grounded in the same legal theories. Plaintiffs are members of the proposed class and their claims have the same essential characteristics as the claims of the class at large. They assert that they and the other proposed class members were all terminated without cause as part of the same mass layoff that occurred at Retreat on or around June 21, 2024. Plaintiffs also assert that they, like the other proposed class members, were not given notice of the termination, were not otherwise compensated for that notice period, and did not receive their final paycheck(s). Aside from questions of quantum of damages, whether Plaintiffs and the other putative class members were covered by the WARN Act and whether Defendant violated the WARN Act are common to the class representatives and each class member. In short, the issues of liability are common to the class. Class action suits under the WARN Act almost always involve a class of plaintiffs who held different positions, were paid different amounts, and frequently were terminated on different dates.

There is nothing to suggest the class representatives' claims are atypical of the class. Consequently, the typicality requirement of Rule 23(a)(3) has been met for the WARN Act Class.

### 4. The Class Representatives Will Fairly and Adequately Protect and Represent the Interests of the Class.

The final requirement of Rule 23(a) is that the representative parties will fairly and adequately protect the interests of the Class. Fed. R. Civ. P. 23(a)(4). The adequacy of representation requirement encompasses two separate inquiries: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action. *Rosario-Guerro*, 265 F.R.D. at 628; *Valley Drug Co. v. Geneva Pharms., Inc*., 350 F. 3d 1181, 1189 (11th Cir. 2003).

The Class Representatives, Mia Williams, Brittany Calvert, Dedtra Davis, and Alisa Leggett, can and will fairly represent the interests of the Class and have no conflicts with, or antagonistic to, the Class. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 625-26 (1997)("[A] class representative must be part of the class 'possess the same interest and suffer the same injury' as the class members.") (citing *East Tex. Motor Freight System, Inc. v. Rodriguez,* 431 U.S. 395, 403 (1977)). The Class Representatives worked in all three states: Williams and Calvert worked in Florida; Davis worked in Pennsylvania; and Leggett worked in Connecticut.

The test of "adequate representation" is whether the class representative has a "sufficient interest in, and nexus with, the class to ensure vigorous prosecution. *Wagner v. Central Louisiana Electric Company, Inc*., 99 F.R.D. 279, 284 (E.D. La 1983) *citing Roper v. Consurve, Inc.*, 578 F. 2d. 1106, 1112 (5th Cir. 1978). Plaintiffs clearly have a sufficient interest in, and nexus with, the class. Specifically, they were subjected to Defendant's violation of the WARN Act and not paid their final wages. Thus, they plainly fit into the definition for the Proposed Class. As such, their interests are directly aligned with the putative class and they are suitable class representatives.

Lastly, Plaintiffs retained the undersigned counsel who possess extensive experience litigating employment law claims, class and collective actions, and WARN Act class actions. *See* Barack Declaration. All three lawyers are Board Certified in Labor & Employment Law.

Both the Plaintiffs and their counsel have demonstrated their willingness to pursue this litigation on behalf of the Plaintiffs and others similarly situated. [See Ex. 3 – Declaration of Mia Williams, Declaration of Brittany Calvert, and Declaration of Alisa Leggett]. Plaintiffs' counsel has vigorously and actively prosecuted this action by investigating the facts and researching the applicable laws, communicating with numerous former employees, drafting a Complaint against Defendant, and drafting the instant document. Plaintiffs have also actively assisted in the prosecution of this action. Plaintiffs and their counsel will continue to vigorously prosecute this action on behalf of all class members.

### E.     Plaintiffs Have Also Satisfied Rule 23(b).

Once the requirements of Rule 23(a) have been met, Plaintiffs must then satisfy at least one of the alternative requirements of Rule 23(b) in order for the proposed class to be certified. *Valley Drug Co.*, *supra*. Rule 23(b)(1) provides that classes are appropriate when "prosecuting separate actions by or against individual class members would create a risk of: (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests." Rule 23(b)(2) provides that classes are also appropriate where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting

14

the class as a whole." Rule 23(b)(3) provides that classes are appropriate when "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Plaintiff relies on Rule 23(b)(3) asserting that common questions of law or fact predominate and that the class action is superior to other methods of proceeding in the case.[6]

### 1. Common Issues Predominate the Litigation.

Common issues of fact and law predominate "if they have a direct impact on every class member's efforts to establish liability and on every class member's entitlement to . . . monetary relief." *Klay*, 382 F. 3d at 1255. "The predominance inquiry requires an examination of the claims, defenses, relevant facts, and applicable substantive law …to assess the degree to which resolution of the class wide issues will further each individual class member's claim against the defendant." *Klay*, 382 F. 3d at 1254. When "there are genuinely common issues, issues identical across all the claims, issues moreover the accuracy of the resolution of which is unlikely to be enhanced by repeated proceedings, then it makes good sense, especially when the class is large, to resolve those issues in one fell swoop…" *Mejdrech v. Met-Coil Sys. Corp.*, 319 F. 3d 910, 911 (7th Cir. 2003).

