IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO: 24-cv-80787-Matthewman
THIS IS A CONSENT CASE

**MIA WILLIAMS, ET AL.,**

    Plaintiffs,

v.

**RETREAT BEHAVIORAL
HEALTH, LLC, ET AL.,**

    Defendants.
_____/

### PLAINTIFFS' RESPONSE TO DEFENDANTS COAL LAKE WORTH, LLC, HFGC FLORIDA, LLC, and JAMES YOUNG, IN HIS CAPACITY AS RECEIVER OF NR PENSYLVANIA ASSOCIATES, LLC'S AMENDED MOTION TO DISMISS

Plaintiffs, Mia Williams, Brittany Calvert, Dedtra Davis, and Alisa Leggett, on their own behalf and on behalf of a proposed class of similarly situated employees, hereby respond to Defendants Coal Lake Worth, LLC ("Coal Lake Worth"), HFGC Florida, LLC ("HFGC"), and James Young, in his capacity as Receiver of NR Pennsylvania Associates, LLC (Young")(collectively "Defendants") Motion to Dismiss Plaintiffs' Second Amended Complaint [Doc. 156].  As set forth below, the Second Amended Complaint [Doc. 74] adequately alleges sufficient facts to establish that Coal Lake Worth and HFGC were "employers" under the Fair Labor Standards Act (FLSA) and similar state laws.  Young, as the current receiver for NR Pennsylvania and NR Florida, is also an appropriate Defendant in this action.  Further, the Second Amended Complaint adequately alleges that Coal Lake Worth and HFGC were a single, integrated enterprise with the other corporate Defendants for purposes of the WARN Act, and were an enterprise for purposes of the FLSA and state law claims.

1

I.  **Legal Standard**

In considering a motion to dismiss, the court must accept all factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *United States v. Pemco Aeroplex, Inc.*, 195 F.3d 1234, 1236 (11th Cir.1999); *St. Joseph's Hosp., Inc. v. Hosp. Corp. of Am.*, 795 F.2d 948, 953 (11th Cir.1986). A motion to dismiss will only be granted if the complaint does not contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In deciding a motion to dismiss, a court may only examine the "four corners" of the complaint and any matters incorporated therein, and not matters outside the complaint. *See Crowell v. Morgan Stanley Dean Witter Servs., Co., Inc.*, 87 F. Supp. 2d 1287, 1290 (S.D. Fla. 2000).

II.  **The Second Amended Complaint Sufficiently Alleges that Coal Lake Worth and HFGC are Employers of Plaintiffs for Purposes of the FLSA.**

Plaintiffs have alleged that the "Retreat Companies, DRPS, and the Coal Companies are joint employers" [¶68] and that each of the Coal Companies, including Coal Lake Worth and HFGC, is an employer of Plaintiffs and that Plaintiffs were employees of each Coal Company [¶¶104-105]. This is sufficient to allege an employer-employee relationship at this stage. *See Villarino v. Pacesetter Pers. Serv., Inc.*, 481 F. Supp. 3d 1252, 1258 (S.D. Fla. 2020)(denying motion to dismiss where "Plaintiffs allege that each Defendant constituted an employer within the meaning of the FLSA (¶ 22) and that the Defendants operated as a joint enterprise and/or integrated enterprise as defined by the FLSA (¶ 38, 39)").

Additionally, Plaintiffs allege the following:

- Upon information and belief, NR Florida leased its facility from Coal Lake Worth who leased it through HFGC. [¶18]

- At all times material to this action, Coal Lake Worth was a Florida limited liability corporation, conducting business in Palm Beach County, Florida. [¶31].

- David Silberstein is a Manager of Coal Lake Worth, along with Joseph Silberstein and Eli Silberstein. [¶32].

- As of May 1, 2024, Coal Lake Worth listed its principal place of business as:

    > c/o Coal Capital Group
    > 1001 E 19th St.
    > Brooklyn, NY 11230

    [¶33].

