**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

**CASE NO: 24-cv-80787-WM/Matthewman**

**MIA WILLIAMS, ET AL.,**

       **Plaintiffs,**

**v.**

**RETREAT BEHAVIORAL**
**HEALTH, LLC, ET AL.,**

       **Defendants.**

_____/

**PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**
**AND MEMORANDUM OF LAW**

Plaintiffs MIA WILLIAMS, BRITTANY CALVERT, and ALISA LEGGETT (collectively "Plaintiffs"), by and through the undersigned counsel and on behalf of those similarly situated, hereby move for summary judgment and that the Court find, as a matter of law, that Defendants RETREAT BEHAVIORAL HEALTH, LLC ("RBH"), NR FLORIDA ASSOCIATES, LLC ("NR FLORIDA"), NR PENNSYLVANIA ASSOCIATES, LLC, ("NR PENNSYLVANIA"), NR CONNECTICUT, LLC, ("NR CONNECTICUT"), DRPS MANAGEMENT, LLC ("DRPS"), COAL LAKE WORTH, LLC ("COAL LAKE WORTH"), CLW HOLDINGS, LLC, ("CLW HOLDINGS"); COAL CAPITAL HOLDINGS (FLORIDA) LLC, ("COAL FLORIDA"), COAL CONNECTICUT, LLC, ("COAL CONNECTICUT"), COAL CAPITAL EPHRATA, LLC, ("COAL EPHRATA"), COAL CAPITAL GROUP, LLC ("COAL CAPITAL"), and HFGC FLORIDA, LLC, ("HFGC")(collectively "Retreat" or "Defendants") violated the Workers' Adjustment and Retraining Notification ("WARN") Act when they terminated employees without proper notice on June 21, 2024, and that Defendants RETREAT BEHAVIORAL HEALTH, LLC ("RBH"), NR FLORIDA ASSOCIATES, LLC ("NR FLORIDA"), NR PENNSYLVANIA ASSOCIATES, LLC, ("NR PENNSYLVANIA"), NR CONNECTICUT, LLC, ("NR CONNECTICUT"), DRPS MANAGEMENT, LLC ("DRPS"), COAL LAKE WORTH, LLC ("COAL LAKE WORTH"), CLW HOLDINGS, LLC, ("CLW HOLDINGS"); COAL CAPITAL HOLDINGS (FLORIDA) LLC, ("COAL FLORIDA"), COAL CONNECTICUT, LLC, ("COAL CONNECTICUT"), COAL CAPITAL EPHRATA, LLC, ("COAL EPHRATA"), COAL CAPITAL GROUP, LLC ("COAL CAPITAL"), HFGC FLORIDA, LLC, ("HFGC"), DAVID SILBERSTEIN, ("SILBERSTEIN"), CHRISSY GARIANO, ("GARIANO") violated state and federal wage laws when they failed to pay employees their wages for the final three weeks of work.

The undisputed evidence shows that the Defendants employed sufficient employees to trigger WARN protections, terminated a sufficient number of employees, and failed to give WARN notice to employees prior to the terminations.  The undisputed evidence also shows that employees were not paid their full wages for the three weeks leading up to the terminations. Further, the damages are calculable from the undisputed evidence.

In support of this motion, Plaintiffs have contemporaneously filed a Statement of Material Facts and offer the following memorandum of law:

## I.  <u>Summary Judgment Standard</u>

Summary judgment is proper if the record evidence shows "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).  The party seeking summary judgment has the initial responsibility of informing the court of the basis for its motion and identifying those items that the party believes demonstrates the absence of any genuine issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The non-moving party bears the burden of coming forward with evidence of each essential element of its defenses such that a reasonable jury could find in its favor. *Earley v. Champion Int'l Corp.*, 907 F.2d 1077 1080 (11th Cir. 1990).

## II.  <u>Retreat Violated the WARN Act.</u>

### A.  *WARN Act Overview*

The WARN Act bars an employer with 100 or more full-time employees from ordering a "plant closing" or a "mass lay-off," i.e., the termination of 50 or more employees and more than at least 33 1/3 of the employees at a single site of employment within a 30-day period or as the reasonably foreseeable result of such plant closing or mass layoff unless at least 60 days' advance written notice containing specified information is provided to each employee who will be terminated as part of, or as a reasonably foreseeable result of, a mass layoff or plant closure or their union. WARN Act, 29 U.S.C. §§2101(a)(1), §2101(a)(5).

Failure to give the required notice renders the employer liable to each affected employee for 60 days' pay and benefits. If the employer gives less than 60 days' notice, the employer is liable for pay and benefits for the number of days' notice was not given.  29 U.S.C. §2104.  The notice must be given by a method that is reasonably designed to ensure fulfillment of the employer's obligation to give notice to each affected employee. 29 U.S.C. §2107(b); 20 C.F.R. §639.8.

"The WARN Act was created in part so that employers would be statutorily required to provide adequate notice of future layoffs to all employees before ordering a mass layoff or plant closing." *Sides v. Macon County Greyhound Park, Inc.*, 725 F.3d 1276, 1280 (11th Cir. 2013). The WARN Act states that "[a]n employer shall not order a plant closing or mass layoff until the end of a 60-day period after the employer serves written notice of such an order" on each employee or representative and the state.  29 U.S.C. §2102.

To prove their claim, Plaintiffs must establish the following three elements: "(1) a mass layoff or plant closing as defined by the statute conducted by (2) an employer who fired employees (3) who, pursuant to WARN, are entitled notice." *Sides*, 725 F.3d at 1281.

