UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 24-cv-80787-MATTHEWMAN

MIA WILLIAMS, et al.,

      Plaintiffs,

v.

RETREAT BEHAVIORAL HEALTH, LLC, et al.,

      Defendants.

_____/

FILED BY _____ SW _____ D.C.

Feb 9, 2026

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - WPB

## <u>ORDER ON PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT [DE 222]</u>

THIS CAUSE is before the Court upon Plaintiffs Mia Williams, Brittany Calvert, and Alisa Leggett's, and on behalf of those similarly situated, Motion for Summary Judgment ("Motion") [DE 222]. Plaintiffs move against Defendants Retreat Behavioral Health, LLC; NR Florida Associates, LLC; NR Pennsylvania Associates, LLC; NR Connecticut, LLC; DRPS Management, LLC; Coal Lake Worth, LLC; CLW Holdings, LLC; Coal Capital Holdings (Florida) LLC; Coal Connecticut, LLC; Coal Capital Ephrata, LLC; Coal Capital Group, LLC; HFGC Florida, LLC; and David Silberstein.[1] [DE 222 at 1]. Defendants Coal Capital Ephrata, LLC; Coal Capital Group, LLC; CLW Holdings, LLC; Coal Capital Holdings (Florida) LLC; Coal Connecticut, LLC; Coal Lake Worth, LLC; HFGC Florida, LLC; and David Silberstein responded ("Responding

---

[1] Plaintiffs also moved against Chrissy Gariano but have since moved to voluntarily dismiss her from this case. [DE 235]. The Court has stayed proceedings against her until the Court can approve the dismissal. [DE 241].

Defendants"). [DE 238].[2] Plaintiffs filed a reply. [DE 243]. The matter is ripe for review.[3] The Court has carefully considered the filings and attachments thereto, the applicable law, and the entire docket in this case.

## I.    BACKGROUND

Plaintiffs' Second Amended Class Action Complaint [DE 74] alleges five counts: Violations of the Worker Adjustment and Retraining Notification ('WARN") Act against Defendants Retreat Behavioral Health, LLC, NR Florida Associates, LLC, NR Pennsylvania Associates, LLC, NR Connecticut, LLC, DRPS Management, LLC, Coal Lake Worth, LLC, CLW Holdings, LLC, Coal Capital Holdings (Florida) LLC, Coal Connecticut, LLC, Coal Capital Ephrata, LLC, Coal Capital Group, LLC, HFGC Florida, LLC (Count I); Violations of the Fair Labor Standards Act ("FLSA") as to all Defendants (Count II); Violations of art. X, § 24 of the Florida Constitution against all Defendants (Count III); Violations of CT Gen. Stat. §§ 31–58, *et seq.*, against all Defendants (Count IV); and Violations of 43 P.A. Stat. § 260.1, *et seq.* (Count V). This action has been certified as a class action under Federal Rule of Civil Procedure 23 as to the WARN Act and state wage law claims and conditionally certified under 29 U.S.C. § 216(b) as to the FLSA claims. [DE 184].

---

[2] There is confusion as to who represents Coal Lake Worth, LLC, and HFGC Florida, LLC. Seemingly, counsel from Ogletree Deakins represented these particular Defendants, and counsel from The Ticktin Law Group represent the rest of the Coal Companies. In fact, the Court addressed this issue at a prior discovery hearing where counsel from The Ticktin Law Group, LLC maintained that they represent Defendants Coal New Haven, LLC, Coal Connecticut, LLC, Coal Capital Holdings (Florida), LLC, Coal Capital Group, LLC, Coal Capital Ephrata, LLC, CLW Holdings, LLC, Chrissy Gariano, Alexander Hoinsky, and David Silberstein, and counsel from Ogletree Deakins represented Defendants NR Florida Associates, LLC, NR Pennsylvania Associates, LLC, **Coal Lake Worth, LLC, HFGC Florida, LLC**, and James Young. [DE 107 at 2] (emphasis added). Counsel from Ogletree Deakins then withdrew from the case, seemingly leaving Defendants Coal Lake Worth, LLC, and HFGC Florida, LLC, without counsel. [DE 199]. The Court will address this issue at the upcoming February 13, 2026 calendar call.