Courts have found that a plaintiff's satisfaction of the typicality requirement of Rule 23(a) is perhaps the best indicator that Rule 23(b)(3) has been satisfied. *See, e.g., Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 598 (2d Cir. 1986) (stating that satisfaction of Rule 23(a) "goes a long way toward satisfying the Rule 23(b)(3) requirement"). The important predominance inquiry is

---

[6] While Plaintiffs are only required to demonstrate that they meet one of the situations in Rule 23(b), Plaintiffs here can demonstrate all three, although it appears that certification under Rule 23(b)(1) and 23(b)(2) is limited to only the declaratory and injunctive relief sought by Plaintiffs. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 361–63 (2011), *but see Murray v. Auslander*, 244 F.3d 807, 812 (11th Cir. 2001).

whether "liability can be determined on a class-wide basis, even when there are some individualized damage issues." *In re Visa CheckMasterMoney Antitrust Litig.*, 280 F.3d 124, 139 (2d Cir. 2001).

"[F]ederal courts have routinely found that WARN Act cases met the 'predominancy' test of Rule 23(b)(f)." *Mowat v. DJSP Enterprises, Inc.*, No. 10-62302-CIV, 2011 WL 13217002, at *5 (S.D. Fla. Aug. 23, 2011), *report and recommendation adopted*, No. 10-62302-CIV, 2011 WL 13214331 (S.D. Fla. Sept. 26, 2011)(collecting cases).  In the case at bar, the common legal theory the putative class is based on is the WARN Act.  Each class member was part of the mass layoff or plant closing on or around June 21, 2024, and Defendant failed to provide each class member with the notice required by the WARN Act.  Thus, each class member's "underlying cause of action" is identical and each is entitled to the damages as provided by statute.  Indeed, courts have noted that "[t]he WARN Act contemplates enforcement by class action." *Butler-Jones v. Sterling Casino Lines, LP.*, 2008 WL 5274384, at *3 (M.D. Fla. Dec. 18, 2008); *see also Weeks- Walker*, 281 F.R.D. at 523, *citing Finnan v. LF Rothschild & Co., Inc.*, 726 F. Supp. 460, 465 (S.D. N.Y. 1989) ("The WARN Act seems particularly amendable to class litigation.").  Thus, this factor is satisfied.

### 2. A Class Action is Superior to Adjudicate This Claim.

"The second prong of Rule 23(b)(3) requires a court to determine whether a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *Sacred Hearth Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1183 (11th Cir. 2010) (quoting Fed. R. Civ. P. 23(b)(3)).  Courts look to the four non-exclusive matters listed in Rule 23(b)(3) which are:

> (a) The class members' interests in individually controlling the prosecution or defense of spate actions;

16

    (b)  The extent and nature of any litigation concerning the controversy already begun by or against class members;
    (c)  The desirability or undesirability of concentrating the litigation of the claims in the particular forum;
    (d)  The likely difficulties in the managing a class action.

*Rosario- Guerro*, 265 F.R.D. at 629.

  "The focus of this analysis is on the 'relative advantages of a class action suit over whatever other forms of litigation might be realistically available to the plaintiffs.'" *Id.* at 1183-84 *quoting Klay,* 382 F.3d at 1269. "As a result, the predominance analysis has a 'tremendous impact on the superiority analysis . . . for the simple reason that, the more common issues predominate over individual issues, the more desirable a class action lawsuit will be as a vehicle for adjudicating the plaintiffs' claims,' both relative to other forms of litigation such as joinder or consolidation, and in absolute terms of manageability." *Id.*

  Here the superiority requirement of Rule 23(b)(3) is easily met. Each individual claim is not large in terms of dollars. Upon information and belief, members of the Class have not filed individual WARN Act lawsuits against the Defendant. And, since most of the prospective class members live in or around West Palm Beach, Florida, maintaining this action in the West Palm Beach Division is appropriate.

  Moreover, the manageability of handling potentially hundreds of WARN Act claims against Defendant would be facilitated by the class action vehicle. The alternative of having hundreds of individual claims for damages arising out of the exact same conduct of Defendant offers neither efficiency nor fairness to either Defendant or the class.

  The predominance analysis above underscores that where there are more common issues which predominate over individualized issues, the class action is a desirable vehicle for adjudication of Plaintiffs' and the Putative Class' claims. The aggregation of claims in a class action will inevitably avoid "days of the same witnesses, exhibit and issues from trial to trial."