- At all times material to this action, HFGC was a Florida limited liability corporation, conducting business in Palm Beach County, Florida. [¶34].

- David Silberstein is the sole Manager of HFGC. [¶35].

- As of May 1, 2024, HFGC listed its principal place of business as:

    > c/o Coal Capital Group
    > 1001 E 19th St.
    > Brooklyn, NY 11230

    [¶36].

- Upon information and belief, Coal Lake Worth and HFGC held the lease to the property on which NR Florida operated. [¶37].

- At all times material to this action, CLW Holdings was a Florida limited liability corporation, conducting business in Palm Beach County, Florida. [¶38].

- David Silberstein is a Manager of CLW Holdings, along with Joseph Silberstein and Eli Silberstein. [¶39].

- As of May 1, 2024, CLW Holdings listed its principal place of business as:

    > c/o Coal Capital Group
    > 1001 E 19th St.
    > Brooklyn, NY 11230

    [¶40].

- Upon information and belief, CLW Holdings is the majority owner of HFGC and Coal Lake Worth. [¶41].

- Upon information and belief, Coal Capital Group, Coal Lake Worth, CLW Holdings, Coal Florida, Coal Connecticut, Coal New Haven, Coal Ephrata, and HFGC (the "Coal Companies") are controlled by Silberstein and managed through the Coal Capital Group company. [¶55].

- Upon information and belief, the Coal Companies are the entities through which Silberstein managed NR Florida, NR Pennsylvania, NR Connecticut, and RBH ("Retreat Companies"). [¶56].

- Upon information and belief, it was common for Schorr, Silberstein, and others to refer to the Coal Companies as "the Coal Companies" and the Retreat Companies as "the Retreat Companies" or simply "Retreat." [¶57].

- Together, the Coal Companies, the Retreat Companies, and DRPS operated a single, integrated enterprise to operate mental health facilities in Florida, Pennsylvania, and Connecticut. [¶58].

- Upon information and belief, NR Pennsylvania frequently made wire payments in large, round numbers to DRPS and the Coal Companies. [¶61].

- Upon information and belief, between 2021 and 2024, millions of dollars were transferred from NR Pennsylvania to Coal Capital Group, Coal Lake Worth, NR Florida, and NR Connecticut. [¶62].

- In a brief filed in the Pennsylvania receivership proceedings, NR Pennsylvania and NR Florida, explained what they called "the true history" of Schorr's and Silberstein's stewardship of the Retreat Companies:

    > The true history of Mr. Schorr's and Mr. Silberstein's stewardship of the Retreat Entities is that the wellbeing of the Retreat Entities was always put first. In particular, the Coal Entities refrained from enforcing more than $20 million in contractual obligations due from the Retreat Entities to the Coal Entities in order to seek to preserve the viability of the Retreat Entities and the necessary services provided by the Retreat Entities to their respective communities."[1]

    [¶66].

- Despite the corporate structures, the Retreat Companies, DRPS, and Coal Companies acted as one company, under common leadership, engaging in the common goal of providing mental health services in Florida, Pennsylvania, and Connecticut. [¶67].

- The Retreat Companies, DRPS, and the Coal Companies are joint employers and/or a single, integrated enterprise. [¶68].

---

[1] See Ex. 2, Defendants' Response to Receiver's Report, p. 18

4

- The Retreat Companies, DRPS, and the Coal Companies did not comply with typical corporate formalities and money would flow between the various entities without respecting the independent nature of the corporations. [¶69].

- Peter Schorr and David Silberstein, through DRPS and the Coal Companies, exercised control over all Retreat Companies. [¶73].

- At all times material to this action, Plaintiffs were employees of…Coal Lake Worth…and HFGC and…Coal Lake Worth…and HFGC were the employers of Plaintiffs for purposes of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, et seq. ("FLSA"), the Florida Constitution, Art. X, Sec. 24, CT Gen. Stat. § 31.58, § 31-71c and § 31-72, and 43 Pa. Stat. §260. [¶104].