**B.     There Was a Plant Closing or Mass Layoff Conducted by a Covered Employer Who Terminated Employees.**

Plaintiffs have alleged WARN Act claims against Defendants RBH, NR Florida, NR Pennsylvania, NR Connecticut, DRPS, Coal Lake Worth, CLW Holdings, Coal Florida, Coal Connecticut, Coal Ephrata, Coal Capital and HFGC.  Plaintiffs' paychecks came from either NR Florida, NR Pennsylvania, or NR Connecticut.

As a threshold matter, the undisputed facts show that RBH, NR Florida, NR Pennsylvania, NR Connecticut, DRPS, Coal Lake Worth, CLW Holdings, Coal Florida, Coal Connecticut, Coal Ephrata, Coal Capital and HFGC is a covered employer under the WARN Act.  The WARN Act defines "employer" as "a business enterprise that employs (A) 100 or more employees, excluding part-time employees; or (B) 100 or more employees who in the aggregate work at least 4,000 hours per week (exclusive of overtime)."  29 U.S.C. §2102(a).

A "part-time employee" for WARN purposes is an employee who works fewer than 20 hours per week or who has been employed for fewer than 6 of the 12 months preceding the date on which notice is required.  29 C.F.R. §2101(a)(8).  "The period to be used for calculating whether a worker has worked "an average of fewer than 20 hours per week" is the shorter of the actual time the worker has been employed or the most recent 90 days."  20 C.F.R. §639.3(h).

Given the June 21, 2024 termination date, notice should have been provided by April 24, 2024.  Defendants' records show that there were 424 employees who worked for Defendants for at least 243 days, which is 6 months plus the 60-day notice period which should have been provided, and who worked more than 20 hours on average.  This is well over the 100 full-time employees required by the WARN Act.  Thus, Defendants are an employer covered by the WARN Act and the Court can determine this as a matter of law based on the undisputed evidence.

Once coverage has been established, Plaintiffs must show that a plant closing or mass layoff occurred.  The WARN Act defines a "plant closing" as

the permanent or temporary shutdown of a single site of employment, or one or more facilities within a single site of employment, if the shutdown results in an employment loss at the single site of employment during any 30–day period for 50 or more employees excluding any part-time employees.

3

§2101(a)(2).  A "mass layoff" is defined as:

> a reduction in force which ... (A) is not the result of a plant closing; and (B) results in an employment loss at the single site of employment during any 30–day period for ... (i) (I) at least 33 percent of the employees (excluding any part-time employees); and (II) at least 50 employees (excluding any part-time employees); or (ii) at least 500 employees (excluding part-time employees).

§2101(a)(3).  The distinction between a plant closing and a mass layoff, according to the regulations, is that a plant closing involves "employment loss which results from the shutdown of one or more distinct units within a single site or the entire site" while a mass layoff "involves employment loss, regardless of whether one or more units are shut down at the site." 20 C.F.R. §639.3(c)(1).  While this matter appears to more closely resemble a plant closing, whether this is ultimately deemed a plant closing or a mass layoff is of no effect.

After excluding part-time employees as defined by the WARN Act, payroll records show that 100% of the full-time employees were laid off with 199 full time employees laid off in Pennsylvania, 148 full time employees laid off in Florida, and 77 full time employees laid off in Connecticut.  Thus, the undisputed evidence shows that well over a third of the full-time employees were laid off, which easily meets the tests of either a plant shutdown or mass layoff, which requires either 50 employees or one-third of the full-time workforce.

Thus, this Court should find, as a matter of law, that a plant closing or mass layoff occurred.

### C.      Employees Were Entitled to Notice and WARN Notice Was Not Provided

There were employees who were entitled to notice because they were "affected employees."  An affected employee is defined as an employee "who may reasonably be expected to experience an employment loss as a consequence of a proposed plant closing or mass layoff by their employer."  29 U.S.C. §2101.  A termination, other than a termination for cause, a voluntary resignation, or retirement is an employment loss.  *Id*.  628 employes experienced an employment loss as a consequence of Retreat closing so they are affected employees.

While the part-time employees are excluded for the purposes of determining whether there has been a mass layoff or plant closing, they are included in the class of affected employees and may recover damages.  *See* 20 C.F.R. § 639.6 ("[W]hile part-time employees are not counted in determining whether a plant closing or mass layoff thresholds are reached, such workers are due notice."); *Solberg v. Inline Corp.,* 740 F.Supp. 680, 685 (D.Minn.1990)("Congress' intent was to

exclude 'part-time employees' from the calculation of a mass layoff, not to exclude them from protection once a mass layoff occurs").

As stated above, the WARN Act prohibits companies from conducting plant closings and mass layoffs without giving their employees 60 days' notice. The WARN Act provides that specific information must be provided to specific individuals and entities in order to ensure compliance with the Act.

Notice to affected employees must

- be written in understandable language and must contain a statement as to whether the planned action is expected to be permanent or temporary and, if the entire plant is to be closed, a statement to that effect;
- the expected date when the plant closing or mass layoff will commence and the expected date when the individual employee will be separated;
- an indication whether or not bumping rights exist;
- and the name and telephone number of a company official to contact for further information.

20 C.F.R. §639.7(d)(1)-(4). Notice must also be provided separately to the state and to the chief elected official of the unit of local government and must contain

- the name and address of the employment site where the plant closing or mass layoff will occur, and the name and telephone number of a company official to contact for further information;
- a statement as to whether the planned action is expected to be permanent or temporary and, if the entire plant is to be closed, a statement to that effect;
- the expected date of the first separation and the anticipated schedule for making separations; the job titles or positions to be affected, and the number of affected employees in each job classification;
- an indication as to whether or not bumping rights exist;
- and the name of each union representing affected employees, and the name and address of the chief elected officer of each union.