[3] Plaintiffs do not seek summary judgment against Defendants Alexander Hoinsky, Estate of Peter Schorr, James Young, in his capacity as Temporary Receiver of NR Pennsylvania Associates, LLC, and Coal New Haven LLC. A suggestion of death has been filed as to Alexander Hoinsky. [DE 189]. Moreover, Plaintiffs have settled with the Estate of Peter Schorr. [DE 214]. Lastly, this case is stayed as to Coal New Haven LLC due to its Chapter 11 bankruptcy petition. [DE 145].

## II.     UNDISPUTED FACTS

The following facts are drawn from the uncontested portions of the record together with the parties' respective statements of material facts ("SMF"). [DEs 223, 239, 244].

Retreat Behavioral Health, LLC ("Retreat") provided behavioral and mental health services in Florida, Connecticut, and Pennsylvania. Plaintiffs' SMF [DE 223] ("PSMF") ¶ 1. Through related companies, Retreat operated inpatient facilities in Palm Beach County, Florida; Lancaster County, Pennsylvania; and New Haven, Connecticut, as well as behavioral health service centers in Palm Beach Lakes, Florida; South Miami, Florida; Akron, Pennsylvania; Philadelphia, Pennsylvania; and Lansdale, Pennsylvania. *Id.* ¶ 2. Peter Schorr ("Schorr") and David Silberstein ("Silberstein") were managers of Retreat. *Id.* ¶ 4. Peter Schorr was the sole manager of DRPS Management, LLC ("DRPS"). *Id.* ¶ 5. Scott Korogodsky ("Korogodsky") was the Chief Administrative Officer of Retreat. *Id.* ¶ 8. Chrissy Gariano ("Gariano") was the Chief Regulatory Officer of Retreat. *Id.* ¶ 9. Alexander Hoinsky ("Hoinsky") was the Chief Financial Officer of Retreat. *Id.* ¶ 10.

### NR Entities

Schorr and Silberstein were managers of NR Florida Associates, LLC ("NR Florida"), NR Pennsylvania Associates, LLC ("NR Pennsylvania"), and NR Connecticut, LLC ("NR Connecticut") (collectively the "NR Entities"). *Id.* ¶ 11. Schorr owned two-thirds of NR Pennsylvania, and Silberstein owned one-third. *Id.* The NR Entities provided similar treatment services, were under common control, operated as a single business enterprise, shared human resources, some employees, and a billing department, and filed consolidated tax returns. *Id.* ¶¶ 22–28. The NR Entities also had common expenses, and NR Pennsylvania provided the working

3

capital for the other NR entities. *Id.* ¶¶ 17–18. Further, the NR Entities frequently transferred cash from one entity to another. *Id.* ¶ 16.

The NR Entities leased their primary facilities under a triple net lease from an entity or entities managed by Silberstein. *Id.* ¶ 12. Schorr and Silberstein agreed that Silberstein would acquire and develop real estate to be rented by the NR Entities, which would be run by Schorr. Defendants' SMF [DE 239] ("DSMF") ¶ 5. The NR Entities' governing documents provide that Schorr would be responsible for the day-to-day operations, including payroll and other employee matters, while Silberstein, as the "Class B Manager", would be responsible for the investment and financing of Retreat and the NR Entities, particularly relating to developing and funding each facility. *Id.* ¶ 7.

Silberstein received management compensation for his role in the NR Entities. PSMF ¶ 13. The management payments were made to Coal Capital Group, LLC. *Id.* ¶ 14. Silberstein was the signer on the bank accounts of NR Pennsylvania. *Id.* ¶ 20. Silberstein was aware that cash regularly moved amongst the three NR Entities. *Id.* ¶ 21.