*Jenkins v. Raymark*, 782 F. 2d 468, 472 (5th Cir. 1986).  Indeed, courts routinely find superiority where, as here, it is unlikely that class members would bring individual actions on their own behalf because the costs of individual litigation would likely outweigh their recovery.  *See e.g., Jankowski v. Castaldi*, No. 01 Civ. 164 (SJF)(KAM), 2006 WL 118973, at *4 (E.D.N.Y. Jan. 13, 2006) (finding superiority where "the proposed class members are sufficiently numerous and seem to possess relatively small claims unworthy of individual adjudication due to the amount at issue). In such circumstances, a class action is particularly appropriate.  *See Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 809 (1985); *Eisen v. Carlisle & Jacquelin,* 391 F.2d at 566-567.

Accordingly, concentrating all the potential litigation concerning the rights of Plaintiffs and the Putative Class in this Court will avoid a multiplicity of suits, will conserve judicial resources and the resources of the parties, and is the most efficient means of resolving the claims of the Plaintiffs and Putative Class Members.

**F.**     **The Contents of The Notice Are Appropriate.**

With respect to the proposed notice, Rule 22(c)(2)(B) provides:

> For any class certified under Rule 23(b)(3)—or upon ordering notice under Rule 23(e)(1) to a class proposed to be certified for purposes of settlement under Rule 23(b)(3)—the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice may be by one or more of the following: United States mail, electronic means, or other appropriate means. The notice must clearly and concisely state in plain, easily understood language:
> (i)     the nature of the action;
> (ii)    the definition of the class certified;
> (iii)   the class claims, issues, or defenses;
> (iv)    that a class member may enter an appearance through an attorney if the member so desires;
> (v)     that the court will exclude from the class any member who requests exclusion;
> (vi)    the time and manner for requesting exclusion; and
> (vii)   the binding effect of a class judgment on members under Rule 23(c)(3).

Fed.R.Civ.P. 23(c)(2)(B).

The proposed class notice, which is attached to this motion (*See* Ex.4), is substantially the form proposed by the Federal Judicial Center. *See* https://www.fjc.gov/content/301253/illustrative-forms-class-action-notices-introduction. The Notice advises the class members of the nature of the action, defines the class, details the nature of the claims, advises them of the ability to appear through their own counsel, establishes an exclusion procedure and details the binding effect of a class resolution.

The notice also puts potential plaintiffs on notice about their opt-in claims and gives them an opportunity to participate. A Court-approved notice is appropriate because it helps prevent one of the parties trying to put "spin" on the litigation. Similarly, the consent satisfies the requirements of the FLSA. Under the FLSA, a putative class member is not considered a plaintiff until they file a written consent to join. *See* 29 U.S.C. § 256; *see also* 29 C.F.R. § 790.21(b). The proposed consent satisfies the requirements of the FLSA. Therefore, Plaintiffs respectfully request that the Court authorize this notice.

In this case, the records of Defendant's payroll provider will contain the last known address of the class members so it will be possible for class counsel to mail a copy of the notice to these individuals via the United States Postal Service. In addition, the notice will be sent electronically to any employee whose email addresses is known.

## CONCLUSION

Plaintiffs respectfully request this Court enter an order (1) certifying this case as a class action for the group of former employees pursuant to the WARN Act and state wage laws defined above; (2) appointing Mia Williams, Brittany Calvert, Dedtra Davis, and Alisa Leggett as class representatives; (3) appointing Ryan Barack, Michelle Nadeau, and Michael Pancier as class counsel; (4) and approve the proposed class notice.

## CERTIFICATE OF GOOD FAITH CONFERENCE

Pursuant to Local Rule 7.1(a)(2), I hereby certify that counsel for the movant has conferred with all parties or non-parties who may be affected by the relief sought in the motion in a good faith effort to resolve the issues raised in the motion and has been unable to do so. Counsel for the Defendants object to the relief requested herein.

Respectfully submitted,

/s/ Ryan D. Barack                                          Michael A. Pancier
Ryan D. Barack                                                Fla. Bar No. 958484
Florida Bar No. 0148430                                 Email: mpancier@pancierlaw.com
Primary Email: rbarack@employeerights.com    Michael A. Pancier, P.A.
Secondary Email: jackie@employeerights.com   9000 Sheridan Street, Suite 93
Michelle Erin Nadeau                                      Pembroke Pines, FL 33024
Florida Bar No. 0060396                                 (954) 862-2217
Primary Email: mnadeau@employeerights.com   Attorney for Plaintiffs
Secondary Email: jackie@employeerights.com
Kwall Barack Nadeau PLLC
304 S. Belcher Rd., Suite C
Clearwater, Florida 33765
(727) 441-4947
(727) 447-3158 Fax
Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 6th day of February 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system.

/s/ Ryan D. Barack
Attorney