- Plaintiffs and those similarly situated worked for Defendants RBH, NR Florida, NR Pennsylvania, NR Connecticut, DRPS, Coal Lake Worth, CLW Holdings, Coal Florida, Coal Connecticut, Coal New Haven, Coal Ephrata, Coal Capital, HFGC, Schorr, Silberstein, Korogodsky, Gariano, and Hoinsky and were not paid from June 3, 2024 through the date of the layoffs and did not receive at least the minimum wage for all hours worked. [¶177].

- Defendants…Coal Lake Worth…[and] HFGC['s]…failure to provide employees with the required minimum wage and overtime compensation, if applicable, constitutes a violation of the FLSA. [¶179].

- Defendants…Coal Lake Worth…[and] HFGC['s]…violations of the FLSA were knowing and willful. [¶180].

These numerous facts show the inter-relatedness of these entities and how each of them played a role in the greater Retreat business. In *Layton v. DHL Exp. (USA), Inc.*, 686 F.3d 1172, 1175 (11th Cir. 2012), the Eleventh Circuit stated that

> [a] joint-employment relationship will generally be found to exist in situations…[w]here the employers are not completely disassociated with respect to the employment of a particular employee and may be deemed to share control of the employee, directly or indirectly, by reason of the fact that one employer controls, is controlled by, or is under common control with the other employer.

That is exactly what is alleged here, that the Coal Companies – which includes Coal Lake Worth and HFGC – controlled the employing entities (NR Florida, NR Pennsylvania, and NR Connecticut).

5

Layton articulated eight factors that Courts can consider in this: (1) the nature and degree of control of employees; (2) the degree of supervision, direct or indirect; (3) the right to directly or indirectly, hire, fire, or modify employment conditions; (4) the power to set pay rates or payment methods; (5) the preparation of payroll and payment of wages; (6) the ownership of the facilities where the work occurred; (7) the extent to which the work is integral to the business; and (8) the relative investment in equipment and facilities. *Id*. at 1178-1181. The economic realities test is not determined by "mathematical formula" and "no one factor is dispositive." *Diaz v. U.S. Century Bank*, No. 12-21224-CIV, 2012 WL 3597510, at *3 (S.D. Fla. Aug. 20, 2012). "An exhaustive joint employment analysis would thus be premature at this stage where Plaintiffs have submitted a plausible claim." *Id*. "Where a claim is plausibly pled, such an inquiry is ill-suited for consideration on a motion to dismiss." *Aguilar v. United Floor Crew, Inc.*, No. 14-CIV-61605, 2014 WL 6751663, at *4 (S.D. Fla. Dec. 1, 2014).

As set forth above, Plaintiffs have alleged that Silberstein, through the Coal Companies like Coal Lake Worth and HFGC, exerted control over the employees, that the Coal Companies used their purse strings to exert operational control over the facilities, that money flowed between the companies to cover payroll, that the Coal Companies owned the facilities where the business was performed, and that the work of the employees at the behavioral health centers was integral to the business of all Defendants. At this stage, this is sufficient to allege an employee-employer relationship and state a claim for unpaid wages under the FLSA and related state wage laws.

Further, the FLSA uses the term "enterprise," allowing for two or more entities or persons to be the employer of one person. *Cornell v. CF Ctr., LLC*, 410 Fed. Appx. 265, 267 (11th Cir. 2011)("The FLSA allows for coverage under a joint enterprise theory")(citing *Donovan v. Easton*

*Land & Dev., Inc.*, 723 F.2d 1549, 1550 (11th Cir. 1984)). "This court has broadly construed the coverage requirements under the FLSA." *Id*.