29 C.F.R. §639.7(c)(4).

There is no evidence that any of the Defendants provided notice to the state and local governments, as required. Employees were provided with a letter after-the-fact, but it did not comply with the WARN Act as it did not include the name and telephone number of the company official to contact for further information or a brief statement as to why more notice could not be provided. There is no evidence that any WARN-compliant notice was provided to any individual

or entity at any time and it is undisputed that no advanced notice was provided at all.  If proper 60 days' advanced notice is not given, "affected employees" become "aggrieved employees" who are due damages.  29 U.S.C. §2104.

### D.      All Elements of a WARN Claim are Met

Thus, the undisputed facts show that all elements have been met: RBH, NR Florida, NR Pennsylvania, NR Connecticut, DRPS, Coal Lake Worth, CLW Holdings, Coal Florida, Coal Connecticut, Coal Ephrata, Coal Capital and HFGC employed over 100 employees, more than one-third of its full-time employees were terminated and there were affected employees who were due notice, which they did not receive.  Thus, this Court should find as a matter of law that (1) there was a mass layoff or plant closing (2) by an employer who fired employees (3) who were entitled to notice and such notice was not provided.  Accordingly, summary judgment in favor of the Plaintiffs as to liability is proper.

### E.      The Corporate Defendants Acted as a Single Employer.

NR Florida, NR Pennsylvania, and NR Connecticut (defaulted) are clearly employers under the WARN Act as they are the employers who employed the individuals.

Retreat Behavioral Health and DRPS Management have also defaulted and therefore no further proof is needed.

The WARN Act test for determining when two or more entities are treated as a single employer is as follows:

> Two or more affiliated businesses which constitute a "single employer" may be held jointly and severally liable for violations of the WARN Act. *Pearson v. Component Tech. Corp.*, 247 F.3d 471, 478 (3d Cir. 2001). The Department of Labor ("DOL") regulations issued under the WARN Act provide that two or more affiliated businesses may be considered a single business enterprise for WARN Act purposes. 20 C.F.R. § 639.3(a)(2). The regulations provide a five-factor balancing test to assess whether affiliated businesses constitute a "single employer," which would subject them to joint liability under the WARN Act. *See Pearson*, 247 F.3d at 478. The five DOL factors are as follows: (1) common ownership, (2) common directors and/or officers, (3) unity of personnel policies emanating from a common source, (4) dependency of operations, and (5) de facto exercise of control. *Id*. at 487– 490; 20 C.F.R. § 639.3(a)(2).

*Mowat v. DJSP Enterprises, Inc.*, No. 10-62302-CIV, 2011 WL 13214330, at *3 (S.D. Fla. Apr. 28, 2011); *Benson v. Enter. Leasing Co. of Orlando, LLC*, No. 6:20-CV-891-RBD-LRH, 2021 WL

1078410, at *2 (M.D. Fla. Feb. 4, 2021)(applying these five factors to determine if a subsidiary may be treated as part of a parent company for purposes of WARN Act liability). The undisputed facts establish the remaining corporate defendants all constitute a single employer with the NR Entities.

Coal Capital Group, controlled by David Silberstein, was a one-third owner of the NR Entities prior to Schorr's death and at least a 50% owner following Schorr's death. The operating agreements provided that Schorr "will manage and be responsible for the operational and therapeutic matters of the company," while Silberstein, "will manage and be responsible for the fiscal, investment banking, real estate, and occupancy matters of the company." Coal Capital Group received management fees from the NR entities. It was clearly part of the Retreat enterprise. Moreover, it is clear that once Schorr died, Silberstein, via Coal Capital Group, became the sole decision-maker responsible for the NR entities.

The other Coal Entities were also part of the Retreat enterprise. They existed solely for the purpose of the Retreat business conducted through NR Florida, NR Pennsylvania, and NR Connecticut. While there was a rather complicated corporate structure, it all resulted in the NR Entities being owned Silberstein and Schorr through Coal Capital Group and DRPS with the Coal Entities being used to hold the real estate while the NR entities provided the services. The money flowed between companies as needed (e.g., the money transferred from NR PA to the Coal Entities in excess of the rent and management fees) or stopped flowing as needed (e.g., the rent payments being unpaid). All companies were necessary to the business enterprise, which depended on the operation of all of the companies (as further evidenced by the collapse of the entire business, including the Coal entities, in June 2024).

### F.    *Damages*

Plaintiffs and Class Members are due 60 days' wages or half the number of days the employee worked for the employer if fewer than 60 days. 29 U.S.C. §2104(a)(1) ("liability shall be calculated for the period of the violation, up to a maximum of 60 days, but in no event for more than one-half the number of days the employee was employed by the employer"). This is a sum that can be made certain by computation.

The formula for WARN Act damages for each employee is: **Work Days (in 60-day period) x Daily Rate = Damages.** *Weeks-Walker v. Macon County Greyhound Park, Inc.* 2014 WL 351310 at *5 (M.D. Ala. July 16, 2014).

Using the payroll records, calculations can be done for each employee using their average daily pay for the first 6 months of the year and multiplying it by 60 (or half the number of days worked, if appropriate). All calculations and underlying records have been provided.