<u>Coal Entities</u>

Silberstein is the manager and/or controls Coal Lake Worth, LLC ("Coal Lake Worth"), CLW Holdings, LLC ("CLW Holdings"), Coal Capital Holdings (Florida) LLC ("Coal Florida"), Coal Connecticut, LLC ("Coal Connecticut"), Coal New Haven LLC ("Coal New Haven"), Coal Capital Group, LLC ("Coal Capital Group"), Coal Capital Ephrata, LLC ("Coal Ephrata"), and HFGC Florida, LLC ("HFGC") (collectively the "Coal Companies"). *Id.* ¶¶ 31–32; DSMF ¶¶ 8–9.

NR Florida leased its facility from Coal Lake Worth, who leased the facility from HFGC. PSMF ¶ 33. NR Pennsylvania leased its facility from Coal Capital Ephrata.[4] *Id.* ¶ 34. CLW Holdings is the majority owner of HFGC and Coal Lake Worth. *Id.* ¶ 36. Coal Lake Worth and HFGC leased property on which NR Florida operated. *Id.* ¶ 37. Coal Florida holds the minority interest in NR Florida, Coal Capital Group holds the minority interest in NR Pennsylvania, and Coal Connecticut holds the minority interest in NR Connecticut. DSMF ¶ 8. The Coal Companies did not conduct any other business that was not related to Retreat. PSMF ¶ 40.

The NR Entities failed to pay their full rent obligations to the Coal Companies. DSMF ¶ 12. Silberstein and the relevant Coal Companies pursued legal action to enforce the lease agreements and to remove the NR Entities as the operators of the facilities. *Id.* ¶ 13.

<u>Plaintiffs and Class Members</u>

Plaintiffs Mia Willaims, Brittany Calvert, and Alisa Leggett were employed through NR Florida, NR Pennsylvania, or NR Connecticut until terminations on or about June 21, 2024. PSMF ¶¶ 41–44. The employees were employed through NR Florida, NR Pennsylvania, or NR Connecticut. *Id.* ¶ 44.

<u>Financial Difficulties</u>

Retreat, the NR Entities, and the Coal Companies had significant financial issues, accumulating a large debt. *Id.* ¶¶ 45–69. Silberstein understood that rents were not being paid because there was not enough money. *Id.* ¶ 55. Silberstein also knew about "liquidity problems" in the NR Entities before June 2024. *Id.* ¶ 56. Schorr and Korogodsky knew that the business was not sustainable. *Id.* ¶ 72. Schorr paid the payroll with his own money because there was insufficient income to fund payroll in the two-to-three weeks leading up to his death. *Id.* ¶ 76.

---

[4] Coal Capital Ephrata was created for the purpose of purchasing and owning real estate in Lancaster, Pennsylvania, and leasing it to NR Pennsylvania under a long-term lease. *Id.* ¶ 35.

<u>Employee Terminations</u>

Around June 21, 2024, Schorr died by suicide. *Id.* ¶ 78. On June 23, 2024, Korogodsky emailed employees stating that no one had been terminated yet. *Id.* ¶ 79. On June 24, 2024, Korogodsky and Gariano emailed employees that they would be closing services and would be providing appropriate letters regarding employment. *Id.* ¶ 80. Then, on or about June 26, 2024, Korogodsky died by suicide. *Id.* ¶ 81. Employees were sent letters signed by Retreat and an NR Entity, on July 27, 2024, stating that employees would be permanently terminated on or before June 21, 2024. *Id.* ¶ 82, Ex. 9.

According to payroll data from June 21, 2024, the NR Entities had the following number of employees terminated.

| Location | "Full Time" Employee | "Full Time" Employees Terminated | Total Terminated Employees |
|---|---|---|---|
| Pennsylvania | 199 | 199 | 271 |
| Florida | 148 | 148 | 210 |
| Connecticut | 77 | 77 | 147 |
| Total | 424 | 424 | 628 |

*Id.* ¶ 83.

Leading up to Schorr's death, Silberstein spoke with Schorr about cutting expenses, and payroll is a large expense. *Id.* ¶ 84. After Schorr's death, Silberstein became the sole manager of the NR Entities, with his vote count increasing to 50%. *Id.* ¶ 90. Silberstein was informed the day after Schorr's passing that the final payroll was not funded, and he did not take any steps to pay employees their final wages. *Id.* ¶¶ 94–95.