> Under the FLSA, an "enterprise" is defined as "related activities (either through unified operation or common control) by any person or persons for a common business purpose, and includes all such activities whether performed in one or more establishments or by one or more corporate or other organizational units...." 29 U.S.C. § 203I(1). The "statutory provision requires the existence of three elements: (1) related activities; (2) unified operation or common control; and (3) a common business purpose." *Donovan v. Easton Land & Dev., Inc.*, 723 F.2d 1549, 1551 (11th Cir. 1984). "[I]f the facts establish that the employee is employed jointly by two or more employers, i.e., that employment by one employer is not completely disassociated from employment by the other employer(s), all of the employee's work for all of the joint employers during the workweek is considered as one employment for purposes of the Act." *Hernandez v. Art Deco Supermarket,* 2013 WL 5532828, at *3 (S.D. Fla. Oct. 4, 2013) (quoting 29 C.F.R. 791.2(a)).

*Villarino v. Pacesetter Pers. Serv., Inc.*, 481 F. Supp. 3d 1252, 1258 (S.D. Fla. 2020)(denying motion to dismiss for failure to allege joint employment/common enterprise); *Hernandez v. Art Deco Supermarket*, No. 13-20705-CIV, 2013 WL 5532828, at *4 (S.D. Fla. Oct. 4, 2013)(finding that plaintiff had "sufficiently plead that the corporate defendants are a joint employer and an enterprise" by satisfying the three prong enterprise elements).

Plaintiffs have alleged all three elements of an FLSA enterprise in the Second Amended Complaint.

Plaintiffs allege that the Defendants were engaged in related activities and a common purpose: they were all operating to run the mental health facilities in Florida, Pennsylvania, and Connecticut. Plaintiffs have alleged unified operation or common control, as detailed above. All entities were structured so that Peter Schorr, through DRPS, and David Silberstein, through the Coal Companies, were operating the enterprise. The business was "Retreat Behavioral Health" regardless of the corporate structures that made up the enterprise, and the employees furthered this business. *See Cornell v. CF Ctr., LLC*, 410 Fed. Appx. at 268 (11th Cir. 2011)("It is clear from

the evidence discussed above that the multiple corporate defendants were acting in one purpose, a purpose that the employment of [plaintiffs] furthered").

Accordingly, Plaintiffs have properly pled their FLSA claims against Coal Lake Worth and HFGC.

### III. Plaintiffs Have Sufficiently Alleged that Coal Lake Worth and HFGC Were Employers For Purposes of the WARN Act.

At all times material to this action, Plaintiffs were employees of…Coal Lake Worth…and HFGC and…Coal Lake Worth…and HFGC were the employers of Plaintiffs for purposes of the WARN Act. [¶103].

Plaintiffs have alleged that the Coal Companies, the Retreat Companies, and DRPS "operated a single, integrated enterprise to operate mental health facilities in Florida, Pennsylvania, and Connecticut." [¶58]. The WARN Act has its own test for determining when two or more entities are treated as a single employer.

> Two or more affiliated businesses which constitute a "single employer" may be held jointly and severally liable for violations of the WARN Act. *Pearson v. Component Tech. Corp.*, 247 F.3d 471, 478 (3d Cir. 2001). The Department of Labor ("DOL") regulations issued under the WARN Act provide that two or more affiliated businesses may be considered a single business enterprise for WARN Act purposes. 20 C.F.R. § 639.3(a)(2). The regulations provide a five-factor balancing test to assess whether affiliated businesses constitute a "single employer," which would subject them to joint liability under the WARN Act. *See Pearson*, 247 F.3d at 478. The five DOL factors are as follows: (1) common ownership, (2) common directors and/or officers, (3) unity of personnel policies emanating from a common source, (4) dependency of operations, and (5) de facto exercise of control. *Id*. at 487– 490; 20 C.F.R. § 639.3(a)(2).

*Mowat v. DJSP Enterprises, Inc.*, No. 10-62302-CIV, 2011 WL 13214330, at *3 (S.D. Fla. Apr. 28, 2011); *Benson v. Enter. Leasing Co. of Orlando, LLC*, No. 6:20-CV-891-RBD-LRH, 2021 WL 1078410, at *2 (M.D. Fla. Feb. 4, 2021)(applying these five factors to determine if a subsidiary

may be treated as part of a parent company for purposes of WARN Act liability). Plaintiffs have pled each of these five factors.