For the WARN Damages provided in Ex. 14, 16, and 18, 60 days' pay has been calculated using the average weekly pay divided by 7 days in the week and then multiplied by 60 days for most employees. If an employee worked for fewer than 60 days, then their average weekly pay divided by 7 was multiplied by ½ the number of days actually worked. Each class members' WARN damages are provided on Ex. 14, 16, and 18 in the column labeled "WARN Damages". The total unpaid WARN damages for all Florida employees is $2,064,036.27, for all Pennsylvania employees is $2,750,124.04, and for all Connecticut employees $1,421,808.36. This totals $6,235,968.67.

## III.    Defendants Owe Plaintiff and Class Members Unpaid Wages

There is no dispute that employees were not fully paid their wages for their final three weeks of employment. Rather, certain Defendants have previously asserted that they are not liable for these unpaid wages because they were not employers pursuant to the FLSA. However, the undisputed evidence shows that all of the Defendants are liable.

### A.  All Corporate Defendants and Silberstein

NR Florida, NR Pennsylvania, and NR Connecticut (defaulted) are clearly employers under the FLSA as they are the entities who directly employed the staff.

Retreat Behavioral Health and DRPS Management have defaulted and therefore no further proof is needed.

The remaining companies are all Coal companies controlled by Silberstein.

> A joint-employment relationship will generally be found to exist in situations…[w]here the employers are not completely disassociated with respect to the employment of a particular employee and may be deemed to share control of the employee, directly or indirectly, by reason of the fact that one employer controls, is controlled by, or is under common control with the other employer.

*Layton v. DHL Exp. (USA), Inc.*, 686 F.3d 1172, 1175 (11th Cir. 2012). Layton articulated eight factors that Courts can consider in this: (1) the nature and degree of control of employees; (2) the degree of supervision, direct or indirect; (3) the right to directly or indirectly, hire, fire, or modify employment conditions; (4) the power to set pay rates or payment methods; (5) the preparation of payroll and payment of wages; (6) the ownership of the facilities where the work occurred; (7) the

extent to which the work is integral to the business; and (8) the relative investment in equipment and facilities. *Id.* at 1178-1181. The economic realities test is not determined by "mathematical formula" and "no one factor is dispositive." *Diaz v. U.S. Century Bank*, No. 12-21224-CIV, 2012 WL 3597510, at *3 (S.D. Fla. Aug. 20, 2012). "An exhaustive joint employment analysis would thus be premature at this stage where Plaintiffs have submitted a plausible claim." *Id.*

As shown above, Coal Capital Group owned the NR Entities and that is the entity through which Silberstein managed them and received a management fee. The remaining Coal Entities all owned the real estate for Retreat and existed solely for that purpose. He was responsible for the financial side of the business. He acquired and developed the properties and real estate necessary for the operation of the Retreat businesses, easily meeting factors 6, 7, and 8. Moreover, once Schorr died, Silberstein became the only owner and decision-maker for the enterprise. Silberstein had the power to pay the employees their unpaid wages and did not do so.

### B. Gariano

Chrissy Gariano was Chief Regulatory Officer and Chief Clinical Officer for Retreat. She sent the initial email to employees regarding their late paychecks and her name was attached to subsequent communications to employees about their employment. Following Schorr's death, the evidence shows that she and Korogodsky took control of the outstanding payroll issues, until Korogodsky's death a few days later.

### C. State Laws Define Employer Similarly Broad.

The Florida Constitution states that the terms "Employer," "Employee" and "Wage" shall have the meanings established under the federal Fair Labor Standards Act (FLSA) and its implementing regulations. Fla. Const. Art. X §24(b).

Under Connecticut law, "Employer includes any individual, partnership, association, joint stock company, trust, corporation, the administrator or executor of the estate of a deceased person, the conservator of the estate of an incompetent, or the receiver, trustee, successor or assignee of any of the same, employing any person; including the State and any political subdivision thereof," while "Employee includes any person suffered or permitted to work by an employer," just like the FLSA. CT Gen Statute §31-71a.

Under Pennsylvania's very broad definition, "Employer" includes "every person, firm, partnership, association, corporation, receiver or other officer of a court of this Commonwealth

and any agent or officer of any of the above-mentioned classes employing any person in this Commonwealth." 43 P.S. Labor § 260.2a.

Since the state laws use the FLSA definition or even broader definitions, they would apply to all corporate Defendants as well.

### D. Damages

ADP and the Receiver provided pay records and those were used to calculate averages for each employee from the prior six months of pay to calculate estimated damages for those last three weeks. Where there are no accurate time records to rely on, employees may use estimates:

> When the employer has kept proper and accurate records the employee may easily discharge his burden by securing the production of those records. But where the employer's records are inaccurate or inadequate and the employee cannot offer convincing substitutes a more difficult problem arises. The solution, however, is not to penalize the employee by denying him any recovery on the ground that he is unable to prove the precise extent of uncompensated work. Such a result would place a premium on an employer's failure to keep proper records in conformity with his statutory duty; it would allow the employer to keep the benefits of an employee's labors without paying due compensation as contemplated by the Fair Labor Standards Act. In such a situation we hold that an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate. See Note, 43 Col.L.Rev. 355.

> The employer cannot be heard to complain that the damages lack the exactness and precision of measurement that would be possible had he kept records in accordance with the requirements of s 11(c) of the Act.

*Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687-88 (1946).

The damage calculations account for an offset for any subsequent payment that was made to the Florida and Pennsylvania employees by the Receiver.

For the employees who opted into the FLSA collective action, minimum wage and overtime calculations are provided and the greater of the FLSA or applicable state law wages are used. The calculations include liquidated damages as a court must generally award liquidated damages in an FLSA case. *Rodriguez v. Farm Stores Grocery*, 518 F.3d 1259, 1272 (11th Cir.