<u>Receivership</u>

James Young ("Young") was appointed receiver of NR Florida, NR Pennsylvania, HFGC, and CLW Holdings. *Id.* ¶ 97. Young determined that there was unpaid payroll liability for NR

Pennsylvania and NR Florida. *Id.* ¶ 103. There was eventually payment made to some employees of NR Florida and NR Pennsylvania for the last full pay period, but there was no payment made for work performed after June 16, 2024. *Id.* ¶ 104. This payment was made to NR Pennsylvania employees in August 2024 and NR Florida employees in December 2024. *Id.* ¶ 105. No payment for the final partial pay period was provided. *Id.* ¶ 106. No additional compensation or interest paid due to the lateness of these subsequent payments was distributed. *Id.* ¶ 107. Plaintiffs provide damages calculations for wage and WARN Act damages. [DE 223, Exs. 13–18].

## III.     <u>STANDARD OF REVIEW</u>

Federal Rule of Civil Procedure 56(a) states in relevant part that "[a] party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial responsibility of demonstrating to the court by reference to the record that there are no genuine issues of material fact that need to be decided at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

When a moving party has discharged its initial burden, the nonmoving party must "go beyond the pleadings," and, by its own affidavits or by "depositions, answers to interrogatories, and admissions on file," identify specific facts showing there is a genuine issue for trial. *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citations omitted).

When deciding whether summary judgment is appropriate, the Court must view the evidence and all reasonable factual inferences in the light most favorable to the party opposing the

motion. *Witter v. Delta Air Lines, Inc.*, 138 F.3d 1366, 1369 (11th Cir. 1998) (citations and quotations omitted). Any doubts regarding whether a trial is necessary must be resolved against the moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

So long as the non-moving party has had an ample opportunity to conduct discovery, the non-movant must come forward with affirmative evidence to support its claim. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990). If the evidence advanced by the nonmoving party "is merely colorable, or is not significantly probative, then summary judgment may be granted." *Anderson*, 477 U.S. at 249–50 (cleaned up).

## IV.   DISCUSSION

### A. Wage Law Claims

Starting with Plaintiffs' wage claims under the FLSA and state law, Plaintiffs claim that "[t]here is no dispute that employees were not fully paid wages for their final three weeks of employment." [DE 222 at 8]. The Court agrees, as the Responding Defendants do not dispute this fact and only challenge whether they are employers under the FLSA and state wage law. [DE 238 at 5–9].[5] Therefore, the Court proceeds to the issue of whether the Responding Defendants are joint employers.

---

[5]  A "party's failure to respond to any portion or claim in a motion indicates such portion, claim or defense is unopposed." *Jones v. Bank of Am., N.A.*, 564 F. App'x. 432, 434 (11th Cir. 2014) (citation omitted). "So, by not responding to an opposing party's legal argument, a party concedes that argument." *Dick's Sporting Goods, Inc. v. Forbes/Cohen Florida Properties, L.P.*, No. 20-CV-80157-BER, 2023 WL 5831467, at *4 (S.D. Fla. Sept. 8, 2023) (Reinhart, J.) (collecting cases).

i.    <u>FLSA Joint Employer</u>

Under the FLSA, an employer is "any person acting directly or indirectly in the interest of an employer in relation to an employee," and an entity is an employer if it "suffer[s] or permit[s]" a person to work. 29 U.S.C. § 203(d), (g). To determine whether a joint employer relationship exists under the FLSA, the Eleventh Circuit analyzes eight factors. *Layton v. DHL Exp. (USA), Inc.*, 686 F.3d 1172, 1177–78 (11th Cir. 2012). The factors are,

1. The nature and degree of control of the workers;
2. The degree of supervision, direct or indirect, of the work;
3. The power to determine the pay rates or the methods of payment of the workers;
4. The right, directly or indirectly, to hire, fire, or modify the employment conditions of the workers;
5. Preparation of payroll and the payment of wages ...
6. [O]wnership of the facilities where work occurred ...
7. [P]erformance of a specialty job integral to the business ... and,
8. [I]nvestment in equipment and facilities.