Plaintiffs have pled common ownership:

- Despite the corporate structures, the Retreat Companies, DRPS, and the Coal Companies acted as one company, under common leadership, engaging in the common goal of providing mental health services in Florida, Pennsylvania, and Connecticut. [¶67].

- There was common ownership of the Defendants RBH, NR Florida, NR Pennsylvania, NR Connecticut, DRPS, Coal Lake Worth, CLW Holdings, Coal Florida, Coal Connecticut, Coal New Haven, Coal Ephrata, Coal Capital, and HFGC by Peter Schorr and David Silberstein. [¶146].

- Peter Schorr and David Silberstein were Managers of RBH. [¶11].

- Peter Schorr and David Silberstein were Managers of NR Florida. [¶15].

- Upon information and belief, NR Florida leased its facility from Coal Lake Worth, who leased it through HFGC. [¶18].

- Peter Schorr and David Silberstein were Managers of NR Pennsylvania. [¶20]. Upon information and belief, NR Pennsylvania leased its facility from Coal Capital Ephrata. [¶23].

- Peter Schorr and David Silberstein were Managers of NR Connecticut. [¶25].

- Upon information and belief, NR Connecticut leased its facility from Coal New Haven. [¶27].

- Peter Schorr was the sole Manager of DRPS. [¶29].

- David Silberstein is a Manager of Coal Lake Worth, along with Joseph Silberstein and Eli Silberstein. [¶32].

- David Silberstein is the sole Manager of HFGC. [¶35].

- Upon information and belief, Coal Lake Worth and HFGC held the lease to the property on which NR Florida operated. [¶37].

- David Silberstein is a Manager of CLW Holdings, along with Joseph Silberstein and Eli Silberstein. [¶39].

- Upon information and belief, CLW Holdings is the majority owner of HFGC and Coal Lake Worth. [¶41].

- David Silberstein is a Manager of CLW Holdings, along with Joseph Silberstein and Eli Silberstein. [¶43].

- David Silberstein is the Manager of Coal Connecticut. [¶46].

- David Silberstein is the Manager of Coal New Haven. [¶49].

- David Silberstein is a Manager of Coal Capital Group, along with Joseph Silberstein and Eli Silberstein. [¶53].

- Upon information and belief, Coal Capital Group, Coal Lake Worth, CLW Holdings, Coal Florida, Coal Connecticut, Coal New Haven, Coal Ephrata, and HFGC (the "Coal Companies") are controlled by Silberstein and managed through the Coal Capital Group company. [¶55].

- Upon information and belief, the Coal Companies are the entities through which Silberstein managed NR Florida, NR Pennsylvania, NR Connecticut, and RBH ("Retreat Companies"). [¶56].

- The various corporations were structured so that Peter Schorr and David Silberstein were the true owners of the Facilities. [¶149].

All of the companies in this single, integrated enterprise were owned by some combination of Peter Schorr, David Silberstein, and two of Silberstein's family members. This is common ownership. See *Mowat,* 2011 WL 13214330 at *3 (finding that where the plaintiffs alleged that the same individual was the sole shareholder of one entity and a 1/3 owner of the other, that common ownership had been adequately pled).

Plaintiffs have pled common directors and/or officers:

- Specifically, Peter Schorr and David Silberstein were the managers of RBH, NR Florida, NR Pennsylvania, and NR Connecticut. [¶147].

- Peter Schorr managed these companies through DRPS while David Silberstein managed them through Coal Lake Worth, CLW Holdings, Coal Florida, Coal Connecticut, Coal New Haven, Coal Ephrata, Coal Capital, and HFGC. [¶148].

- Defendants RBH, NR Florida, NR Pennsylvania, NR Connecticut, DRPS, Coal Lake Worth, CLW Holdings, Coal Florida, Coal Connecticut, Coal New Haven,

10

>Coal Ephrata, Coal Capital, and HFGC had the same directors and officers with Schorr, Korogodsky, Gariano, and Hoinsky serving as executive leadership for all Facilities. [¶150].