2008); *Schmidlin v. Apex Mortg. Services, LLC*, 2008 WL 976158 (M.D. Fla. 2008) ("Such liquidated damages are mandatory unless the employer demonstrates its actions were in good faith and shows it had reasonable grounds for believing that those actions did not violate the FLSA.").

For the employees who did not opt in to the FLSA collective action, state law calculations are used.

For Pennsylvania, 43 P.A. Stat. §260.1, *et seq* governs the payment of wages to employees and creates a right of action against any "employer" who violates these wage provisions. The Pennsylvania minimum wage at the time was the federal minimum wage of $7.25 per hour. Pennsylvania law also requires the payment of time and one half for overtime hours. 43 P.A. Stat. §260.5 requires payment of wages on or before the next scheduled pay day. Pennsylvania law provides for liquidated damages equal to the greater of 25% of the unpaid wages or $500.

Art. X, Sec. 24 of the Florida Constitution guarantees minimum wage to all employees. The minimum wage at the time was $12 per hour.[1]

Connecticut General Statute §31-58, *et seq* governs the payment of wages to employees and creates a right of action against any "employer" who violates these wage provisions. The Connecticut minimum wage at the time was $15.69 per hour.[2] Connecticut law also requires the payment of time and one half for overtime hours. Connecticut General Statute §31-71c requires payment of final wages no later than the next business day following a discharge. Connecticut General Statute §31-72 provides that employees may recover twice the full amount of wages that were improperly withheld.

Damages can be calculated using the data in Summary Exhibit 12, which is compiled from Exhibit 11.

<u>Florida</u>

Using the 2024 average pay and hours worked, unpaid minimum wage, overtime, and liquidated damages has been calculated for each opt in member of the collective action. This is labeled as "FLSA Damages" on Ex. 13. For the unpaid minimum wage, each employee's average weekly hours have been multiplied by $12 per hour (the minimum wage in the state of Florida in

---

[1]     Florida Minimum Wage History 2000-2025, https://www.floridajobs.org/docs/default-source/business-growth-and-partnerships/for-employers/posters-and-required-notices/2025-minimum-wage/2000-2025-florida-minimum-wage-history.pdf?sfvrsn=70943eb0_3

[2]     State of Connecticut – Minimum Wage Information https://www1.ctdol.state.ct.us/lmi/ctminimumwage.asp

June 2024).  For unpaid overtime, average weekly overtime hours have been multiplied by average hourly pay (average weekly pay divided by average weekly hours), which is multiplied by 1.5, and multiplied again by 3 for the 3 weeks of unpaid payroll.

Using this same data, unpaid minimum wage and liquidated damages has been calculated for all members of the class action in the same manner as for the FLSA opt ins.  This is labeled as "State Law Damages" on Ex. 13.  Finally, a total was calculated using the greater of the FLSA or state law damages less any amount paid by the receiver in December 2024 for the first missed payroll in June 2024.  The total unpaid wage liability for all Florida employees is $250,709.00.

<u>Pennsylvania</u>

Using the 2024 average pay and hours worked, unpaid minimum wage, overtime, and liquidated damages has been calculated for each opt in member of the collective action.  This is labeled as "FLSA Damages" on Ex. 15.  For the unpaid minimum wage, each employee's average weekly hours have been multiplied by $7.25 per hour. For unpaid overtime, average weekly overtime hours have been multiplied by average hourly pay (average weekly pay divided by average weekly hours), which is multiplied by 1.5, and multiplied again by 3 for the 3 weeks of unpaid payroll.

Using this same data, unpaid minimum wage, overtime has been calculated for all members of the class action in the same manner as for the FLSA opt ins.  Unlike Florida, Pennsylvania law allows recovery of the employee's full wage, so unpaid wages have been calculated by multiplying the average weekly wages by 3 weeks.  Since this number is larger than the minimum wage calculation, the unpaid wage number was used to calculate final state law wages and liquidated damages (25% of the unpaid minimum wage and overtime or $500, whichever is greater) were added to reach the total state law damages.  This is labeled as "State Law Damages" on Ex. 15. Finally, a total was calculated using the greater of the FLSA or state law damages less any amount paid by the receiver in August 2024 for the first missed payroll in June 2024.  The total unpaid wage liability for all Pennsylvania employees is $592,059.12.

<u>Connecticut</u>

FLSA minimum wage, overtime, and liquidated damages are calculated in the same manner as the other states for the FLSA opt ins. This is labeled as "FLSA Damages" on Ex. 17. For the unpaid minimum wage, each employee's average weekly hours have been multiplied by $15.69 per hour. For unpaid overtime, average weekly overtime hours have been multiplied by

average hourly pay (average weekly pay divided by average weekly hours), which is multiplied by 1.5, and multiplied again by 3 for the 3 weeks of unpaid payroll.

Using this same data, unpaid minimum wage and overtime has been calculated for all members of the class action in the same manner as for the FLSA opt ins.  Connecticut law allows recovery of the employee's full wage, so unpaid wages have been calculated by multiplying the average weekly wages by 3 weeks.  Since this number is larger than the minimum wage calculation, the unpaid wage number was used to calculate final state law wages and liquidated damages (an equal amount) were added to reach the total state law damages.  This is labeled as "State Law Damages" on Ex. 17.  The total for Connecticut is $938,092.47.