*Id.* at 1176 (citing *Aimable v. Long & Scott Farms*, 20 F.3d 434, 437 (11th Cir. 1994)). The goal is to "shed light on the existence of economic dependence" to ascertain "the economic reality of the total circumstances." *Id.* at 1181.

The factual scenario before the Court is unique. Tragically, Schorr and Korogodsky passed by suicide around the same time that Retreat and the NR Entities collapsed, seemingly leaving no money left for payroll. So, can Plaintiffs hold Silberstein and his Coal Companies liable when, undisputedly, Schorr and Korogodsky handled the employee-related duties of the business until their deaths? Potentially. However, that issue involves factual disputes and factual determinations better left for a jury.

Regarding the first five *Layton* factors, Plaintiffs produce minimal, if any, facts as to how Silberstein and the Coal Companies exercised control, supervised work, managed pay, modified employment, or prepared payroll before Schorr's and Korogodsky's deaths. [DE 222 at 10].

Therefore, Plaintiffs fail at the summary judgment stage in meeting their burden on factors one through five. Factors six through eight fare somewhat better for Plaintiffs, given Silberstein and the Coal Companies' role in acquiring and developing real estate for the facilities; however, "high level business decisions that only indirectly" concern "employment conditions are insufficient to indicate a joint employer relationship." *Valle v. AA & K Restoration Group LLC*, No. 1:19-CV-20873-KMM, 2020 WL 10055325, at *11 (S.D. Fla. Sept. 29, 2020) (citing *Layton*, 686 F.3d at 1179). Considering this background, coupled with the close timing of Schorr's and Korogodsky's deaths with the breakdown of Retreat and the NR Entities, there are genuine issues of material fact as to whether Silberstein and the Coal Companies were, or became after Schorr's and Korogodsky's deaths, Plaintiffs' employers. Thus, summary judgment is inappropriate for this issue.

      ii.     <u>State Law Wage Claims</u>

Turning to Plaintiffs' state wage law claims under Florida, Connecticut, and Pennsylvania law, the same above-defined issues of material fact permeate these claims. Florida, Connecticut, and Pennsylvania all define the term "employer" the same or similarly as the FLSA. Fla. Const. art. X., § 24(b) ("[T]he term[] "Employer[]" … shall have the meaning[] established under the federal Fair Labor Standards Act (FLSA) and its implementing regulations."); *Butler v. Hartford Tech., Inst., Inc.,* 243 Conn. 454, 462, 704 A.2d 222 (Conn. 1997) (finding that under the Connecticut Minimum Wage Act ("CMWA"), "an individual who possesses the ultimate authority and control within a corporate employer to set the hours of employment and pay wages and therefore is the specific or exclusive cause of improperly failing to do so"); *Modise v. CareOne Health Services, LLC*, 638 F. Supp. 3d 159, 186 (D. Conn. 2022) ("Although the FLSA's definition differs from the definition of 'employer' in the CMWA, courts in this district often find that an

individual qualifies as an 'employer,' or does not, for much the same reasons with respect to both definitions."); *Bansept v. G&M Auto.*, 557 F. Supp. 3d 584, 592 (E.D. Pa. 2021) ("The analyses for determining whether individuals are deemed employers are the same under the FLSA and the [Pennsylvania Minimum Wage Act].").

Accordingly, upon careful review, the Court finds that Plaintiffs have failed to meet their summary judgment burden on this joint employer issue. There are genuine issues of material fact as to whether Silberstein and the Coal Companies were "employers" under Florida, Connecticut, and Pennsylvania law.[6] This determination is best left for a jury.

## B. WARN Act

Addressing Plaintiffs' WARN Act claims, Responding Defendants mainly challenge the same issue as above, that they are not Plaintiffs' employers. [DE 238 at 2–4]. Thus, the Court will start with this matter.