The Second Amended Complaint alleges that the Retreat entities were operated by Schorr and Silberstein through their respective other corporate entities, DRPS and the Coal Companies. It also alleges that Schorr, Korogodsky, Gariano, and Hoinsky acted as the executive leadership for all operations.

>Plaintiffs have pled unity of personnel policies:

- Upon information and belief, all employees, regardless of which company compensated them, were subject to the same personnel policies which originated with the common executive management. [¶153].

- On or about June 21, 2024, Defendants ordered "plant shutdowns" or "mass layoffs" as that term is defined by the WARN Act. [¶156].

- Upon information and belief, Schorr, Korogodsky, and Silberstein each made a decision not to provide WARN Notice to Plaintiffs and those similarly situated. [¶157].

- This decision was made as to all employees in the same manner, regardless of which entity nominally paid them or which Facility they reported to. [¶158].

- Indeed, upon the death of Peter Schorr, there was a company-wide decision to cease operations, to terminate employees, and not to pay employees their final wages that affected all employees, regardless of their nominal employing entity. [¶155].

The Second Amended Complaint also alleges that all employees were managed in the same manner. The missed payrolls affected all employees, regardless of their employing entity. [¶¶115-119]. All employees were communicated to in one joint email following Schorr's death. [¶¶120-121, 127]. Indeed, the mass layoffs were made at a global level. See, *Benson,* 2021 WL 1078410, at *3 ("In the context of the WARN Act, the decision to effect a mass layoff is the single most important personnel policy")(internal quotations omitted). All of this shows unity of personnel policies.

11

Plaintiffs have pled dependency of operations:

- Each of the RBH, NR Florida, NR Pennsylvania, NR Connecticut, DRPS, Coal Lake Worth, CLW Holdings, Coal Florida, Coal Connecticut, Coal New Haven, Coal Ephrata, Coal Capital, and HFGC were dependent on the operations of the others: money flowed to and from each entity as needed and the various companies were set up specifically for the purpose of operating the greater business. [¶154].

- Upon information and belief, there was a frequent and liberal policy of NR Florida, NR Pennsylvania, and NR Connecticut transferring cash from one entity to another when there was liquidity need, without documentation for these transfers beyond internal ledger entities. For example, between May 2021 and August 2024, NR Florida made transfers of $767,959.30 to NR Pennsylvania and NR Connecticut made transfers of $4,553,031.43 to NR Pennsylvania. [¶59].

- As admitted to in the Pennsylvania receivership proceedings, NR Florida, NR Pennsylvania, and NR Connecticut had common expenses and made advances from one operating entity to another. [¶60].

- Upon information and belief, NR Pennsylvania frequently made wire payments in large, round numbers to DRPS and the Coal Companies. [¶61].

- Upon information and belief, between 2021 and 2024, millions of dollars were transferred from NR Pennsylvania to Coal Capital Group, Coal Lake Worth, NR Florida, and NR Connecticut. [¶62].

In addition to the Plaintiffs' pleadings, Plaintiffs attached the reports of the receiver for NR Pennsylvania and NR Florida, which details the manner in which the companies were all dependent upon each other and how money flowed back and forth. [Doc. 75-1, 75-2, & 75-3]. The fact that all facilities closed at the same time and the fact that the companies could not survive the death of Peter Schorr further demonstrates the dependency of operations.

Finally, Plaintiffs have pled de facto exercise of control:

- Upon information and belief, Korogodsky, Gariano, and Hoinsky reported to Schorr. [¶151].

- Peter Schorr and David Silberstein had de facto control over the Facilities. [¶152].

- RBH operated through NR Florida, NR Pennsylvania, and NR Connecticut. [¶13].

While organized as separate entities, the companies were all working toward one goal under the control of Schorr and Silberstein.