## IV. **Defendants' Affirmative Defenses Do Not Prevent Summary Judgment in Favor of the Plaintiffs as to Liability.**

None of Defendants' affirmative defenses prevent the entry of summary judgment in favor of Plaintiffs.  Since some of the Defendants responded jointly to the Second Amended Complaint, for ease of discussion, the following terms will be used to refer to the affirmative defenses asserted by each respective Answer.

| | Entity | Answer |
|---|---|---|
| Receivership Defendants | NR Florida<br>NR Pennsylvania | ECF 157 |
| | Coal Lake Worth<br>HFGC Florida | ECF 180 |
| Coal Defendants | Coal Capital Ephrata<br>Coal Capital Group<br>CLW Holdings<br>Coal Capital Holdings<br>Coal Connecticut<br>Silberstein | ECF 183 |
| Defaulted Defendants | Retreat Behavioral Health<br>NR Connecticut<br>DRPS Management | No Answer<br>Clerk's Default ECF 155 |

Plaintiffs will address each defense, in turn.

### A. *Failure to State Claim*

Defendants state that Plaintiffs have failed to state a claim upon which relief can be granted, which is not a true affirmative defense.  See, ECF 157, First Affirmative Defense, ECF 180, First

Affirmative Defense, ECF 183, First Affirmative Defense, Tenth Affirmative Defense.  This is rebutted by the evidence presented above demonstrating each element of a WARN claim.

### B.      Statute of Limitations

Defendants state that Plaintiffs' claims are barred by the statute of limitations.  See, ECF 157, Second Affirmative Defense, ECF 180, Second Affirmative Defense, ECF 183, Third Affirmative Defense.  The WARN Act does not contain a specific statute of limitations, so state law is borrowed.  *North Star Steel Co. v. Thomas*, 515 U.S. 29, 31 (1995).  In Florida, this would be a four-year statute of limitations.  Fla. Stat. § 95.11(3)(f).  In Pennsylvania, this statute of limitations is at least two years, but likely longer.  *Butler v. Giant Markets, Inc.*, 960 F. Supp. 884 (M.D. Pa. 1997).  In Connecticut, it does not appear that any Court has determined which statute of limitations applies, but Connecticut has a three-year statute of limitations for oral contracts and a two-year statute of limitations for wages.  CT Gen. Stat. §§ 52-581 & 52-596.

The FLSA, Pennsylvania, and Connecticut all utilize a two-year statute of limitations for wage claims.  *See* CT Gen. Stat. §52-59643; Pa. Cons.Stat. Ann. § 260.9a(g).  Florida has a four-year statute of limitations for minimum wage claims.  Fla. Const. Art. X, §24(e).

This lawsuit was filed approximately 5 weeks after the terminations took place.

### C.      WARN Act – Unforeseen Business Circumstances

Defendants assert that no violation of the WARN Act occurred due to the "unforeseen business circumstances" exception found at 29 U.S.C. §2102(b)(2)(A).  See, ECF 157, Thirteenth Affirmative Defense, ECF 180, Thirteenth Affirmative Defense, ECF 183, Eighth Affirmative Defense.  As demonstrated below, this defense is unavailable to Defendants.

Defendants assert that there were unforeseen business circumstances that prevented timely WARN notice.  However, "the necessary predicate for a defendant to be able to assert these affirmative defenses allowing for shortened notice is a showing that the shortened notice included a brief statement of the basis for the reduced notice period—the employer must 'give as much notice as is practicable and at that time shall give a brief statement of the basis for reducing the notification period.'"  *In re Dewey & LeBoeuf LLP*, 507 B.R. 522, 528 (Bankr. S.D.N.Y. 2014).  Thus, to take advantage of the unforeseeable business circumstances defense under the WARN Act, the employer still needs to provide as much notice as possible and include a brief statement of the basis for the reduction of the 60-day time period. *Sides v. Macon Cty. Greyhound Park, Inc*., 725 F.3d 1276, 1284 (11th Cir.2013); see also Michael G. Williamson, *Warning Priority Claims*

*Abound: Plant Closing Notices Under the Warn Act*, 70 Fla. B.J., 39, 40 (Feb. 1996) ("If the exception is applicable, the employer must give as much notice as is practicable and at the time notice is given, provide a brief statement of the basis for reducing the notice period."). "The WARN Exceptions are to be construed narrowly, and when giving shortened WARN notice, an employer must deliver the required brief statement in the written WARN notice itself." *Id.* at 534 ("The Court concludes that Dewey does not qualify for the WARN Exceptions"). In *Dewey & LeBoef*, shortened WARN notice was provided but was lacking the brief statement as to the basis of the reduced notice period. Here, belatedly some information was provided but no WARN notice was provided or filed with the state or local government. Simply put, the information did not include a brief statement as to the basis of the reduced notice period. It is, therefore, impossible for Defendants to show that it provided as much notice as possible and provided a statement as to the basis for the reduced notice period. As such, this defense is unavailable to Defendants.

Assuming, *arguendo*, that this defense was available, the undisputed evidence is that the circumstances leading up to the June 2024 terminations were not unforeseen and that the company had been aware how dire its circumstances were in sufficient time to provide WARN Notice, but instead waited for the company to run out of money before terminating employees with no warning.

**D.      WARN Act – Faltering Company**

The Coal Defendants assert that no violation of the WARN Act occurred due to the faltering company defense. [ECF 183, Seventh Affirmative Defense]. The Retreat Defendants do not assert this defense. The "faltering company" defense provides that

> [a]n employer may order the shutdown of a single site of employment before the conclusion of the 60-day period if as of the time that notice would have been required the employer was actively seeking capital or business which, if obtained, would have enabled the employer to avoid or postpone the shutdown and the employer reasonably and in good faith believed that giving the notice required would have precluded the employer from obtaining the needed capital or business.