"The WARN Act was created in part so that employers would be statutorily required to provide adequate notice of future layoffs to all employees before ordering a mass layoff or plant closing." *Sides v. Macon Cnty. Greyhound Park, Inc.*, 725 F.3d 1276, 1280 (11th Cir. 2013). Specifically, "[a]n employer shall not order a plant closing or mass layoff until the end of a 60-day period after the employer serves written notice of such an order" on each employee, or an employee's representative, and the state. 29 U.S.C. § 2102(a).

---

[6] Responding Defendants also state "not all of the defendants have sufficient ties to each state to be within their jurisdiction[.]" [DE 238 at 2, 7]. The Court construes this argument as one regarding personal jurisdiction, which has been waived at this stage, as Responding Defendants made no jurisdictional arguments in their Motions to Dismiss. *See* DE 149; *Posner v. Essex Ins. Co., Ltd.*, 178 F.3d 1209, 1214 n.4 (11th Cir. 1999); Fed. R. Civ. P. 12(g), (h)(1). Moreover, Plaintiffs clearly maintain that Responding Defendants employed employees in Florida, Connecticut, and Pennsylvania. Therefore, the Court finds that this argument is meritless.

Plaintiffs must prove three elements for a WARN Act claim: "(1) a mass layoff or plant closing as defined by the statute conducted by (2) an employer who fired employees (3) who, pursuant to WARN, are entitled to notice." *Sides*, 725 F.3d at 1281 (cleaned up).

An "employer" is "any business enterprise that employs 100 or more employees, excluding part-time employees; or 100 or more employees, including part-time employees, who in the aggregate work at least 4,000 hours per week, exclusive of hours of overtime." 20 C.F.R. § 639.3(a)(1)(i)–(ii). "Two or more affiliated businesses which constitute a 'single employer' may be held jointly and severally liable for violations of the WARN Act." *Mowat v. DJSP Enterprises, Inc.*, No. 10–62302–CIV, 2011 WL 13214330, at *3 (S.D. Fla. Apr. 28, 2011) (citing *Pearson v. Component Tech. Corp.*, 247 F.3d 471, 478 (3d Cir. 2001)). Courts weigh five factors to determine if an affiliated entity is a single employer: (1) common ownership, (2) common directors and/or officers, (3) unity of personnel policies emanating from a common source, (4) dependency of operations, and (5) de facto exercise of control. 20 C.F.R. § 639.3(a)(2)(i)–(v); *see also Mowat*, 2011 WL 13214330, at *3; *Benson v. Enter. Leasing Co. of Orlando, LLC*, No. 6:20-CV-891-RBD-LRH, 2021 WL 1078410, at *2 (M.D. Fla. Feb. 4, 2021).

Here, similar factual disputes pervade the issue of whether the relevant Responding Defendants were Plaintiffs' employers under the WARN Act.

To start, some factors weigh in Plaintiffs' favor. For example, Silberstein manages the Coal Companies, and certain Coal Companies own minority interests in the NR Entities. PSMF ¶¶ 31–32; DSMF ¶¶ 8–9. Moreover, Silberstein was a manager of the NR Entities. PSMF ¶ 11. Further, the evidence favors finding that the Coal Companies and the NR Entities depended on each other's operations, especially because the Coal Companies did not conduct business outside of Retreat's related operations. PSMF ¶ 40.

Notwithstanding, Plaintiffs provide no evidence supporting the third factor. *See* DEs 222 at 6–7; DE 243 at 3–5. Additionally, the fifth factor cuts both ways. This factor is "appropriately utilized" if Responding Defendants were "the decisionmaker[s] responsible for the employment practice giving rise to the litigation." *Mowat*, 2011 WL 13214330, at *3 (quoting *Pearson*, 247 F.3d at 503–04). Again, the circumstances here are peculiar. While Plaintiffs maintain that the Responding Defendants were the only ones who could have provided WARN Act notice, Responding Defendants contend, seemingly undisputedly, that up until Schorr's death, Silberstein and the Coal Companies were nearly shut out of Retreat's operations, and that Schorr had control over employee-related matters. DSMF ¶¶ 10–11.[7] Further, Korogodsky and Gariano were the ones who initially told employees that Retreat would be closing and would provide letters regarding employment. PSMF ¶ 80. Ultimately, the issue is better left for a jury to make factual determinations of what occurred leading up to and after Schorr's and Korogodsky's deaths and to make credibility assessments as to who was the responsible decision-maker giving rise to the employee termination.[8]

Lastly, Responding Defendants claim that many employees quit or walked off before being terminated, making it "impossible to discern if there was a true mass layoff[.]" [DE 238 at 5]. However, the only "fact" that supports Responding Defendants' contention is Silberstein's

---

[7] The Court understands that Plaintiffs dispute these facts in their Reply Statement of Material Facts, but their dispute rests with the period after Schorr's death.