Indeed, Plaintiffs further elaborated on the integrated enterprise:

- In a brief filed in the Pennsylvania receivership proceedings, NR Pennsylvania and NR Florida, explained what they called "the true history" of Schorr's and Silberstein's stewardship of the Retreat Companies:

    The true history of Mr. Schorr's and Mr. Silberstein's stewardship of the Retreat Entities is that the wellbeing of the Retreat Entities was always put first. In particular, the Coal Entities refrained from enforcing more than $20 million in contractual obligations due from the Retreat Entities to the Coal Entities in order to seek to preserve the viability of the Retreat Entities and the necessary services provided by the Retreat Entities to their respective communities."

    [¶66].

- Despite the corporate structures, the Retreat Companies, DRPS, and Coal Companies acted as one company, under common leadership, engaging in the common goal of providing mental health services in Florida, Pennsylvania, and Connecticut. [¶67].

When they were operating the Retreat Behavioral Health behavioral and mental health facilities, the entities operated as one single enterprise despite their corporate structures. Under the WARN Act, this is sufficient to allege liability.

In sum, Plaintiffs have pled all five factors relevant to finding that the Coal Companies are a common, integrated enterprise and are to be treated as a single employer for purposes of the WARN Act.

IV. **Plaintiffs Have Sufficiently Alleged State Law Wage Claims Under Florida, Connecticut, and Pennsylvania Law.**

The Florida Constitution states that the terms "Employer," "Employee" and "Wage" shall have the meanings established under the federal Fair Labor Standards Act (FLSA) and its

13

implementing regulations.  Fla. Const. Art. X §24(b).  Thus, the same analysis as above applies to the state law claims.

Under Connecticut law, "Employer includes any individual, partnership, association, joint stock company, trust, corporation, the administrator or executor of the estate of a deceased person, the conservator of the estate of an incompetent, or the receiver, trustee, successor or assignee of any of the same, employing any person; including the State and any political subdivision thereof," while "Employee includes any person suffered or permitted to work by an employer."  CT Gen Statute §31-71a.  In Connecticut, whether a defendant "caused the alleged CWMA violation is an important factor in determining whether that defendant employed the plaintiff within the meaning of the CWMA."  *Flemming v. REM Connecticut Cmty. Services Inc.*, No. 3:11CV689 JBA, 2012 WL 6681862, at *6 (D. Conn. Dec. 21, 2012)(citing *Butler v. Hartford Tech. Inst., Inc.*, 243 Conn. 454, 461, 704 A.2d 222, 226 (1997)).

Defendants argument is that Plaintiffs have "proffered no evidence that the Movants were responsible for compensating the employee." [Doc. 156 p. 10].  However, at the motion to dismiss stage, Plaintiffs have no burden to produce evidence and, as shown above, Plaintiffs have pled that Coal Lake Worth and HFGC, like all the Coal Companies, was involved in the decision not to pay the employees.

Under Pennsylvania's very broad definition, "Employer" includes "every person, firm, partnership, association, corporation, receiver or other officer of a court of this Commonwealth and any agent or officer of any of the above-mentioned classes employing any person in this Commonwealth." 43 P.S. Labor § 260.2a.  Like Florida, Pennsylvania courts look to the federal case law:

> The Commonwealth Court of Pennsylvania has previously held that "federal case law, and the 'economic reality' test employed by the federal courts, is the

appropriate standard to use" to determine if an individual is the alleged employer's employee. See Commonwealth v. Stuber, 822 A.2d 870, 873 (Pa. Commw. Ct. 2003) (discussing standard in context of Pennsylvania Minimum Wage Act). Our analysis with respect to the FLSA thus also applies to whether PPL is a joint employer under the Pennsylvania Minimum Wage Act and the Pennsylvania Wage Payment and Collection Law.