29 U.S.C. §2102(b)(1).

As with the "unforeseen business circumstances" exception, the "faltering company" defense is also predicated on providing the WARN notice as soon as practicable and including a statement of the basis for reducing the notification period. *Dewey & LeBoeuf LLP*, 507 B.R. at

528.  As established above, the undisputed evidence is that no statement for a reduced notification period was provided and this defense is unavailable to Defendants.

Moreover, the undisputed evidence shows that no one discussed the WARN Act or considered its applicability to the situation, so it would have been impossible for the Defendants to have determined in good faith that giving such notice – which they were unaware they were required to give – would have precluded them from obtaining capital.  There is also no evidence regarding the financing that may have been sought, apart from general references to Schorr seeking financing.  Defendants cannot meet this burden for the faltering company exception under these facts.

### E.       WARN Act – Good Faith

Defendants assert that, should damages be awarded, they should be reduced because Defendants acted in good faith and had reasonable grounds for believing there was not a violation of the WARN Act.  See, ECF 157, Fourteenth Affirmative Defense, ECF 180, Fourteenth Affirmative Defense, ECF 183, Ninth Affirmative Defense.  The good faith defense is not a defense to liability but potentially reduces damages where an employer acted in good faith.  29 U.S.C. §2104(a)(4).  Thus, the defense does not provide a basis for denying an employee's motion for summary judgment as to liability.  *See Grimmer v. Lord Day & Lord*, 937 F. Supp. 255, 258 (S.D.N.Y. 1996)(because the 'good faith defense' applies only after a violation of the statute has been established…it "does not provide a basis for denying plaintiffs' motion.").

The good faith defense "requires proof of the employer's subjective intent to comply with the WARN Act, as well as evidence of objective reasonableness in the employer's application of the Act."  *Weekes-Walker v. Macon County Greyhound Park, Inc.*, 877 F. Supp. 2d 1192, 1210–11 (M.D. Ala. 2012)(internal quotations omitted).  The employer bears the burden of both elements of this defense and the defense is to be narrowly construed.  *Id.*  "[I]gnorance of the WARN Act is not enough to establish the good faith exception." Id. (citing *Childress v. Darby Lumber, Inc.,* 357 F.3d 1000, 1008 (9th Cir.2004)); *In re Organogenesis Inc.*, 316 B.R. 574, 589 (Bankr. D. Mass. 2004)(same).  "The good faith reduction is intended for circumstances where the employer technically violates the law but shows that it did everything possible to ensure that its employees received sufficient notice that they would be laid off."  *Castro v. Chicago Hous. Auth.*, 360 F.3d 721, 731 (7th Cir. 2004).  As the testimony has been clear that Defendants did not consider the WARN Act at all prior to the decision to close the businesses, they could not have had any good

faith belief that they were complying with the WARN Act. Thus, no reduction of damages due to good faith is warranted.

### F.     Not Employers

The Defendants assert a defense that they are not employers for the purposes of the applicable laws. This has been addressed above. Since this is an element of the claim, it is not an appropriate affirmative defense.

### G.     Class Treatment

The Retreat Defendants' Fifteenth, Sixteenth, Seventeenth, and Eighteenth defenses and the Coal Defendants' Eleventh and Twelfth Affirmative Defense are all defenses to class certification. Since this has already been certified as a class action, these are not applicable, nor are they a reason to deny summary judgment to the Plaintiffs.

### H.     FLSA – Liquidated Damages

The Receiver Defendants assert as their Seventh affirmative defense that they cannot be liable for liquidated damages because there is no evidence that Defendants' violations of the FLSA were willful or reckless. See ECF 157. However, this is not an accurate statement of the law on liquidated damages.

The standard for avoiding liquidated damages is not by showing the employer's actions were not willful or reckless (this is the standard for extending the statute of limitations for three years). Rather, an employer who violates the FLSA's overtime provision has the burden of proving it acted in good faith. *Joiner v. City of Macon*, 814 F.2d 1537, 1539 (11th Cir. 1987). To satisfy the good faith requirement, an employer must show that it acted with both subjective and objective good faith. *Dybach v. Florida Dep't of Corrections*, 942 F.2d 1562, 1566-67 (11th Cir. 1991).

Subjective good faith means the employer had an honest intention to ascertain what the FLSA requires and to act in accordance with it. *Id*. at 1566. Objective good faith means the employer had reasonable grounds for believing its conduct comported with the FLSA. *Id*. "[G]ood faith requires some duty to investigate potential liability under FLSA." *Barcellona v. Tiffany English Publi'g, Inc.*, 597 F. 2d 464, 469 (5th Cir. 1979).

It is clear from the facts of this case that Defendants knew employees had not been compensated for their last three weeks of work and that no one took any action to timely pay employees until a receiver was appointed and some employees received partial payment months after the fact. This is not a payroll mistake, but a decision not to fund payroll at all. There is no

evidence Defendants could point to to show they believed they were complying with the law by failing to compensate employees at all.

### I.      *FLSA – Exemptions*

The Receiver Defendants assert that plaintiffs were exempt from overtime and minimum wage due to FLSA exemptions.  The manner in which overtime was calculated only provides overtime damages to employees who had previously been paid overtime compensation.  If an employee was exempt, they would not have been paid overtime in the six months prior to the terminations and would not receive any now.  As for minimum wage, there are no facts establishing that any employee was exempt from minimum wage; however, to the extent Defendants can show this, this can be accounted for in the damage calculations.