[8] This jury evaluation also coincides with Responding Defendants' separate assertion that they did not order mass employee termination. [DE 238 at 4–5]. If Responding Defendants did not order the mass termination or are not otherwise responsible, then that contradicts the notion that they are Plaintiffs' employers under the applicable factors. *See Mowat*, 2011 WL 13214330, at *3; *Pearson*, 247 F.3d at 503–04. However, Plaintiffs were clearly terminated by an employer under the WARN Act, whether through Responding Defendants or not. As stated, Korogodsky and Gariano informed employees that the business would be closing and they would provide letters regarding employment. PSMF ¶ 80, Ex. 8. Employees were then provided termination letters signed on behalf of Retreat and an NR Entity. *Id.* ¶¶ 41–44, 82, Ex. 9. Therefore, the issue is not whether an employer terminated Plaintiffs, but whether the relevant Responding Defendants are considered employers under the WARN Act.

Affidavit, which states that he "found out that after the death of Mr. Schorr, a mass walk off of employees occurred." DSMF ¶ 16, Ex. 2 ¶ 16.

The Court finds that this conclusory statement from Silberstein's Affidavit does not create an issue of fact of whether a "plant closing"[9] or "mass layoff"[10] occurred under the WARN Act. Silberstein does not explain how he was presented with this information, whether this information has been confirmed, nor names a single employee who walked off as opposed to being terminated. There are no facts to support this statement from Silberstein's Affidavit, and it appears to be self-serving. Plaintiffs have presented undisputed evidence that either a plant closing or mass layoff, a distinction of no effect, happened. PSMF ¶¶ 80–83. Silberstein's conclusory Affidavit, not based on personal knowledge, and without factual support, does not defeat summary judgment as to this issue. *See United States v. Stein*, 881 F.3d 853, 857 (11th Cir. 2018) ("An affidavit cannot be conclusory[.]"); *Rodda v. Univ. of Miami*, 542 F. Supp. 3d 1289, 1295 (S.D. Fla. 2021) ("Affidavits based upon information and belief, rather than personal knowledge, are also insufficient to withstand a motion for summary judgment."). Thus, there is no genuine issue of fact as to this element.

## C. Remaining Elements and Affirmative Defenses

Plaintiffs calculated WARN Act and wage law damages and provided supporting documentation. PSMF ¶ 108, Exs. 10–18. Plaintiffs also maintain that the "damage calculations have accounted for which state law would apply to which employee." [DE 243 at 6]. The only

---

[9] Under the WARN Act, a "plant closing" is defined as "the permanent or temporary shutdown of a single site of employment, or one or more facilities or operating units within a single site of employment, if the shutdown results in an employment loss at the single site of employment during any 30-day period for 50 or more employees excluding any part-time employees." 29 U.S.C. § 2101(a)(2).

[10] A "mass layoff" means a reduction in force which … results in an employment loss at the single site of employment during any 30-day period for at least 33 percent of the employees (excluding any part-time employees); and at least 50 employees (excluding any part-time employees); or at least 500 employees (excluding any part-time employees)[.]" 29 U.S.C. § 2101(a)(3) (cleaned up).

opposition Responding Defendants present to Plaintiffs' damages calculations is their assertion that many employees were not fired. [DE 238 at 5]; DSMF ¶ 108. Defendants have completely failed to contest or oppose Plaintiffs' damages calculations. Responding Defendants have therefore conceded these damages if joint employer liability is found by the jury. Because the Court finds that Responding Defendants' argument does not create an issue of fact as to damages if the jury finds joint employer liability, the Court will also hold that there are no issues of fact surrounding Plaintiffs' damages. *See Jones*, 564 F. App'x. at 434; *Dick's Sporting Goods, Inc.*, 2023 WL 5831467, at *4.