*Talarico v. Pub. Partnerships, LLC*, 837 Fed. Appx. 81, 84 n. 1 (3d Cir. 2020). In the Third Circuit, federal courts use a joint employment analysis articulated in *Enterprise Rent-A-Car Wage & Hour Emp. Pracs. Litig.*, 683 F.3d 462 (3d Cir. 2012):

> To summarize: When faced with a question requiring examination of a potential joint employment relationship under the FLSA, we conclude that courts should consider: 1) the alleged employer's authority to hire and fire the relevant employees; 2) the alleged employer's authority to promulgate work rules and assignments and to set the employees' conditions of employment: compensation, benefits, and work schedules, including the rate and method of payment; 3) the alleged employer's involvement in day-to-day employee supervision, including employee discipline; and 4) the alleged employer's actual control of employee records, such as payroll, insurance, or taxes. As we have noted, however, this list is not exhaustive, and cannot be "blindly applied" as the sole considerations necessary to determine joint employment. *470 *Id.,* 1469–70. If a court concludes that other indicia of "significant control" are present to suggest that a given employer was a joint employer of an employee, that determination may be persuasive, when incorporated with the individual factors we have set forth.

*Id.* at 469–70.

> Joint employment liability may exist "[w]here the employers are not completely disassociated with respect to the employment of a particular employee and may be deemed to share control of the employee, directly or indirectly, by reason of the fact that one employer controls, is controlled by, or is under common control with the other employer." m29 C.F.R. § 791.2(b)(3); *see also*.

*Knight v. Pub. Partnerships, LLC*, No. CV 19-2461, 2021 WL 4709683, at *3 (E.D. Pa. Oct. 7, 2021). Plaintiffs have alleged facts that the Coal Companies, including Coal Lake Worth and HFGC, were used to operate the business of Retreat Behavioral Health, despite the fact that they were not directly employing the Plaintiffs. The Second Amended Complaint certainly alleges "indicia of significant control."

15

Thus, a claim has been stated against Coal Lake Worth and HFGC under each of the three state laws for unpaid wages.

**V.      James Young Is a Proper Defendant As the Current Receiver for NR Pennsylvania**

James Young is not being sued in his individual capacity.   Plaintiffs are not alleging that he was a decision-maker prior to his appointment as a receiver. However, James Young, in his capacity as receiver, is currently a decision-maker. Indeed, Young stated in his affidavit attached to the Second Amended Complaint that one of the first actions he took was to "pay approximately $800,000 on behalf of health insurance premiums for both the NRPA and NRFL former employees" and to negotiate payment of two weeks of wages, approximately $603,000, to former employees." Doc. 74-1 p. 7.  He further states that he believes there will be sufficient funds to pay the remaining payroll obligations.  Doc. 74-1 p. 7.  James Young, in his capacity as receiver, is running the day-to-day operations of NRPA (and the other entities in receivership) and making decisions that affect whether Plaintiffs will be paid for their unpaid wages and WARN Act damages.  For this reason, his inclusion in this lawsuit is necessary and reasonable.

**VI.     Conclusion**

For the reasons outlined above, Plaintiffs respectfully request that Defendants' Motion to Dismiss be denied.

Respectfully submitted,

/s/ Michelle Erin Nadeau
Ryan D. Barack
Florida Bar No. 0148430
Primary Email: rbarack@employeerights.com
Secondary Email: jackie@employeerights.com
Michelle Erin Nadeau
Florida Bar No. 0060396
Primary Email: mnadeau@employeerights.com
Secondary Email: jackie@employeerights.com
Kwall Barack Nadeau PLLC
304 S. Belcher Rd., Suite C
Clearwater, Florida 33765
(727) 441-4947
(727) 447-3158 Fax
Attorneys for Plaintiffs

-and-

/s/ Michael A. Pancier
Michael A. Pancier
Fla. Bar No. 958484
Email: mpancier@pancierlaw.com
Michael A. Pancier, P.A.
9000 Sheridan Street, Suite 93
Pembroke Pines, FL 33024
(954) 862-2217
Attorney for Plaintiffs

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 23rd day of April 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system who will provide service upon all registered parties.

/s/ Michelle Erin Nadeau
        Attorney