### J.      *FLSA – Actual or Constructive Knowledge*

The Receiver Defendants assert that they cannot be liable for work that they did not have actual or constructive knowledge of, that they failed to accurately record or report, or for work that was not performed for Defendants' benefit.  There are no facts in this case that show that employees performed work that Defendants were not aware of, that they did not report, or that was not for Defendants' benefit.  Damage calculations are based on the prior six months of payroll records.  It is Defendants' burden to keep accurate records and, to the extent they do not, employees may assert a reasonable estimate, as noted above.

### K.      *Receiver Defendants' Remaining Affirmative Defenses*

The Receiver Defendants assert that Plaintiffs' claims may be barred by waiver, estoppel, res judicata, preclusion, or/or laches.  See, ECF 157, Third Affirmative Defense, ECF 180, Third Affirmative Defense.  There are no facts supporting this defense.

The Receiver Defendants assert that any unlawful conduct was outside the scope of employment and that the Receiver Defendants did not authorize or ratify any wrongful conduct. See, ECF 157, Fourth and Fifth Affirmative Defenses, ECF 180, Fifth and Sixth Affirmative Defenses.  This type of defense is not applicable here, where there were company-wide decisions made to undergo a mass layoff or plant shutdown and to withhold paychecks from employees for their final weeks of work.

### L.      *Coal Defendants' Remaining Affirmative Defenses*

The Coal Defendants' Fourth Affirmative Defense is that Coal New Haven has filed for bankruptcy.  This motion does not seek summary judgment against Coal New Haven.

Their Thirteenth Affirmative Defense is that Plaintiffs' lack standing.  There is no factual basis for this defense.

**V.      Several Entities Are Currently Unrepresented and Default May Be Entered.**

NR Florida, NR Pennsylvania, HFGC, and Coal Lake Worth were previously represented by counsel, who withdrew effective August 25, 2025.  ECF 199.  These Defendants had until September 8, 2025 to obtain new counsel and failed to do so.  As such, they have failed to defend the action and default should be entered.  "Courts within this district and within other districts in the Eleventh Circuit have held the failure of a corporate defendant to obtain counsel may be construed as a failure to defend within the meaning of Rule 55." *Green v. Nat'l Mgmt. Recovery Corp.*, No. 3:11-CV-00625-J-37, 2011 WL 7789450, at *1 (M.D. Fla. Nov. 10, 2011), *report and recommendation adopted,* No. 3:11-CV-625-J-37TEM, 2011 WL 7789452 (M.D. Fla. Nov. 28, 2011)

<strong>CONCLUSION</strong>

For the reasons outlined above, Plaintiffs respectfully request this Court enter summary judgment that

(1) NR Florida, NR Pennsylvania, NR Connecticut, Retreat Behavioral Health, DRPS Management, Coal Lake Worth, HFGC Florida, Coal Capital Ephrata, Coal Capital Group, CLW Holdings, Coal Capital Holdings, Coal Connecticut violated the Workers' Adjustment and Retraining Notification ("WARN") Act when they terminated employees without the legally required notice in June 2024;

(2) NR Florida, NR Pennsylvania, NR Connecticut, Retreat Behavioral Health, DRPS Management, Coal Lake Worth, HFGC Florida, Coal Capital Ephrata, Coal Capital Group, CLW Holdings, Coal Capital Holdings, Coal Connecticut, Silberstein, and Gariano violated the Fair Labor Standards Act when they failed to pay employees for their final three weeks of wages;

(3) NR Florida, NR Pennsylvania, NR Connecticut, Retreat Behavioral Health, DRPS Management, Coal Lake Worth, HFGC Florida, Coal Capital Ephrata, Coal Capital Group, CLW Holdings, Coal Capital Holdings, Coal Connecticut, Silberstein, and Gariano violated the Florida Constitution when they failed to pay employees for their final three weeks of wages;

(4) NR Florida, NR Pennsylvania, NR Connecticut, Retreat Behavioral Health, DRPS

19

Management, Coal Lake Worth, HFGC Florida, Coal Capital Ephrata, Coal Capital Group, CLW Holdings, Coal Capital Holdings, Coal Connecticut, Silberstein, and Gariano violated Pennsylvania law when they failed to pay employees for their final three weeks of wages; and

(5) NR Florida, NR Pennsylvania, NR Connecticut, Retreat Behavioral Health, DRPS Management, Coal Lake Worth, HFGC Florida, Coal Capital Ephrata, Coal Capital Group, CLW Holdings, Coal Capital Holdings, Coal Connecticut, Silberstein, and Gariano violated Connecticut law when they failed to pay employees for their final three weeks of wages

and enter judgment in the amount of $8,016,829.26.

Respectfully submitted,

/s/ Ryan D. Barack
Ryan D. Barack
Florida Bar No. 0148430
Primary Email: rbarack@employeerights.com
Secondary Email: jackie@employeerights.com
Michelle Erin Nadeau
Florida Bar No. 0060396
Primary Email: mnadeau@employeerights.com
Secondary Email: jackie@employeerights.com
Kwall Barack Nadeau PLLC
304 S. Belcher Rd., Suite C
Clearwater, Florida 33765
(727) 441-4947
(727) 447-3158 Fax
Attorneys for Plaintiffs

-and-

/s/ Michael A. Pancier
Michael A. Pancier
Fla. Bar No. 958484
Email: mpancier@pancierlaw.com
Michael A. Pancier, P.A.
9000 Sheridan Street, Suite 93
Pembroke Pines, FL 33024
(954) 862-2217
Attorney for Plaintiffs

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on this 3rd day of December 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system who will provide service upon all registered parties.

/s/ Ryan D. Barack
Attorney