Other challenges to the remaining elements of Plaintiffs' claims, not previously mentioned, have been waived as they have not been raised, and the Court deems that Plaintiffs have presented sufficient evidence as to these elements. *See id.*; DE 243 at 1.

Finally, Plaintiffs move for summary judgment regarding Responding Defendants' affirmative defenses. [DE 222 at 13–19]; [DE 243 at 1]. Responding Defendants make no argument and delineate no evidence as to these defenses. *See* DE 238. Therefore, Responding Defendants' have waived all arguments as to their affirmative defenses, and those affirmative defenses are dismissed and shall not be presented to the jury.[11] *See id.*

### D. Defaulted Defendants

Plaintiffs also move for summary judgment as to many defaulted Defendants who either have a clerk's default entered against them or are entities that did not timely obtain counsel. [DE 222 at 19]. As noted above, the Court is unsure whether certain entities are represented and whether

---

[11] Plaintiffs also urged that the Court not consider the Affidavit of Peter Schorr, presented by Responding Defendants. [DE 243 at 2]. The Court did not consider this Affidavit at this time. Responding Defendants may attempt to introduce the Affidavit during trial, subject to any objection by Plaintiffs.

they have defaulted. Therefore, the Court will defer ruling as to this issue and will discuss it with counsel during the calendar call.

## V.   <u>CONCLUSION</u>

Based on the foregoing, it is hereby **ORDERED** that Plaintiffs' Motion [DE 222] is **GRANTED IN PART AND DENIED IN PART** as stated in this Order.

Specifically, the Motion is GRANTED as to the following discrete issues and findings as there are no material issues of fact:

1) As to Plaintiffs' WARN Act claims, the Court finds that Plaintiffs have met their burden at summary judgment of establishing that a plant closing or mass layoff occurred and that Plaintiffs were entitled to notice, as defined under WARN Act. These discrete issues are established in this case in Plaintiffs' favor;

2) As to Plaintiffs' damages for WARN Act and wage claims, the Court finds that Plaintiffs have met their burden at summary judgment of establishing their specific damages if the Plaintiffs prevail on the joint employer issue at trial. This discrete issue of damages is established in this case in Plaintiffs' favor, subject to the jury's determination of the joint employer issue;

3) As to Plaintiffs' wage claims, the Court finds that Plaintiffs have met their burden at summary judgment to establish that Plaintiffs were not paid for their final weeks of employment. This discrete issue is established in Plaintiffs' favor, subject to the jury's determination of the joint employer issue; and

4) As to Defendants' affirmative defenses, the Court finds that Plaintiffs have met their burden at summary judgment on that portion of their Motion directed to Defendants'

16

affirmative defenses. Thus, all of Defendants' affirmative defenses are hereby DISMISSED and STRICKEN.

Plaintiffs' Motion is DENIED as to the following discrete issues: whether the relevant Responding Defendants are employers under 1) the FLSA; 2) Florida, Connecticut, and Pennsylvania state wage law; and 3) the WARN Act. The jury shall determine the employer and joint employer issues at trial.

The case shall proceed to the specially set jury trial beginning on Tuesday, February 17, 2026, at 9:00 a.m. before Chief United States Magistrate Judge William Matthewman at the U.S. Courthouse located at 701 Clematis Street, **Courtroom Two, Fourth Floor**, West Palm Beach, Florida. The parties should not expect any continuance of this trial date as it is specially set and ready to proceed. The parties and their counsel shall be ready and present in person for the jury trial at that date and time. The parties are also reminded that an in-person calendar call is set for 2:00 p.m. on February 13, 2026, at the same location. Counsel who will be trying the case shall appear in person for the calendar call.

**DONE and ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 9th day of February 2026.

WILLIAM MATTHEWMAN
Chief United States Magistrate Judge

17